# IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT, IN AND FOR PINELLAS COUNTY, FLORIDA

Civil Action No.

ALIN POP, individually
and on behalf of all those similarly situated,

Plaintiff,

v.

LULIFAMA.COM. LLC,
MY LULIBABE, LLC,
LOURDES HANIMIAN a/k/a LULI HANIMIAN,
TAYLOR MACKENZIE GALLO a/k/a TEQUILA TAYLOR,
ALEXA COLLINS,
ALLISON MARTINEZ a/k/a ALLI MARTINEZ,
CINDY PRADO,
GABRIELLE EPSTEIN,
HALEY PALVE a/k/a HALEY FERGUSON,
LEIDY AMELIA LABRADOR,
PRISCILLA RICART,

Defendants.

_____

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

_____

Plaintiff, ALIN POP ("Pop" or "Plaintiff"), on behalf of himself and all those similarly situated, brings the following Complaint against Defendants LULIFAMA.COM. LLC, MY LULIBABE, LLC, LOURDES HANIMIAN a/k/a LULI HANIMIAN, TAYLOR MACKENZIE GALLO a/k/a TEQUILA TAYLOR, ALEXA COLLINS, ALLISON

MARTINEZ a/k/a ALLI MARTINEZ, CINDY PRADO, GABRIELLE EPSTEIN, HALEY PALVE a/k/a HALEY FERGUSON, LEIDY AMELIA LABRADOR, PRISCILLA RICART (collectively "Defendants"), alleging as follows:

## INTRODUCTORY STATEMENT

1.     This is a class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendants LuliFama.com LLC, My Lulibabe LLC (collectively "Luli Fama"), Lourdes Hanimian, individually, ("Hanimian") and so-called "influencers" illegally promoting Luli Fama products: Taylor Gallo A/K/A Tequila Taylor, Cindy Prado, Priscilla Ricart, Haley Ferguson, Gabrielle Epstein, Alli Martinez, and Alexa Collins (collectively "Influencers").

2.     This action arises from the deceptive and misleading promotion of Luli Fama products in the state of Florida and throughout the United States.

3.     During the Class Period (defined below), the Influencers misrepresented the material relationship they have with the brand by promoting Luli Fama products without disclosing the fact that they were paid to do it, in violation of the law.

4.     In order to artificially inflate the prices for the Luli Fama products, both Luli Fama and the Influencers devised a scheme in which the influencers tag or recommend Luli Fama products, pretending they are disinterested and unaffiliated consumers.

5.     Relying on the undisclosed paid advertising, the named plaintiff and the class members purchased products that proved to be of a lower value than the price paid and therefore suffered damages.

## LULI FAMA

6.     Luli Fama is a swimwear designer, manufacturer and reseller that came to fame with the rise of Instagram. Luli Fama products are now sold across 80 countries and in the world's most luxurious locations[1].

7.     Hanimian is the founder, owner, CEO and product designer for Luli Fama.  She personally oversees all of its corporate operations, swimwear design, manufacturing, marketing, social media and supervises Luli Fama's relationship with the Influencers. Hanimian is an integral part of Luli Fama's day-to-day operations

---

[1] https://www.lulifama.com/pages/about-us (last visited July 12, 2022)

and has been involved with its Instagram and social media strategy since its inception.

8.    Despite having two brick-and-mortar stores in Miami-Dade, Luli Fama thrives due to its sales over the Internet. Even the company's legal registered name (LuliFama.Com) indicates that the company is designed as an online store.  It is primarily focused on online sales rather than sales through any other channels. Importantly, most of Luli Fama's online sales come from social media, including Instagram.

9.    Asking social media influencers to advertise its products and disguise such advertising as honest consumer recommendation is a large part of Luli Fama's strategy to capture a major segment of the swimwear market in Florida, the United States, and worldwide.

10.    As the Influencers promote Luli Fama products, its sales soar and Luli Fama makes tens of millions of dollars that can be attributed directly to the disguised Instagram advertising campaigns.

11.    Out of the immense profits obtained from this scheme, significant monies are paid to the Influencers for their indispensable contribution.

## THE PRACTICE

12.    The advertising practices employed by Luli Fama and the Influencers is very profitable and very illegal. Both Federal law and Florida law prohibits such commercial behavior.

