## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ALIN POP, individually and on behalf of
all those similarly situated,

      Plaintiff,

vs.                      Case No.: 8:22-CV-02698-VMC-JSS

LULIFAMA.COM, LLC, MY
LULIBABE, LLC, LOURDES
HANIMIAN a/k/a LULI HANIMIAN,
TAYLOR MACKENZIE GALLO a/k/a
TEQULIA TAYLOR, ALEXA
COLLINS, ALLISON MARTINEZ
a/k/a/ ALLI MARTINEZ, CINDY
PRADO, GABRIELLE EPSTEIN,
HALEY PALVE a/k/a HALEY
FERGUSON, LEIDY AMELIA
LABRADOR, PRISCILLA RICART,

      Defendants.

_____/

## DEFENDANT GABRIELLE EPSTEIN'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT
## AND INCORPORATED MEMORANDUM OF LAW

Defendant Gabrielle Epstein moves to dismiss Plaintiff Alin Pop's Class Action

Complaint ("Complaint"), for insufficient service of process pursuant to Fed. R. Civ.

P. 12(b)(5), lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and failure to

state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), and

states the following in support:

## INTRODUCTION

This is a putative class action lawsuit that Plaintiff and his lawyer try to weave together over social media posts regarding a women's luxury swim and resort wear brand. Plaintiff alleges, without any supporting facts, that the eleven Defendants – LuliFama.com ("Luli Fama"), LLC, My LuliBabe, LLC ("Luli Babe"), Lourdes Hanimian (the founder, CEO, and designer for Luli Fama), and eight social media influencers, including Defendant Gabrielle Epstein – devised a scheme together to promote Luli Fama products by having "the influencers tag or recommend Luli Fama products, pretending they are disinterested and unaffiliated consumers," "without disclosing the fact that they were paid to do it" "to artificially inflate the prices for the Luli Fama products . . . ."  (Compl., ¶¶ 3-4). Plaintiff alleges in conclusory and deficient terms that, supposedly because of this alleged conduct by "Defendants," he purchased Luli Fama swimwear for his wife and found them to be of "inferior quality." Plaintiff contends he and the nationwide putative class he seeks to represent are entitled to damages on their claims asserted under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA") and for unjust enrichment and negligent misrepresentation.

Epstein must be dismissed from this lawsuit for at least four reasons. First, there is insufficient service of process. While Plaintiff's process server claims to have personally served Epstein at her apartment in California, that is impossible, considering she was, at that exact time, on an international flight from Australia to California. Second, the Court has no personal jurisdiction over Epstein. She is an

Australian citizen with a current U.S. residence in California and has no connections to Florida. Third, Plaintiff has failed to state a plausible claim upon which relief may be granted. Despite the fact Plaintiff's claims are subject to Rule 9(b)'s heightened pleading requirement, the Complaint fails to provide facts specific to Epstein that would satisfy even the lesser plausibility pleading requirement under Rule 8. In fact, the Complaint fails to identify a single posting made by Epstein or any connection between her and Plaintiff and instead vaguely lumps each Defendant's alleged and generally stated conduct together in alleging implausible claims for violation of FDUTPA and for unjust enrichment and negligent misrepresentation. Plaintiff is trying to place a (very poorly and inadequately alleged) square peg in a round hole, trying to create class claims over a purported (but unidentified) violation of a Federal Trade Commission rule into a FDUTPA claim for actual damages (and attorneys' fees). Nothing Plaintiff has alleged – or, it seems, could possibly allege – states a claim for relief under any of these causes of action. Fourth, Plaintiff's FDUTPA claim fails because it is based on a violation of the FTC Act, which does not support a private right of action.

## ARGUMENT

## I.   EPSTEIN MUST BE DISMISSED BECAUSE SERVICE OF PROCESS WAS INSUFFICIENT

"It is well-settled that service of process must be properly effected before a federal court may exercise jurisdiction over a defendant." *United States v. MultiPlan Network*, No. 8:19-CV-2169-JLB-CPT, 2022 WL 580724, *6 (M.D. Fla. Feb. 25, 2022).

"A party challenging service of process under Rule 12(b)(5) must specify the particular way or ways in which the serving party failed to satisfy the service-of-process rules." *Id.* (internal quotation omitted). The plaintiff then bears the burden of proving adequate service of process. *Id.* In deciding the insufficiency of service of process, courts "may consider the parties' affidavits, depositions, and oral testimony in resolving disputed questions of fact." *Devs. Sur. & Indem. Co. v. Italian Cast Stone, Inc.*, No. 8:16-cv-3491-T-24TGW, 2017 WL 3113469, *2 (M.D. Fla. May 5, 2017). Insufficient service of process is a proper basis for dismissal of a party from a lawsuit under Federal Rule of Civil Procedure 12(b)(5). *See, e.g., Thorpe v. Dumas*, 788 F. App'x 644, 647 (11th Cir. 2019) (affirming dismissal for insufficient service of process).

"In determining validity of service in the state court prior to removal of an action, the federal court must apply the law of the state under which the service was made." *Mochrie v. R.J. Reynolds Tobacco Co.*, No. 2:16-CV-306-FTM-38CM, 2016 WL 6681062, *2 (M.D. Fla. Nov. 14, 2016). Florida law provides that service of process on persons outside of Florida must be made in the same manner as service within Florida. Fla. Stat. § 48.194(1). Pursuant to Fla. Stat. § 48.031(1)(a), service of original process is made by delivering to the person to be served copies of the summons and complaint or by leaving the copies at her usual place of abode with any person residing there and informing the person of their contents.