13.    In this case, Pop purchased Luli Fama products that proved to be of an inferior quality, compared with the expectations the Plaintiff had and the price he paid.

14.    Pop followed to what he believed to be the honest advice of the Influencers. Sometimes Influencers will only tag Luli Fama in their posts, suggesting that this is just another swimsuit they purchased, and that Luli Fama is their "to go" place for swimwear.

15.    Even without using words, by wearing and tagging the Luli Fama products in their posts, the Influencers indisputably advertise and endorse these products.

16.    Undisclosed advertising is prevalent on Instagram over the last few years. Defendant Alexa Collins, for example, advertised for Luli Fama on Instagram more than ten times, without mentioning even once that she is paid (substantial amounts) to advertise and keep it quiet.

 

*Screenshots from Instagram.com/alexacollins*

## NATURE OF THE ACTION

17.    In this action, the named Plaintiff, ALIN POP, and all those similarly situated seek damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-gotten monies, attorney's fees and costs, and other relief from Defendants LuliFama.Com. LLC, My LuliBabe, LLC, Lourdes Hanimian, Tequila Taylor, Cindy Prado, Priscilla Ricart, Haley Ferguson, Gabrielle Epstein, Alli Martinez and Alexa Collins, for unjust enrichment, fraud, misrepresentation, violations of the FTC Act, 15 U.S.C. § 45(a), and, therefore, violations of §§ 501.201-501.213, Fla. Stat. Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

/

/

**PARTIES**

18.     The named Plaintiff, ALIN POP ("Pop"), is a citizen of Florida who resides in Pinellas County, FL and is otherwise *sui juris*.

19.     Defendant, LULIFAMA.COM. LLC, ("Luli Fama"), is a company registered in Florida doing business as Luli Fama.

20.     Defendant, MY LULIBABE, LLC, ("Lulibabe"), is a company registered in Florida.

21.     Defendant, LOURDES HANIMIAN a/k/a LULI HANIMIAN ("Hanimian"), is the founder, CEO and designer for Luli Fama.  She is a citizen of Florida who resides in Miami-Dade County, FL and is otherwise sui juris.

22.     Defendant, Tequila Taylor Gallo ("Taylor"), is a citizen of Florida who resides in Pasco County and is otherwise *sui juris*. Taylor is transacting business in Florida over the internet and actively soliciting business in Florida.

23.     Defendant, Priscilla Ricart ("Ricart"), is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Ricart is transacting business in Florida over the internet and actively soliciting business in Florida.

24.     Defendant, Haley Ferguson ("Ferguson"), is a citizen of

Nevada who resides in Clark County and is otherwise *sui juris*. Ferguson is transacting business in Florida over the internet and actively soliciting business in Florida.

25.    Defendant, Gabrielle Epstein, ("Epstein"), is a citizen of California who resides in Los Angeles County and is otherwise *sui juris*. Epstein is transacting business in Florida over the internet and actively soliciting business in Florida.

26.    Defendant, Alexa Collins ("Collins"), is a citizen of Florida who resides in Broward County and is otherwise *sui juris*. Collins is transacting business in Florida over the internet and actively soliciting business in Florida.

27.    Defendant, Cindy Prado, ("Prado") is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Prado is transacting business in Florida over the internet and actively soliciting business in Florida.

28.    Defendant, Alli Martinez, ("Martinez") is a citizen of Florida who resides in Palm Beach County and is otherwise *sui juris*. Martinez is transacting business in Florida over the internet and actively soliciting business in Florida.

/

## JURISDICTION AND VENUE

29.   This is a cause of action for damages exceeding $30,000 and within the jurisdictional limits of this Court.

30.   Jurisdiction is proper in Florida courts pursuant to §48.193, Fla. Stat., since the Luli Fama defendants are based in Florida and engage in business in the United States through their Florida office.

31.   The Influencers engage in substantial activities within Florida and a substantial portion of the swimwear is promoted using Florida locations.

32.   The named Plaintiff, Pop, is a Florida citizen and engaged in the transaction that gave rise to this lawsuit from a Florida location.

33.   Venue is proper in Pinellas County, Florida pursuant to §47.011, Fla. Stat. The Defendants are alleged to perpetrate their illegal conduct in Pinellas County.

## STATEMENT OF FACTS

34.   Social media emerged in the last years as a main source

of information and communication[2] for billions of users.