Plaintiff has filed an Affidavit of Service stating that the process server personally served Epstein by hand, delivering the Summons and Complaint ***to her*** at her apartment in Los Angeles, California at 11:51 a.m. on October 25, 2022. (Ex. A).

However, this is *impossible*. On October 25, 2022, Epstein was en route to Los Angeles on a commercial flight out of Brisbane, Australia, and did not arrive in Los Angeles until 7:00 p.m. (Declaration of Garbielle Epstein, ¶7). The itinerary for her flight further corroborates these details. (*Id.*, Ex. A). Epstein could not have been both on the flight and at her apartment to accept personal service.

In reality, the papers were handed without any explanation to Epstein's boyfriend, Alixandre Van Aernam, while he was temporarily housesitting at Epstein's apartment. (Declaration of Alixandre Van Aernam, ¶¶2-5). Aernam is not a co-resident capable of accepting service, as he was only temporarily staying at Epstein's apartment to house-sit for Epstein while she was in Australia. (Epstein Decl. at ¶¶2, 7-9; Aernam Decl. at ¶¶2-3). Because Aernam was staying at Epstein's apartment for only five days, does not reside there, does not pay rent for the apartment, and is not on the lease, (Epstein Decl. at ¶¶2-9; Aernam Decl. at ¶¶2-5), he cannot be deemed a co-resident for purposes of substitute service of process. *Baker v. Stearns Bank, N.A.*, 84 So. 3d 1122, 1127 (Fla. 2d DCA 2012) (finding insufficient service of process where defendant was out of the country and only a temporary house-sitter was served); *Gamboa v. Jones,* 455 So.2d 613 (Fla. 3d DCA 1984) (holding ten-day visit did not meet the residency requirement); *Mauro v. Alldredge*, No. 6:12-CV-1333-ORL-22TBS, 2012 WL 12904718, at *2 (M.D. Fla. Dec. 12, 2012) (dismissing complaint for insufficient service of process); *Kemmerer v. Klass Assocs., Inc.*, 1, 673 (Fla. 2nd DCA 2013) (finding insufficient service of process upon defendant's boyfriend when supporting affidavit and lease verified he was not a co-resident).

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER EPSTEIN

Dismissal is also appropriate under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. As an initial matter, the Complaint fails to allege sufficient facts to make a plausible *prima facie* showing of either general or specific personal jurisdiction over Epstein. Nor could Plaintiff make such a showing in the face of sworn testimony from Epstein refuting the alleged bases for personal jurisdiction.

### A.   The Standard and Burden Shifting Framework

Under a two-step inquiry to determine if personal jurisdiction exists, a district court asks (1) whether the forum state's long-arm statute provides a sufficient basis for personal jurisdiction; and (2) if so, does the exercise of jurisdiction comport with due process, otherwise known as minimum contacts. *Abramson v. Walt Disney Co.*, 132 F. App'x. 273, 275 (11th Cir. 2005).

On a motion to dismiss for lack of personal jurisdiction, "[t]he plaintiff bears the burden of making out a *prima facie* case for personal jurisdiction by presenting sufficient evidence to withstand a directed verdict motion." *Dynetech Corp. v. Leonard Fitness, Inc.*, 523 F. Supp. 2d 1344, 1346 (M.D. Fla. 2007). The plaintiff bears the initial burden of pleading sufficient material facts to make out a *prima facie* case of jurisdiction. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). In attempting to make this showing, "a plaintiff seeking to subject a nonresident defendant to jurisdiction of the court through the long-arm statute must do more than allege facts that show a *possibility* of jurisdiction." *Lawson Cattle & Equip.,*

*Inc. v. Pasture Renovators LLC*, 139 Fed. Appx. 140, 142 (11ᵗʰ Cir. 2005) (emphasis added). If the well-pleaded allegations succeed in making a *prima facie* showing of personal jurisdiction, the burden shifts to the defendant to contradict the plaintiff's allegations by affidavits or other competent evidence.  *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214-15 (11ᵗʰ Cir. 1999). If the defendant submits competent evidence refuting the well-pleaded jurisdictional facts, then the burden "shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11ᵗʰ Cir. 2013). Moreover, personal jurisdiction must be independently shown as to each defendant. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).

Courts accept the plaintiff's factual allegations as true unless they are challenged. *Abramson*, 132 F. App'x. at 275; *Gulf Atl. Transp. Co. v. Offshore Tugs, Inc.*, 740 F. Supp. 823, 825 (M.D. Fla. 1990); *Talbot v. Anderson*, No. 8:15-CV-1313-T-TBM, 2015 WL 13297966, at *4 (M.D. Fla. Aug. 17, 2015).