35.    There were an estimated 157 million Instagram users in the United States in 2021[3], while the platform engaged last year over 2 billion monthly users[4].

36.    In the last three years, Instagram has become one of the most popular ways to influence consumer behavior on social media. Since 2017, Instagram has grown tremendously, adding 100 million users every few months[5]. Around seven-in-ten Americans ages 18 to 29 (71%) say they use Instagram.[6]

37.    Given the enormous reach of Instagram and other  social media platforms, and in an effort to curb online behavior that ignores

---

[2] Fink, T., 2021. *Drivers of User Engagement in Influencer Branding.* [S.l.]: Springer Fachmedien Wiesbaden, p.2.

[3] Statista. 2021. *Leading countries based on Instagram audience size as of October 2021*: http://www.statista.com/statistics/578364/countries-with-most-instagram-users/ (last visited Feb 11 2022).

[4] Rodriguez, S., 2021. *Instagram surpasses 2 billion monthly users while powering through a year of turmoil,* https://www.cnbc.com/2021/12/14/instagram-surpasses-2-billion-monthly-users.html (last visited Feb 11, 2022).

[5]   Farhad Manjoo, *Why Instagram Is Becoming Facebook's Next Facebook* The New York Times, April 26, 2017, https://www.nytimes.com/2017/04/26/technology/why-instagram-is-becoming-facebooks-next-facebook.html (last visited June 17, 2020).

[6] Schaeffer, K., 2022. *7 Facts About Americans and Instagram.* Pew Research Center. https://pewrsr.ch/3FqryHE (last visited Feb 11, 2022).

the law and uses the lack of enforcement as an excuse for violating laws across jurisdiction, the FTC published guidelines for social media influencers regarding proper advertising practices[7].

38.    Indeed, the rapid growth of social media platforms allowed for a lack of regulation and oversight.  Some 80% of social media users said they were concerned about advertisers and businesses accessing the data they share on social media platforms, and 64% said the government should do more to regulate advertisers[8].

39.    Unscrupulous "influencers" are acting as advertisers for hire by posting fake reviews for sponsored products or failing to disclose that they were paid to create the content displayed on their profile. These "influencers" advertise everything from alcohol to cannabinoids, from political ideas to pornographic websites, to illegal giveaways, as long as they are paid obscene amounts of money.

---

[7] Federal Trade Commission. 2019. *Disclosures 101 for Social Media Influencers.* Available at:
https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf (last visited Feb. 25, 2022).

[8] Raine, L., 2022. *Americans' complicated feelings about social media in an era of privacy concerns.* http://www.pewresearch.org/fact-tank/2018/03/27/americans-complicated-feelings-about-social-media-in-an-era-of-privacy-concerns/ (last visited Feb. 15, 2022).

40.    For example, Defendant Alexa Collins advertises alcohol on her Instagram account without disclosing that she is paid to do so, and without regard to the rules relating to advertising alcohol found in 27 CFR 5.233(a) and Instagram's own policies.[9]



*Screenshots from Instagram.com/alexacollins*

41.    As part of its business, Defendant Luli Fama claims that its swimwear is seen on models and celebrities. It seems like the celebrities are choosing Luli Fama when they have a choice of swimwear, adding to the image of the brand.

42.    In fact,  Luli Fama's business model is to pay a number

---

[9] "Users may not post content that attempts to buy, sell, trade, donate or gift alcohol products if it is not posted by a Page, Group, or Instagram Profile representing a real brick and mortar store, legitimate website, or brand."

of carefully selected influencers to wear Luli Fama products and present those products to their followers, without disclosing their paid relationship with Luli Fama.

43. The named Plaintiff and thousands of similarly situated individuals purchase such products at inflated prices, exclusively because of the way the products are advertised.

**THE INFLUENCERS**

44. Despite being compensated for wearing and promoting the Luli Fama swimwear, none of the Influencers use the "paid partnership" tag suggested by the FTC or other disclosures like "#ad," or "#sponsored." Therefore, they are not compliant with the FTC Rules found in 16 C.F.R. § 255.5 and the FTC guidelines regarding advertising on social media.[10]

45. In fact, many of the Influencers are familiar with the FTC guidelines and properly display the required disclosures when the brands are not willing to pay them to disguise the advertising.

/

/

---

[10] Federal Trade Commission, *supra* note 7.