### B.    Defendant is not Subject to Florida's Long-Arm Statute

"The reach of the Florida long-arm statute is a question of Florida law[, and] federal courts are required to construe such law as would the Florida Supreme Court." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1271 (11ᵗʰ Cir. 2002). "Under Florida's long-arm statute, personal jurisdiction may be general or specific. *Louis Vuitton*, 736 F.3d at 1352. "General personal jurisdiction exists when a defendant 'is engaged in substantial and not isolated activity within [the] state ... whether or not the claim arises

from that activity,'" whereas specific personal jurisdiction exists over causes of action arising from a defendant's contacts with Florida that are related to the plaintiff's cause of action. *Id.* Here, Plaintiff attempts to plead general and, possibly, specific personal jurisdiction, both of which fail.

       ***i.***     ***The Complaint Facially Fails to Provide a Basis for General Personal Jurisdiction.***

Plaintiff asserts the purported bases for personal jurisdiction in only two paragraphs in the Complaint. First, Plaintiff summarily alleges that Epstein is "transacting business in Florida over the internet and actively soliciting business in Florida." (Compl., ¶25). Second, lumping the eight "Influencer" Defendants together, Plaintiff asserts in conclusory fashion that "[t]he Influencers engage in substantial activities within Florida and a substantial portion of the swimwear is promoted using Florida Locations." (Compl., ¶31). Nowhere else in the Complaint does Plaintiff allege any specific facts relating to Epstein's conduct or her supposed ties to Florida. In fact, Plaintiff fails to identify even one single post or promotion allegedly made by Epstein. Other than stating her name in the caption and these two paragraphs, Plaintiff fails to allege facts specific to Epstein in any capacity whatsoever.

When construing general personal jurisdiction over a non-resident, "Florida courts have held the term 'substantial and not isolated activity' used in § 48.193(2) means 'continuous and systematic business contact' with Florida, a term used by the Supreme Court ... to determine whether general jurisdiction was permissible under the Due Process Clause." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006)

(applying Florida's long arm statute). The Supreme Court has explained that because of the requirement for general personal jurisdiction of contacts so continuous and substantial so as to essentially regard the defendant as "at home" in the state, the paradigmatic example for an individual is the state of his or her domicile. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). As Plaintiff expressly alleges that Epstein is a resident of California, (Compl., ¶25), Florida cannot be considered her domicile, and therefore there is no general personal jurisdiction over Epstein.

Plaintiff also alleges that the "[t]he Influencers engage in substantial activities within Florida and a substantial portion of the swimwear is promoted using Florida Locations." (Compl., ¶31). But this allegation cannot be credited because it is barebones, conclusory, and insufficiently pleaded, as it fails to identify any facts relating to Epstein's purported activities within Florida. Plaintiff compounds the pleading deficiencies from this generalized statement by also lumping together eight "Influencer" Defendants. Plaintiff cannot allege personal jurisdiction *en masse* , of all Defendants as "influencers" is, moreover, legally because Plaintiff must establish personal jurisdiction over Epstein individually rather than as an amalgamation with seven other "Influencer" Defendants.  *Accord Keeton*, 465 U.S. at 779 n.13 ("Each defendant's contacts with the forum State must be assessed individually."). As for the alleged promotion of the swimwear "using Florida Locations," (Compl., ¶31), that, too, does not succeed in even alleging general personal jurisdiction.  The Complaint does not allege that ***Epstein*** herself made such use of Florida locations, nor are there any facts sufficient to permit the plausible inference that there was such extensive use

of Florida locations so as to provide the necessary continuous and systematic business contact with Florida for purposes of general jurisdiction.

Plaintiff's further allegation that Epstein "transact[s] business in Florida over the internet and actively solicit[s] business in Florida," (Compl., ¶25), is also insufficient. Such "naked assertions devoid of further factual enhancement" fail to plausibly allege a basis for personal jurisdiction. *Storms v. Haugland Energy Grp., LLC*, No. 18-CV-80334, 2018 WL 4347603, at *3 (S.D. Fla. Aug. 17, 2018) (dismissing for lack of personal jurisdiction because jurisdictional allegations failed to state plausible basis for personal jurisdiction). In any event, courts have routinely found that publications on the internet, whether through social media or a traditional website, without more, do not provide personal jurisdiction if they are accessible to the country at large and do not specifically target the forum state's citizens. *Regent Grand Mgmt. Ltd. v. Tr. Hosp. LLC*, No. 18-21445-CIV, 2019 WL 1112553, at *6 (S.D. Fla. 2019) ("Finally, to the extent that Plaintiffs claim that the infringing content is viewable on White Sands' website, that argument is futile because the mere posting of content to a website does not create general jurisdiction in Florida.").[1]

Courts reject conferring personal jurisdiction upon a defendant for internet posts because such an approach would risk subjecting the defendant to personal jurisdiction

---

[1] *See also Organic Mattresses, Inc. v. Enviornmental Res. Outlet, Inc.*, No. 17-21905-CIV, 2017 WL 5665354, at *9 (S.D. Fla. 2017) ("Plaintiffs' final argument is that the infringing content on Defendants' website is *viewable* in Florida. This meager argument fails because the mere posting of content to a website does not create general jurisdiction in Florida."); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be hauled into court in that state without offending the Constitution.").

in *any internet-accessible forum* in the Country, which would impermissibly encroach upon the bedrock principles of due process of law, such as notions of fair play and predictability. *Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*, No. 8:17-CV-1584-T-23AEP, 2017 WL 4182405, at *4 (M.D. Fla. Sept. 21, 2017) ("Even if the Missouri bar created the Yelp or TripAdvisor page, the exercise of personal jurisdiction in this circumstance up-ends the protection of due process and risks subjecting the defendant to personal jurisdiction in any Internet-accessible forum (that is, everywhere in the United States)."); *Storm*, 2020 WL 7415835, at *10 ("[T]he mere posting of content to a website does not create general jurisdiction in Florida… To hold otherwise would 'render any individual or entity that created... a website subject to personal jurisdiction' for virtually any matter.").[2]