 

*Screenshots from https://www.instagram.com/gabbyepstein/*

46.   The Plaintiff is following Defendants on Instagram. Plaintiff's decision to purchase the Luli Fama products was determined by the Influencers he followed, specifically by the Defendants in this case.

**THE ADVERTISING**

47.   Facebook, the parent company of Instagram, offers various products that advertisers can use for commercial use. For example, an advertiser may promote content using a *boosted post* or an *Instagram ad* for a price paid directly to Facebook. Both the *post* and the *ad* are created by the advertiser that wants to promote a certain message, service, or product. They are clearly marked as advertising by Instagram.

48.   The same advertisers can also promote content by directly paying influencers to create a collaboration post. Influencers

can also be paid for ads to be posted on the influencer's account, as part of the *feed* (the pictures and videos displayed for a user when accessing or refreshing an account) or as part of *stories* (short videos that only show for a limited amount of time and, usually, can only be viewed once). Such collaboration should be properly disclosed.

49.    Another way Instagram allows advertisers to use the platform is by sponsoring independent content generated by the influencers themselves. In this case the influencer should take advantage of the "paid partnership" tag offered by Instagram to show that influencer is being compensated to generate this content. A "paid partnership" tag is also a step in maintaining compliance with the Federal Trade Commission's ("FTC") rules and guidelines.

50.    Every time an influencer advertises a product, such advertisement appears in the Instagram *feed* of everybody following the influencer.

51.    The FTC has repeatedly published guidelines for influencers regarding proper advertising practices, the latest version released in 2019 and attached in *Exhibit A*.

52.    By advertising the Luli Fama products without regards to the disclosure requirements, the Influencers are in violation of

Section 5(a) of 15 U.S.C. § 45(a), which is a per se violation of FDUTPA.

53.   By instructing and allowing the Influencers to advertise its products without making the proper disclosures, Luli Fama is in violation of Section 5(a) of 15 U.S.C. § 45(a), which is a per se violation of FDUTPA.

**PLAINTIFF**

54.   Given the fact that the products were worn by his favorite influencers, Plaintiff decided to purchase Luli Fama products and placed Order 1152147. He purchased such products as a present for his spouse.

55.   In doing so, Plaintiff paid a premium for Luli Fama swimwear. Compared to other swimwear brands (i.e. Victoria's Secret), Luli Fama is approximately 100% more expensive.

56.   When Pop realized that the products purchased are of an inferior quality, he tried to return the products, but Luli Fama was unable to accept his return.

57.   Pop tried to sell the unused product on eBay, the only platform where he has an account that allows him to sell products, but he received only small offers that barely covered shipping,

showing one more time that the value of the products is much lower than the price he paid.

## CLASS ALLEGATIONS

58.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully re-written herein.

59.    Plaintiff asserts the counts stated herein as class action claims pursuant to Fla. R. Civ P. 1.220.

60.    Plaintiff is filing this lawsuit on behalf of all persons that purchased products from Luli Fama using their social media platform or their online store from October 6, 2018, to present ("class period").

61.    Plaintiff's claims are typical for the class and, as the named Plaintiff, he is aware of other persons in the same situation.

62.    Pop will fairly and adequately protect the interests of the class.

63.    The classes represented by Pop have thousands of members and the joinder of all members is impracticable.

64.    Since the whole class purchased *Luli Fama* products and such products are promoted by the Defendants, the questions of law and fact are common to the class.

65.   As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## COUNT I: VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT – Luli Fama and the Influencers

66.   Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein. As set forth above, the Plaintiff asserts this count on his own behalf and on behalf of all other similarly situated persons pursuant to Fla. R. Civ P. 1.220 against Defendants Luli Fama and the Influencers.

67.   Luli Fama provided Instagram users with the means and instrumentalities for the commission of deceptive acts and practices and engaged in a deceptive act or unfair practice, by engaging in deceptive conduct and statutory violations.

68.   For a fee, each of the Influencers, with the means and instrumentalities for the commission of deceptive acts and practices, engaged in a deceptive act or unfair practice, by engaging in fraud and statutory violations.

69.   By failing to disclose material connections,  Defendants Luli Fama and the Influencers violated Section 5(a) of 15 U.S.C. §

45(a) which represents a *per se* violation of "FDUTPA".