For those same reasons, courts have specifically found that posts on Instagram and other social media platforms do not subject the poster to the forum state's general personal jurisdiction. *BTG Pat. Holdings, LLC v. Bag2Go, GmbH*, 193 F. Supp. 3d 1310, 1319 (S.D. Fla. 2016) ("The only actions possibly relating to Florida that BTG

---

[2] *See also Liberty Media Holdings, LLC v. Letyagin*, No. 11-62107-CV, 2011 WL 13217328, at *4 (S.D. Fla. Dec. 14, 2011) ("Precedent, however, establishes that maintaining a website accessible to users in a jurisdiction does not subject a defendant to be sued there; those users must be directly targeted, such that the defendant can foresee having to defend a lawsuit."); *Instabook Corp. v. Instapublisher.com*, 469 F. Supp. 2d 1120, 1127 (S.D. Fla. 2006) (finding insufficient contacts in a patent infringement case because, among other reasons, "Defendant could not reasonably anticipate being haled into court in Florida based on its operation of interactive websites accessible in Florida and its sales to two Florida residents" in the absence of "targeting or solicitation of Florida residents")

identifies are Internet press releases, third party news stories, and [Instagram] activities. These actions alone are insufficient to support personal jurisdiction.").[3]

Because the only two paragraphs in the Complaint relating to Epstein's contacts with Florida are impermissibly conclusory, lump multiple Defendants together, cannot establish sufficient jurisdictional contacts as a matter of law, and because the remainder of the Complaint fails to make any other allegations relating to Epstein's connections with Florida, the Court should find the Complaint fails to plausibly allege general personal jurisdiction on its face.

### ii. The Complaint Facially Fails to Provide a Basis for Specific Personal Jurisdiction or Minimum Contacts.

The Complaint fares no better in alleging specific jurisdiction over Epstein. Specific jurisdiction requires that a defendant purposefully directed her activities at the State of Florida and that the plaintiff's claimed injury arose from those same activities.

---

[3] *See also Estes v. Rodin*, 259 So. 3d 183, 196 (Fla. 3rd DCA 2018) (finding Facebook group was passive website that did not confer personal jurisdiction); *Patterson v. Baller Alert, Inc.*, No. 218CV07068RGKAFMX, 2018 WL 11354104, at *3 (C.D. Cal. Dec. 10, 2018) ("Here, Defendants… publish daily postings via Instagram, which Instagram users worldwide can view. Defendants have never conducted business in California, nor solicited business from any California resident… these online activities suggest passive contact with California and do not rise to the level of any factor establishing general jurisdiction."); *BMN Ent., LLC v. Je'Caryous Johnson Ent. LLC*, No. 22 C 03741, 2022 WL 4094164, at *6 (N.D. Ill. Sept. 7, 2022)(finding in part that Instagram posting did not support minimum contacts because it did not specifically target Illinois); *Sullivan v. Bickler*, 360 F. Supp. 3d 778, 784 (N.D. Ill. 2019) (same); *Blue Star Kitchen, Inc. v. Manuel*, No. 1:20-CV-3886-CAP, 2021 WL 3423243, at *4 (N.D. Ga. Apr. 29, 2021) ("Numerous courts have held that the offering of a product for sale on a website fails to establish personal jurisdiction wherever a person may buy the product, *i.e.* wherever that website is available… In many of the cases, the Ninth Circuit found that 'something more' than an internet advertisement alone was necessary to show that the defendant purposefully directed activity to the forum state. The court finds this same reasoning applicable to social media posts on platforms such as Twitter and Instagram. The fact that the Manuel brothers' social media posts could be viewed by individuals in Georgia is not sufficient to support the exercise of personal jurisdiction.").

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985). Similarly, to constitute minimum contacts for purposes of personal jurisdiction, the defendant's contacts with the applicable forum must: (1) be related to the plaintiff's cause of action or have given rise to it; (2) involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefit and protection of its laws; and (3) be such that the defendant should reasonably anticipate being hauled into court there. *See id.* It is black letter law that the "'minimum contacts' necessary to create specific jurisdiction…. must arise out of contacts that the defendant [herself] creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Here, Plaintiff has failed to allege any facts showing Epstein purposely directed her activities at the State of Florida or that Plaintiff's injuries occurred due to any such conduct by Epstein. Indeed, Plaintiff's Complaint fails to specifically allege what, when, why, or how Epstein allegedly violated FDUTPA or otherwise violated any law. Plaintiff fails to identify even one single instance where Epstein supposedly endorsed Luli Fama swimwear or she conducted any business with or sold anything to Plaintiff. As there is literally no allegation in the Complaint connecting Plaintiff's asserted injuries to any conduct by Epstein whatsoever, the Court should find Plaintiff has failed to allege a basis for specific personal jurisdiction over Epstein.