70.     Such practices as the ones employed by the Defendants are illegal, unethical, unscrupulous, and likely to mislead any consumer acting reasonably in the circumstances, to the class members' detriment.

71.     Defendants' engagement in these unfair practices caused the Plaintiff to suffer a loss.

72.     The value of the loss, calculated as the price paid for a Luli Fama product less the value of the product is over $10,000,000.00 for the entire class.

73.     Plaintiff also requests injunctive relief. Absent injunctive relief by this Court, Defendants Luli Fama and the Influencers are likely to continue to injure consumers, reap unjust enrichment, and harm the class members.

74.     In the alternative, pursuant to § 501.211(1), Fla. Stat., as Plaintiff is aggrieved by the violation of FDUTPA, he is entitled to obtain a declaratory judgment that Defendants' practice violates the law and to enjoin the Defendants as they have violated, are violating, and are likely to violate the Act in the future.

75.     Plaintiff also requests attorney fees against Luli Fama

and the Influencers pursuant to § 501.2105, Fla. Stat.

## COUNT II: UNJUST ENRICHMENT – All Defendant

76.    Plaintiff incorporates by reference all paragraphs 1-65 of this Complaint as if fully rewritten herein. As set forth above, Plaintiff asserts this count on his own behalf and on behalf of all other similarly situated Instagram users against All Defendants.

77.    By paying the high prices demanded by Luli Fama, Plaintiff and the members of the class conferred a direct benefit to each of the Defendants.

78.    Instagram users that are members of the class continue to suffer injuries as a result of the Defendants' unlawful activities. If the Defendants do not compensate the Plaintiff and class members, they would be unjustly enriched as a result of their unlawful act or practices.

79.    It is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for the Defendants to retain said benefit and reap an unjust enrichment.

80.    Since Defendants unjustly enriched themselves at the expense of the Instagram users, Plaintiff requests the disgorgement of these ill-gotten money.

81.   Due to Defendants' conduct, Plaintiff and the putative class members are entitled to damages according to proof, but in no event less than $10,000,000.00.

**COUNT III: NEGLIGENT MISREPRESENTATION – All Defendants**

82.   Plaintiff incorporates by reference all paragraphs 1-65 of this Complaint as if fully rewritten herein. As set forth above, Plaintiff asserts this count on his own behalf and on behalf of all other similarly situated persons pursuant to Fla. R. Civ P. 1.220 against all Defendants.

83.   Defendants had a duty to be truthful in their commercial speech. In convincing Plaintiff to purchase Luli Fama products, Defendants made representations that they knew to be false, or negligently failed to examine the veracity of the affirmations.

84.   As a result of Defendants' negligent misrepresentations, Plaintiff and members of the Class suffered injury.

**DEMAND FOR JURY TRIAL**

85.   Plaintiff and those similarly situated demand a trial by jury for all issues so triable.

/

/

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ALIN POP, respectfully requests that judgment be entered in his favor and in favor of those similarly situated as follows:

a.  Certifying and maintaining this action as a class action, with the named Plaintiff as designated class representative and with his counsel appointed as class counsel;

b.  Declaring the Defendants in violation of each of the counts set forth above;

c.  Awarding the Plaintiff and those similarly situated compensatory, punitive, and treble damages;

d.  Awarding the Plaintiff and those similarly situated liquidated damages;

e.  Order the disgorgement of ill-gotten monies;

f.  Awarding the named Plaintiff a service award;

g.  Awarding pre-judgment, post-judgment, and statutory interest;

h.  Awarding attorneys' fees and costs as set forth herein;

i.  Awarding such other and further relief as the Court may deem just and proper.

Pursuant to Fla. R. Jud. Admin. 2.516, the undersigned attorneys designate Bogdan.Enica@practus.com and Keith.Gibson@practus.com for service in the above-styled matter. Service is to be made at the email addresses listed here and to no others. Service shall be complete upon emailing to the designated email address, provided that the provisions of Rule 2.516 are followed.

Dated: October 17, 2022

Respectfully Submitted,

PRACTUS, LLP

s/Bogdan Enica
Bogdan, Enica
FL Bar No.: 101934
66 West Flagler St. Ste. 937
Miami, FL 33130
Telephone: (305) 539-9206
Email: Bogdan.Enica@practus.com

Keith L. Gibson (*pro hac vice* forthcoming)
IL Bar No.: 6237159
11300 Tomahawk Crk. Pkwy. Ste. 310
Leawood, KS 66211
Telephone: (630) 677-6745
Email: Keith.Gibson@practus.com

*Counsel for Plaintiff and the Putative Class*

# Exhibit A



# Disclosures 101

## for

## Social Media

## Influencers

# Do you work with brands to recommend or endorse products?

If so, you need to comply with the law when making these recommendations.