### iii.   *Epstein's Testimony Refutes Plaintiff's Allegations of Personal Jurisdiction.*

Even if the Court finds Plaintiff's Complaint plausibly alleges personal jurisdiction, Epstein's sworn testimony refutes the allegations. Epstein has engaged in

no substantial activities within Florida, let alone the "continuous and systematic business contact" required for general personal jurisdiction. Epstein is an Australian citizen temporarily residing on a visa in Los Angeles, California. (Epstein Decl. at ¶2). Epstein does not own any offices, assets, or real estate in Florida. (*Id.* at ¶3). She does not target Florida in any way shape or form, and she has not conducted business with or sold anything to Plaintiff. (*Id.*) To the extent it is even relevant given a conclusory, fact-free, and generalized free-standing allegation in the Complaint, (Compl., ¶4), Epstein likewise did not "devise a scheme" with Luli Fama to "recommend Luli Fama products, pretending [to be a] disinterested and unaffiliated consumer[]."  (Epstein Decl. at ¶4). Accordingly, because the record evidence before this Court precludes a *prima facie* showing of personal jurisdiction, the Court should find personal jurisdiction does not exist and, consequently, dismiss the Complaint. *See Wiggins*, 147 So. 3d at 85.

## III.  Plaintiff Fails to State a Plausible Claim for Relief.

### A. The Standard.

A pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient, nor are mere naked assertions. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial

14

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citation omitted).

### B. Plaintiff's Complaint Should be Dismissed as a Shotgun Pleading.

Before addressing deficiencies with particular claims, the Complaint should first be dismissed as an impermissible shotgun pleading. "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). "When a plaintiff violates these basic pleading rules—*e.g.*, by filing a 'shotgun pleading'—problems arise for litigants and judges." *Gergenti v. Ethicon, Inc.*, No. 2:20-CV-428-FTM-38MRM, 2020 WL 7695646, *1 (M.D. Fla. Dec. 28, 2020). Among other faults, "[t]hey waste scarce judicial resources, inexorably broaden[ ] the scope of discovery," and fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018); *Weiland*, 792 F.3d at 1323. The Eleventh Circuit finds shotgun pleadings so problematic that it has encouraged "District Courts [to] demand[ ], on their own initiative, that the parties replead the case." *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127 (11th Cir. 2014).

One impermissible type of shotgun pleading occurs where plaintiff asserts multiple claims against multiple defendants without specifying which applies to

15

whom. *Yeyille v. Miami Dade Cnty. Pub. Sch.*, 643 F. App'x 882, 884 (11th Cir. 2016); *Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197 (M.D. Fla. 2021). Such "lumping together" of defendants fails to put each defendant on notice of their individualized conduct that is alleged to be unlawful. *Yeyille*, 643 F. App'x at 884; see *also*, *e.g.*, *Smith v. United Mechanical, LLC*, No. 2:21-CV-786-JLB-KCD, 2022 WL 17338858, at *4 (M.D. Fla. Nov. 30, 2022) ("'It is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief,' where … the complaint indiscriminately lumps together multiple defendants without specifying how each is responsible for acts or omissions that give rise to a claim for relief."); *Thomas v. University of Miami*, No. 22-20296 CIV, 2022 WL 17400904, at *2 (S.D. Fla. Dec. 2, 2022) ("Count V lumps together all of the Defendants without identifying the allegedly wrongful conduct committed by each. In addition, the complaint includes numerous vague and conclusory allegations.").

Here, Plaintiff vaguely lumps at least eight Defendants' alleged conduct together, stating each "Influencer" promoted swimwear without specifying the differences between each Defendant's purported promotions. The Complaint does not identify the medium on which Epstein allegedly made the violative posts or even the post(s) by Epstein that somehow violated the law and injured Plaintiff. Epstein is left to guess what conduct by her – as opposed to others – is the basis for the claims being asserted against her.

Plaintiff must identify the alleged conduct by Epstein specifically, and not as an undifferentiated amalgamation with at least seven other "Influencers," to satisfy Rule

10(b), which Plaintiff has failed to do. *Zimmerman*, 521 F. Supp. 3d at 1202 (finding plaintiff violated Rule 10(b) by lumping multiple defendants together based on Twitter posts because plaintiff was required to make specific allegations unique to each Twitter user's posts). By impermissibly lumping Epstein together with multiple "Influencers," despite the fact each engaged in separate conduct and postings, Plaintiff has violated Rule 10(b), and the Complaint must be dismissed.

### C. None of Plaintiff's Three Causes of Actions is Sufficiently Alleged.

In addition to being a shotgun pleading, the Complaint fails to state a claim for relief under Federal Rule of Civil Procedure 9(b)'s requirement of pleading with particularity that applies to each of the three claims, as well as the lesser plausibility pleading standard.