One key is to make a good disclosure of your relationship to the brand.

This brochure from FTC staff gives tips on when and how to make good disclosures.

The FTC works to stop deceptive ads, and its Endorsement Guides go into detail about how advertisers and endorsers can stay on the right side of the law.

If you endorse a product through social media, your endorsement message should make it obvious when you have a relationship ("material connection") with the brand. A "material connection" to the brand includes a personal, family, or employment relationship or a financial relationship – such as the brand paying you or giving you free or discounted products or services.

Telling your followers about these kinds of relationships is important because it helps keep your recommendations honest and truthful, and it allows people to weigh the value of your endorsements.

As an influencer, it's **your responsibility** to make these disclosures, to be familiar with the Endorsement Guides, and to comply with laws against deceptive ads. Don't rely on others to do it for you.



# When to Disclose

▶ Disclose when you have any **financial, employment, personal, or family relationship** with a brand.

» Financial relationships aren't limited to money. Disclose the relationship if you got anything of value to mention a product.

» If a brand gives you free or discounted products or other perks and then you mention one of its products, make a disclosure even if you weren't asked to mention *that* product.

» Don't assume your followers already know about your brand relationships.

» Make disclosures even if you think your evaluations are unbiased.

▶ Keep in mind that tags, likes, pins, and similar ways of showing you like a brand or product are endorsements.

▶ If posting from abroad, U.S. law applies if it's reasonably foreseeable that the post will affect U.S. consumers. Foreign laws might also apply.

▶ If you have no brand relationship and are just telling people about a product you bought and happen to like, you don't need to declare that you **don't** have a brand relationship.

**3**

# How to Disclose

Make sure people will **see and understand** the disclosure.

▶ Place it so it's **hard to miss.**

» The disclosure should be placed with the endorsement message itself.

» Disclosures are likely to be missed if they appear only on an ABOUT ME or profile page, at the end of posts or videos, or anywhere that requires a person to click MORE.

» Don't mix your disclosure into a group of hashtags or links.

» If your endorsement is in a *picture* on a platform like Snapchat and Instagram Stories, superimpose the disclosure over the picture and make sure viewers have enough time to notice and read it.

» If making an endorsement in a *video*, the disclosure should be in the video and not just in the description uploaded with the video. Viewers are more likely to notice disclosures made in both audio and video. Some viewers may watch without sound and others may not notice superimposed words.

» If making an endorsement in a *live stream*, the disclosure should be repeated periodically so viewers who only see part of the stream will get the disclosure.



Disclosures 101 for Social Media Influencers



▶ Use **simple and clear** language.

» Simple explanations like "Thanks to Acme brand for the free
product" are often enough if placed in a way that is hard
to miss.

» So are terms like "advertisement," "ad," and "sponsored."

» On a space-limited platform like Twitter, the terms
"AcmePartner" or "Acme Ambassador" (where Acme is the
brand name) are also options.

» It's fine (but not necessary) to include a hashtag with
the disclosure, such as #ad or #sponsored.

» Don't use vague or confusing terms like "sp," "spon," or
"collab," or stand-alone terms like "thanks" or "ambassador,"
and stay away from other abbreviations and shorthand
when possible.

▶ The disclosure should be in the same language as the
endorsement itself.

▶ Don't assume that a platform's disclosure tool is good enough,
but consider using it in addition to your own, good disclosure.

# What Else to Know

- ▶ You can't talk about your experience with a product you haven't tried.

- ▶ If you're paid to talk about a product and thought it was terrible, you can't say it's terrific.

- ▶ You can't make up claims about a product that would require proof the advertiser doesn't have – such as scientific proof that a product can treat a health condition.






## FOR MORE INFORMATION

Have more questions? The FTC's Endorsement Guides:
What People Are Asking is an FTC staff publication that
answers many questions about the use of endorsements,
including in social media, with many helpful examples.

## FTC.gov/influencers



FEDERAL TRADE COMMISSION
business.ftc.gov
November 2019