#### 1. All of Plaintiff's Claims are Subject to the Heightened Pleading Requirements of Fed. R. Civ. P. 9(b).

Federal Rule of Civil Procedure 9(b) applies to each of the three causes of action asserted by Plaintiff, namely (1) FDUTPA, (2) unjust enrichment; and (3) negligent misrepresentation. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Plaintiff's negligent misrepresentation claim is subject to Rule 9(b) as a matter of law. *Hazen Constr., LLC v. BellSouth Telecommunications, Inc.*, No. 6:11-CV-516-ORL-35DAB, 2011 WL 13298583, at *2 (M.D. Fla. May 10, 2011) ("The particularity requirement of FED. R. CIV. P. 9(b) 'applies to claims for negligent misrepresentation under Florida law because negligent misrepresentation 'sounds in fraud.'"); *Linville v.*

*Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010). The FDUTPA and unjust enrichment claims, too, are subject to Rule 9(b)'s heightened pleading standard because they sound in fraud. *Hummel v. Tamko Bldg. Prod., Inc.*, No. 6:15-CV-910-ORL-40GJK, 2015 WL 12843907, at *2 (M.D. Fla. Nov. 6, 2015) ("[W]here FDUTPA claims sound in fraud, federal courts apply the heightened pleading standard of Rule 9(b)."); *Allstate Indem. Co. v. Florida Rehab & Injury Centers Longwood, Inc.*, No. 6:15-CV-1740-ORL-41GJK, 2016 WL 7177624, at *3 (M.D. Fla. July 26, 2016) (applying Rule 9(b) to unjust enrichment claim).

When determining whether a claim sounds in fraud, the court must look to the entire complaint; assertions of concealment are sufficient to show allegations based on fraud. *Hummel*, 2015 WL 12843907, at *3. Here, Plaintiff specifically states his claims against Epstein are based on fraud and concealment. (Compl. at ¶¶3, 15, 39, 17, 68, 69) ("For a fee, each of the Influencers… engaged in a deceptive act or unfair practice, by engaging in *fraud* and statutory violations"). Consequently, Plaintiff's FDUTPA and unjust enrichment claims are subject to Rule 9(b).

To satisfy the particularity requirements of Rule 9(b), Plaintiff's Complaint must allege: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making, (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud. *Hummel*, 2015 WL 12843907, at *3.

### 2.  Plaintiff's FDUTPA Claim Must be Dismissed.

Plaintiff asserts Epstein violated FDUTPA because she allegedly "violated the FTC Act," under 15 U.S.C. §45(a). (Compl. at ¶¶17, 69). This claim fails for a number of reasons. Plaintiff's and his counsel's effort to manufacture a class claim under FDUTPA for money damages (and attorneys' fees) out of a purported – but never specified – violation of the Federal Trade Commission Act ("FTC Act") is utterly flawed. To the extent a FDUTPA claim is even cognizable for an alleged FTC Act violation, Plaintiff fails to state facts sufficient to allege the necessary elements for a FDUTPA claim, and it hard to imagine how that could be done for the FTC Act violation vaguely alleged (but never specifically identified) against Epstien.

### i.    There is no Private Right of Action Under the FTC Act.

The FTC Act does not provide a private right of action and, consequently, cannot support a FDUTPA claim. *Carson v. Ocwen Loan Servicing, LLC*, No. 2:18-CV-447-FTM-99CM, 2018 WL 4354815, at *1 (M.D. Fla. Sept. 12, 2018). The administration of the Federal Trade Commission Act "is in the hands of the administrative agency and not the private citizen." *Roberts v. Cameron–Brown Co.*, 556 F.2d 356, 361 n. 6 (5th Cir. 1977). "There is no private cause of action implied under the Federal Trade Commission Act." *Lingo v. Albany Dep't of Cmty. & Econ. Dev.*, 195 F. App'x. 891, 894 (11th Cir. 2006); *Monacelli v. Lee County Educ. Ass'n*, 2:08–CV–893–FTM–29DN, 2009 WL 256407, at *4 (M.D. Fla. Feb. 3, 2009). Only the commissioner may bring a complaint for violations of this section. See *Federal Trade*

*Comm'n v. Klesner*, 280 U.S. 19, 25 (1929); *see also Deutsche Bank Nat'l. Tr. Co. v. Foxx*, 971 F. Supp. 2d 1106, 1119 (M.D. Fla. 2013). Consequently, another court in this District has found that a FDUTPA claim based on the FTC Act fails as a matter of law:

> "The Court agrees that there is no private right of action provided by the FTCA. 'There is no private right of action implied under the Federal Trade Commission Act.' *Lingo v. Albany Dep't of Cmty. & Econ. Dev.*, 195 F. App'x 891, 894 (11th Cir. 2006) (citing Roberts v. Cameron–Brown Co., 556 F.2d 356, 361 n. 6 (5th Cir. 1977) (noting that "regulation is in the hands of the administrative agency, and not the private citizen")). *See also Deutsche Bank Nat. Trust Co. v. Foxx*, 971 F.Supp.2d 1106, 1119 (M.D. Fla. 2013). And **plaintiff's response that Florida allows for an FTCA-like cause of action through FDUTPA does not compel a different result. Therefore, Count II is dismissed with prejudice**."

*Carson*, 2018 WL 4354815, at *2 (emphasis added). The Court should dismiss Plaintiff's FDUTPA claim.

### ii.    *Plaintiff Fails to Adequately Plead his FDUTPA Claim.*

"[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Here, Plaintiff fails to sufficiently plead each element, whether reviewed under Rule 8 or 9(b).

Plaintiff's allegations in support of his FDUTPA claim clearly fail to satisfy Rule 9(b)'s particularity requirement. Plaintiff does not identify any specific endorsement or posting made by Epstein, let alone any statement she made, the time and place of each statement, their contents, or what Epstein specifically "obtained" from her unspecified postings. In fact, Plaintiff fails to identify any of Epstein's conduct

20

whatsoever – as he does not identify what, when, or how Epstein allegedly promoted Luli Fama swimwear in any way, shape, or form. Nor does he ever identify, with particularity or otherwise, how anything Epstein allegedly did caused him to suffer damages. Accordingly, the FDUTPA claim must be dismissed for failing to satisfy Rule 9(b). *Hummel*, 2015 WL 12843907, at *3; *Llado-Carreno v. Guidant Corp.*, No. 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. 2011) ("[Plaintiff's complaint] is not supported by any specific facts, and as a consequence… [t]he FDUTPA claim must therefore be dismissed."); *Blair v. Wachovia Mortg. Corp.*, No. 5:11-CV-566-OC-37TBS, 2012 WL 868878, at *4 (M.D. Fla. 2012) ("Plaintiff's Complaint 'sounds in fraud'…. The Complaint does not, however, contain the 'particularity' that Rule 9(b) requires…. As such…Plaintiff['s]FDUPTA…claims are due to be dismissed.").

However, even if only the plausibility requirement of Rule 8 applies, the FDUTPA claim would be due to be dismissed under this standard as well. Again, the Complaint fails to plausibly identify the "deceptive act or unfair practice" that Epstein is responsible for, as Plaintiff fails to identify any particular ads, endorsements, or postings at all, nor does he provide an explanation for what aspect of them is deficient, falling short of placing Defendants on notice of the grounds of the claim asserted against them. *See Echols v. R.J. Reynolds Tobacco Co.*, No. 2:13-CV-14215-KMM, 2014 WL 12199984, at *4 (S.D. Fla. Feb. 18, 2014) (finding plaintiff failed to plausibly plead a deceptive act by failing to provide circumstances). In *Lokai Holdings LLC v. Twin Tiger USA LLC*, the Southern District of New York dismissed a similar FDUTPA claim for these same reasons, finding counter-plaintiff's conclusory allegations that social media

21

influencers violated the FTC guidelines by providing inadequate disclosures failed to sufficiently identify counter-defendant's deceptive conduct and was, consequently, not well pleaded. 306 F. Supp. 3d 629, 641 (S.D.N.Y. 2018). Here, ***Plaintiff fails to allege any plausible violation by Epstein of any rule under the FTC Act in the first place***. For that same reason, the Complaint fails to allege a deceptive act and should be dismissed.

Plaintiff likewise fails to plead actual damages. For purposes of FDUTPA, "the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rollins, Inc.*, 951 So. 2d at 869. FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment. *See id*. Here, Plaintiff contends without any explanation that the Luli Fama products he purchased were of "inferior quality," and that Defendants "artificially inflate[d] the prices for Luli Fama products," causing them to be of "lower value" than what he expected (Compl., ¶¶4, 13, 56). However, Plaintiff's conclusory statements fail to identify or plausibly explain *how* Epstein's purported (but unidentified) misrepresentations resulted in a sales price higher than the market value of the purchased products. "Because [Plaintiff] cannot show any pecuniary loss or other inconvenience arising from" any purported conduct by Epstein, "[ ]he cannot plead actual damages, and [his] claim under FDUTPA is deficient as a matter of law." *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686-CIV, 2013 WL 6328734, at *5 (S.D. Fla. Dec. 5, 2013)

This also means that the second element, causation, is particularly lacking. "[C]ausation [under FDUTPA] must be direct, rather than remote or speculative." *Stewart Agency, Inc. v. Arrigo Enterprises, Inc.*, 266 So. 3d 207, 213 (Fla. 2d DCA 2019) (quoting *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015)). Where a FDUTPA plaintiff fails to show he would not have been damaged *but-for* defendant's conduct, he also fails to show causation and his claim must be dismissed. *See Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012). Plaintiff does not and cannot plausibly allege that Epstein's purported posting of social media without the disclosures Plaintiff contends were required to be made (which, again, are never identified or detailed in the Complaint), caused any supposed "inferior quality." Nor does the Complaint allege that Plaintiff would not have purchased the products had certain disclosures been made, nor would any such allegation make sense.

### 3.  Plaintiff's Unjust Enrichment Claim Must be Dismissed.

"The essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Rollins, Inc.*, 951 So. 2d at 876. None of these elements is plausibily stated and certainly not with the particularity required by Rule 9(b).  The Complaint does not identify a single benefit conferred by Plaintiff upon Epstein and, in fact, does not allege any transaction occurred between them at all. As any first-year law student

should know, an unjust enrichment claim requires the purported benefit be ***directly*** conferred by the plaintiff upon the defendant, which is not alleged to nor could it have occurred here. *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) ("[T]o prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant."). Likewise, the Complaint fails to identify any appreciation of a benefit retained by Epstein—probably because no benefit is alleged to begin with—nor does Plaintiff attempt to allege Epstein's retention of said benefit would be inequitable.

Plaintiff's unjust enrichment claim must be dismissed because it sounds in tort rather than equity. This Court has previously found that unjust enrichment "may not be predicated on a wrong committed by a defendant." *State Farm Mut. Auto. Ins. Co. v. Lewin*, 535 F. Supp. 3d 1247, 1266 (M.D. Fla. 2021). When an inequity is based "on wrongful conduct of a defendant," the right to recover "arises from the wrong of the alleged tort rather than unjust enrichment." *Electrostim Med. Servs., Inc. v. Lindsey*, No. 11–CV–2467, 2012 WL 1560647, at *4 (M.D. Fla. 2012) (Covington, D.J.). Even if the tort claim is insufficient as a matter of law, plaintiff cannot alternatively bring an unjust enrichment claim based on wrongful conduct. *Guerro v. Target Corp.*, 889 F. Supp. 2d 1348, 1357 (S.D. Fla. 2012); *Day v. Sarasota Doctors Hospital, Inc.*, No. 19-CV-1522, 2020 WL 7390153, at *7 (M.D. Fla. Feb. 7, 2020) (Covington, D.J.) (finding plaintiff's right to recover for the defendant's wrongful acts arose from a FDUTPA claim, not unjust enrichment). Here, Plaintiff's unjust enrichment claim is based on the same wrongful conduct underlying the alleged FDUTPA violation, as both claims are based on the same purported "illegal, unethical, [and] unscrupulous" conduct.

(Compl. At ¶¶69-70, 78). Consequently, Plaintiff's unjust enrichment claim should be dismissed because it is impermissibly based on tortious conduct.

Likewise, Plaintiff's unjust enrichment claim must be dismissed because Plaintiff possesses, at least in theory, another adequate statutory legal remedy. Courts in the Middle District of Florida have recognized that "unjust enrichment is...not available where there is an adequate legal remedy.'" *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005). Thus, when an unjust enrichment claim is based on the same factual allegations underlying a FDUTPA claim, it must be dismissed because the FDUTPA claim provides the plaintiff with an adequate statutory remedy. *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., L.P.*, No. 12-CV-1366, 2013 WL 12172912, at *6 (M.D. Fla. Aug. 28, 2013) ("Defendants maintain that Plaintiff cannot plead unjust enrichment—an equitable, quasi-contract claim—because it has an adequate remedy at-law; namely, its express warranty and FDUTPA claims. Defendants are correct."). Here, Plaintiff has not stated that his unjust enrichment claim is brought "in the alternative" and attempts to bring his unjust enrichment claim in addition to his FDUTPA claim, which is impermissible. Therefore, the unjust enrichment claim should be dismissed for this reason as well.

### 4.  Plaintiff's Negligent Misrepresentation Claim must be Dismissed.

"To prove negligent misrepresentation, it must be shown that (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended

to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation." *Baggett v. Electricians Local 915 Credit Union*, 620 So.2d 784, 786 (Fla. 2d DCA 1993). Moreover, "[t]o succeed in a claim for negligent misrepresentation, the plaintiff must show the defendant owed it a duty of care. If no duty exists, the claim must fail." *Levine v. Wyeth Inc.*, 684 F. Supp. 2d 1338, 1347 (M.D. Fla. 2010) (citations omitted).

As discussed above, the Complaint fails to identify a single misrepresentation made by Epstein, nor does it allege Epstein "knew" of the unidentified misrepresentation, as no misrepresentation is identified to begin with. The Complaint equally fails to allege Epstein intended to induce Plaintiff with a misrepresentation or that Plaintiff was injured by Epstein's representations. These deficiencies are obvious whether reviewed under Rule 9(b)'s particularity requirement or the plausibility pleading standard. Yet another overarching and fundamental deficiency with this claim is that Epstein had no duty of care to Plaintiff. Plaintiff does not even attempt to plead Epstein had a duty of care, as such a duty does not exist. Accordingly, the Court should dismiss Plaintiff's negligent misrepresentation claim, too. *Levine*, 684 F. Supp. 2d at 1347 ("[T]he Court finds as a matter of law that Defendants did not owe a duty of care to Plaintiff. Thus, Plaintiff's claim for negligent misrepresentation fails….").

## CONCLUSION

For the reasons stated, the Court should dismiss Defendant Gabrielle Epstein from this lawsuit.

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel certifies that, pursuant to Local Rule 3.01(g), on December 27, 2022, Jeffrey Backman, Esq., counsel for Defendant, spoke with Keith Gibson, Esq., counsel for Plaintiff, *via* teleconference regarding the subjects of this Motion and the relief requested. The parties do not agree on the resolution of this Motion.

DATED:  December 28, 2022                    GREENSPOON MARDER LLP

                                            BY: */s/ Jeffrey A. Backman*
                                            JEFFREY A. BACKMAN
                                            Florida Bar No. 662501
                                            ROY TAUB
                                            Florida Bar No. 116263
                                            SHANE MCGLASHEN
                                            Florida Bar No. 1018642
                                            jeffrey.backman@gmlaw.com
                                            roy.taub@gmlaw.com
                                            shane.mcglashen@gmlaw.com
                                            jessica.serrano-cartagena@gmlaw.com
                                            cheryl.cochran@gmlaw.com
                                            200 East Broward Boulevard, Ste. 1800
                                            Fort Lauderdale, Florida 33301
                                            Telephone: 954.491.1120
                                            Facsimile:  954.343.6958

                                            *Attorneys for Defendant Gabrielle Epstein*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 28, 2022, a copy of the foregoing was electronically filed with the Court through CM/ECF, which will forward and serve a copy upon all counsel of record in compliance with the Federal Rules of Civil Procedure.

*/s/ Jeffrey A. Backman*
JEFFREY A. BACKMAN