## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ALIN POP, individually and on
behalf of all those similarly situated,      Case No.: 8:22-cv-02698-VMC-JSS

                     Plaintiff,

v.

LULI FAMA.COM, LLC, et al.,

                     Defendants.

_____

## MOTION TO COMPEL BETTER DISCOVERY RESPONSES
## AND FOR RULE 37 SANCTIONS

Plaintiff, ALIN POP, by and through his undersigned counsel and pursuant to Rules 33, 34 and 37(a)(3)(B) of the Federal Rules of Civil Procedure, and the Court's Scheduling Order, hereby files a Motion to Compel Better Discovery Responses from Gabrielle Epstein and for Rule 37 Sanctions, in support thereof, states as follows:

### STATE OF LITIGATION

After the Court **twice** rejected arguments related to a stay of discovery [ECF#42, ECF#73], defendant Epstein is defying the Court's orders and staying discovery of her own accord, refusing to engage in a meaningful discovery process on a class-wide basis, or to treat seriously her obligations under Rule 33, 34 and 37.

More than three months since the first discovery requests were propounded, defendant Epstein has produced no documents whatsoever, and no meaningful

answers to the interrogatories. Epstein's position is that the relevant evidence is solely in possession of the named plaintiff. This is absurd.

This is a class action lawsuit involving an e-commerce company manufacturing swimwear and selling the swimwear online at inflated prices due to undisclosed promotion and advertising of its products by social media influencers, including Epstein. This case is about an unscrupulous integrated clothing manufacturer and retailer working hand in hand with unscrupulous influencers to bilk members of the unsuspecting public. And, ultimately, this case is also about deceit. While Defendants keep splitting hairs about what post the Plaintiff saw where the Influencers were promoting Luli Fama products[1], there is no question that both the Influencers and Luli Fama are deceiving the Plaintiff and the class members. They did so, and continue to so, by making consumers believe the Influencers are endorsing a product solely because they believe it to be worth wearing at the cost charged by the retailer, when, in fact, they are paid to wear that product and post pictures on social media. (*See* ECF#57, pp. 2,3).

Despite the Court's repeated Orders denying a stay of discovery or any bifurcation in discovery [ECF#42, ECF#73], defendant Epstein is acting like the above requests were granted and she is repeatedly presenting the same arguments that were rejected by the Court.

---

[1] Plaintiff has timely answered discovery disclosing a significant number of Instagram posts he relied on in purchasing LuliFama products, including from Defendant Epstein, thereby negating Defendant's position.

Defendant Epstein, represented by four (4) lawyers belonging to an AM200 law firm, is responding to discovery with multiple objections, delaying meet and confer conferences (that are usually unfruitful anyways), all in an effort to overwhelm Plaintiff and his counsel, frustrate and delay the case, and avoid any and all legal obligations they have in this case.

"A party may move to compel discovery about any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case." *Hyperponic, LLC v. Carroll* (M.D. Fla., Feb. 21, 2019, No. 8:18-CV-1992-T-30AAS) 2019 WL 763804, at *1 (citing Fed. R. Civ. P. 26(b)(1) & 37(a)). In this case the Gabrielle Epstein failed to properly respond to all of Plaintiff's discovery requests.

## MEMORANDUM OF LAW

In order to be able to prove their case, it is essential for the Plaintiff to have access to the basic and essential documents and information relevant to this case. "Discovery helps parties ascertain facts that bear on issues." *Gabbard v. Electric Insurance Company* (M.D. Fla., Aug. 11, 2022, No. 8:22-CV-384-TPB-AAS) 2022 WL 3282653, at *1 (citing *ACLU of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1340 (11th Cir. 2017))

The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of its case." *Callaway v. Papa John's USA, Inc., 2010 WL 4024883, *4 (S.D. Fla., Oct. 12, 2010)* (citing Adv. Com. Notes, 1946 Amendment, R. 26, Fed. R. Civ. P.). The overall purpose of discovery under the Federal Rules is to require the disclosure

of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. *Chatman v. Nat'l R.R. Passenger Corp.*, 246 F.R.D. 695, 696 (M.D. Fla. 2007).

"A party may move to compel discovery about any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case." *Hyperponic, LLC v. Carroll* (M.D. Fla., Feb. 21, 2019, No. 8:18-CV-1992-T-30AAS) 2019 WL 763804, at *1 (citing Fed. R. Civ. P. 26(b)(1) & 37(a)).

## FIRST SET OF INTERROGATORIES

The first set of Interrogatories (Exhibit 1) consisted of only four interrogatories. Defendant provided incomplete answers to two interrogatories and provided only objections for the other two (Exhibit 2).

**Interrogatory #1:**
*Please list your current full name, address, and your social media handles. Please list any social media sites where you had an account, including Instagram, during the Relevant Time Period. If your name or social media handle changed during the during the Relevant Time Period, please list all the names and handles used.*

**Response:**
*Gabrielle Grace Epstein, 555 Barrington Avenue #311, Los Angeles, CA 90049. Epstein's social media handles can be found at https://hoo.be/gabbyepstein.*

Epstein did not raise any objections to this interrogatory.

During a meet and confer phone call on April 5, 2023, Roy Taub, the attorney signing the responses, confirmed that the response to Interrogatory #1 is correct and complete. Counsel for Plaintiff confirmed by an email sent on April 6, 2023 (Exhibit

3). However, brief research of the public domain show that the responses are, at a minimum, incomplete.

Defendant Epstein answered that the social media handles can be found at: https://hoo.be/gabbyepstein, a link that is listing some of her handles.

However, on her Instagram profile, Epstein lists at least one another Instagram account that belongs to her: @notgabbyepstein. This handle, and possible many others, are **not** indicated in the responses to Interrogatories.



Also, on her Instagram profile, she is directing visitors to check: https://linktr.ee /gabbyepstein for a list of handles to other social media sites. This link is showing, for example, a TikTok handle that was not included in the answers to the interrogatories.  A simple check by counsel would have revealed this additional responsive information.

**Interrogatory #2:**
 *Please list all the email addresses you used during the Relevant Time Period.*

**Response:**
 *gab_epstein@hotmail.com and hi.gabbyepstein@gmail.com.*

Epstein did not raise any objections to this interrogatory.

Both during a meet and confer call on April 5, 2023, and by email on April 6, 2023, Roy Taub, attorney for Epstein confirmed the response to Interrogatory #2 are correct and complete. However, brief research of the public domain show that the responses are, at least, incomplete. At the time of answering interrogatories, Defendant Epstein was listing on Instagram: **hello.gabbyepstein@gmail.com** as her email address, address which was not disclosed.  A simple check by counsel would have revealed this additional responsive information.



Providing answers that are obviously incomplete and refusal to participate in discovery are sanctionable by the Court.  *Maus v. Ennis*, 513 Fed. Appx. 872, 878 (11th Cir. 2013). As in *Ennis*, here, the discovery responses are evasive and willfully incomplete, as it defies credence that counsel and defendant did not realize that the actual email address used by Epstein should be included in the responses. Defendant and her learned counsel cannot claim negligence or a misunderstanding on such a simple request.

**Interrogatory #3:**

*Please identify all amounts of money, payments, legal tender or other forms of consideration you received, directly or indirectly, from Defendant LuliFama. For each amount identify the date of payment, reason for payment, number of posts and stories created in exchange for the payment, other agent(s) or intermediaries involved in facilitating the contact with Defendant LuliFama.*

**Response:**

(i)[2] *Epstein objects to the request on the grounds that it is vague, ambiguous, and unintelligible as to the meaning of the term "other forms of consideration you received." As the remainder of the request refers to payments, to render this aspect of the request intelligible, Epstein interprets the above-referenced term to refer to monetary payments by Luli Fama to Epstein.*

(ii) *Epstein further objects to this request on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff's Complaint alleges that, "[i]n order to artificially inflate the prices for the Luli Fama products," Epstein and the other Defendants "devised a scheme in which [Epstein, among others] tag[ged] or recommend[ed] Luli Fama products, pretending [she is a] disinterested and unaffiliated consumer[ ]." Compl. at ¶ 4. The Complaint further makes it clear that this supposed misconduct is alleged to have been "disguised Instagram advertising campaigns." Id. at ¶ 10. Indeed, the Complaint refers to Instagram specifically no fewer than thirty-five times. See id. at ¶¶ 6-9, 16, 35-37, 40, 46-47, 49-50, 67, 76, 78, 80. Point in fact, Plaintiff alleges he "is following Defendants on Instagram," and that following is what he alleges "determined" his "decision to purchase the Luli Fama products . . . ." Id. at ¶ 46. The class claims are even defined in terms of "similarly situated Instagram users." Id. at ¶ 76. Discovery relating to any monetary payments by Luli Fama to Epstein not regarding the alleged scheme regarding "disguised" or undisclosed Instagram posts and Luli Fama is therefore not relevant, unduly expands the scope of discovery and the attendant burdens upon Epstein in responding, and is by definition overbroad and disproportional to the needs of the case (as it would have no bearing on any matter of relevance to this case as framed by the Complaint).*

(iii) *Epstein further objects to the request on the grounds that it is overbroad, unduly burdensome, harassing, abusive, malicious, being made in bad faith, and disproportionate to the needs of the case as it is aimed at obtaining information about Epstein that is irrelevant to this case but for use in future, equally frivolous lawsuits against Epstein on flimsy and bad faith bases after plumbing her social media postings for potential new lawsuits. This action is one of several similar putative class actions filed by Plaintiff's counsel on behalf of four different plaintiffs, as part of a money driven but frivolous crusade against, among others, models and social media influencer. This action is one of several similar putative class actions filed by Plaintiff's counsel on behalf of four different plaintiffs, as part of a money driven but frivolous crusade against,*

---

[2] While the paragraphs of the response are not numbered, Plaintiff inserted numbers in order to separate and address each objection.

*among others, models and social media influencer. Of the actions that are no longer pending, all were resolved against Plaintiff's counsel has an uncanny ability to find plaintiffs who claim to monitor Alexa Collins's Instagram account, as this is at least the third lawsuit in which he has named her as a defendant. Epstein will not enable Plaintiff's counsel to do the same to her, particularly when Plaintiff and his counsel have not come close to making a prima facie showing that Epstein is even within this Court's personal jurisdiction.*

To date, no amended response was produced. The Court should overrule all the above objections for the following reasons:

(i) The objection as to "v*ague, ambiguous, and **unintelligible** as to the meaning of the term "other forms of consideration you received.""* should be overruled (emphasis added).

The Interrogatories should be interpreted reasonably, in good faith, and according to the meaning the plain language of the interrogatory would naturally import. When in doubt about the meaning of an interrogatory, the responding party should give it a reasonable interpretation (which may be specified in the response) and offer an answer **designed to provide, rather than deny, information**. Middle District Discovery (2021) at Section (IV)(A)(3). (emphasis added). The plain meaning of the term *"other forms of consideration you received,"* can be reasonably interpreted by the learned counsel representing Epstein (she is represented by no less than four (4) attorneys). A quick internet search or a dictionary search will reveal enough information to decipher the meaning term of *"consideration."* While Epstein seems to interpret consideration as money, which is not what the interrogatory required, it failed to give **any** answer to this interrogatory. The Court should overrule this objection and direct Epstein to answer the Interrogatory.

Also, the objection for overbreadth is not properly raised. Specifically, "[i]f any

interrogatory is objectionable because of overbreadth, the responding party, although objecting, must answer the interrogatory to the extent that the interrogatory is not overbroad. In other words, an objection for overbreadth does not relieve the duty to respond to an extent that is not overbroad, while a party awaits a judicial determination regarding the objection. *Federal Trade Commission v. Vylah Tec LLC* (M.D. Fla., Aug. 2, 2018, No. 217CV228FTM99MRM) 2018 WL 3656474, at *4 citing Middle District Discovery (2015) at IV.C.6, p. at 18. This objection should be overruled.

(ii)  Epstein claims again that the Interrogatory is overbroad, unduly burdensome, seeks irrelevant information, and is disproportional to the needs of the case. The amounts of "money, payments, legal tender or other forms of consideration received, directly or indirectly, from Defendant LuliFama" is at the heart of the case. As the Court observed during the May 15, 2023, hearing, any consideration received, directly or indirectly by the influencers is relevant in this case.   Nevertheless, as discussed above, Epstein did not provide a narrow answer to this interrogatory, but failed to respond.

(iii)  "[L]awyers, out of respect for the adversary system, should make good faith efforts to comply with one another's reasonable discovery requests." *Garvin v. Tidwell*, 126 So. 3d 1224, 1227 (Fla. Dist. Ct. App. 2012) citing *Summit Chase Condo. Ass'n, Inc. v. Protean Investors, Inc.,* 421 So.2d 562, 564 (Fla. 3d DCA 1982). Objecting on the grounds that "*Plaintiff's counsel has an uncanny ability to find plaintiffs who claim to monitor Alexa Collins's Instagram account.*" is unfounded and disparaging to the address of the

officers of the Court sitting on the other side of the table. While discovery in this district should be practiced with a spirit of cooperation and civility, […] personal attacks, which are highly inappropriate and make it difficult for the attorneys to fulfill their duties to manage discovery cooperatively. *Rafferty v. Retrieval-Masters Creditors Bureau, Inc.*, 325 F.R.D. 471, 472–73 (M.D. Fla. 2018), *objections overruled*, 5:17-CV-426-OC-40PRL, 2018 WL 2058153 (M.D. Fla. May 1, 2018). While this is just one of the many attacks aimed at the lawyers representing the Plaintiff, this objection should be overruled.

The argument that "Plaintiff and his counsel have not come close to making a prima facie showing that Epstein is even within this Court's personal jurisdiction." was raised in Epstein's Motion to Stay Discovery and overruled by the Court. [ECF#73].

**Interrogatory #4:**
*For each year during the Relevant Time Period, list the total number of social media followers You had on social media, including Instagram, and the total number of followers based in the United States.*

**Objections to Interrogatory #4**
*Epstein objects to this request on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, and is disproportional to the needs of the case.*
*Plaintiff's Complaint alleges that, "[i]n order to artificially inflate the prices for the Luli Fama products," Epstein and the other Defendants "devised a scheme in which [Epstein, among others] tag[ged] or recommend[ed] Luli Fama products, pretending [she is a] disinterested and unaffiliated consumer[]." Compl. at ¶ 4. The Complaint further makes it clear that this supposed misconduct is alleged to have been "disguised Instagram advertising campaigns." Id. at ¶ 10. Indeed, the Complaint refers to Instagram specifically no fewer than thirty-five times. See id. at ¶¶ 6-9, 16, 35-37, 40, 46-47, 49-50, 67, 76, 78, 80. Point in fact, Plaintiff alleges he "is following Defendants on Instagram," and that following is what he alleges "determined" his "decision to purchase the Luli Fama products . . . ." Id. at ¶ 46. The class claims are even defined in terms of "similarly situated Instagram users." Id. at ¶ 76. Discovery relating to the number of Epstein's followers on any social media platform, including but not limited to Instagram, is therefore not*

*relevant, unduly expands the scope of discovery and the attendant burdens upon Epstein in responding, and is by definition overbroad and disproportional to the needs of the case (as it would have no bearing on any matter of relevance to this case as framed by the Complaint). Indeed, the number of even Epstein's Instagram followers at any point in time bears no relevance to the determination of any material fact relevant to any claim or defense in this case, and the undue and unnecessary burden (and harassing nature of this request) is magnified by the fact that the number of followers is publicly available.*

*Epstein further objects to the request on the grounds that it is overbroad, unduly burdensome, harassing, abusive, malicious, being made in bad faith, and disproportionate to the needs of the case as it is aimed at obtaining information about Epstein that is irrelevant to this case but for use in future, equally frivolous lawsuits against Epstein on flimsy and bad faith bases after plumbing her social media postings for potential new lawsuits. This action is one of several similar putative class actions filed by Plaintiff's counsel on behalf of four different plaintiffs, as part of a money driven but frivolous crusade against, among others, models and social media influencer. Of the actions that are no longer pending, all were resolved against Plaintiff's counsel's clients at the pleadings stage. See Chihaia v. Go Giveaways LLC, 30 Fla. L. Weekly Supp. 23a (Fla. 11th Cir. Ct. Feb. 17, 2022) (dismissing with prejudice for lack of standing due to failure to allege any injury); Colceriu v. Barbary, 574 F. Supp. 3d 1120, 1123 (M.D. Fla. 2021) (dismissing for lack of standing ), aff'd, 21-14370, 2022 WL 3577116 (11th Cir. Aug. 19, 2022); Colceriu v. Collins, Case No. 50-2021-CA- 004981 (Fla. 15th Cir. Ct.) (granting judgment on pleadings in favor of co-Defendant in this case Alexa Collins and dismissing complaint against another defendant with prejudice); Salva and Pop v. 21st Century Spirits, LLC, Case No. 1:22-cv-06083 (N.D. Ill. Nov. 3, 2022) (suing, among others, Collins, and alleging Salva and Pop purchased vodka of inferior quality in August 2022 based on Collins's posts).Plaintiff's counsel has an uncanny ability to find plaintiffs who claim to monitor Alexa Collins's Instagram account, as this is at least the third lawsuit in which he has named her as a defendant. Epstein will not enable Plaintiff's counsel to do the same to her, particularly when Plaintiff and his counsel have not come close to making a prima facie showing that Epstein is even within this Court's personal jurisdiction.*

To date, no amended response or responsive documents have been produced.

As discussed above, the Court should overrule all the above objections. Since the objections are mainly identical with the objections to Interrogatory 3, we will only address the sentences that are different: *[T]he number of even Epstein's Instagram followers at any point in time bears no relevance to the determination of any material fact relevant to any claim or defense in this case, and the undue and unnecessary burden (and harassing nature of this request) is magnified by the fact that the number of followers is publicly available.*

In fact, the number of followers is relevant both to calculate damages and for class certification purposes. Furthermore, the number of followers for 2022, for example is not publicly available and the number of US followers is also unavailable. Since Luli Fama sells products in the United States and the named plaintiff is based in the United States, the number of followers is completely relevant. Furthermore, Epstein claims a lack of connection with the United States (she claims to be *Epstein is an Australian citizen temporarily residing on a visa in Los Angeles, California.* ECF# 30, pg.14) while Instagram lists her account as "based in the United States."

**gabbyepstein** ✔

To help keep our community authentic, we're showing information about accounts on Instagram. **See why this information is important.**

📅 Date joined
February 2012

📍 Account based in
United States

For the above-mentioned reasons, the Court should overrule the objections to the Interrogatory 4 and order Epstein to provide answers.

## FIRST SET OF REQUESTS FOR PRODUCTION

The first set of Requests for Production (Exhibit 1) consisted of only five requests. Defendant did not provide any responsive document and responded only with objections (Exhibit 5).

**Request #1:**
*All documents regarding swimwear products promoted by you on social media (including Instagram), including correspondence, contracts, and payment records.*

**Response:**

Epstein objects to the Request on the grounds that it is overly broad, unduly burdensome, and disproportional to the needs of the case to the extent that it requests "All documents," as opposed to documents responsive to this Request, subject to and as limited by any objections thereto, that is reasonable under the circumstances considering the herculean and unduly burdensome effort to uncover each and every responsive document is not necessary given the permissible scope of discovery as defined by Plaintiff's asserted claims.

Epstein further objects to this request on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff's Complaint alleges that, "[i]n order to artificially inflate the prices for the Luli Fama products," Epstein and the other Defendants "devised a scheme in which [Epstein, among others] tag[ged] or recommend[ed] Luli Fama products, pretending [she is a] disinterested and unaffiliated consumer[ ]." Compl. at ¶ 4. The Complaint further makes it clear that this supposed misconduct is alleged to have been "disguised Instagram advertising campaigns." Id. at ¶ 10. Indeed, the Complaint refers to Instagram specifically no fewer than thirty-five times. See id. at ¶¶ 6-9, 16, 35-37, 40, 46-47, 49-50, 67, 76, 78, 80. Point in fact, Plaintiff alleges he "is following Defendants on Instagram," and that following is what he alleges "determined" his "decision to purchase the Luli Fama products . . . ." Id. at ¶ 46. The class claims are even defined in terms of "similarly situated Instagram users." Id. at ¶ 76. Discovery relating to swimwear other than Luli Fama products and to any supposed promotion other than on Instagram is therefore not relevant, unduly expands the scope of discovery and the attendant burdens upon Epstein in responding, and is by definition overbroad and disproportional to the needs of the case (as it would have no bearing on any matter of relevance to this case as framed by the Complaint). The same is true, and therefore this request is objected to for the same reasons, even as to discovery as to Luli Fama products not regarding the alleged scheme regarding "disguised" or undisclosed Instagram posts and Luli Fama.

Epstein further objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, seeks irrelevant information, and is disproportional to the needs of the case as to the meaning of, subject to the previously asserted objections, "[Luli Fama] swimwear products promoted by you on [Instagram] . . . ." It is unclear if, based on the allegations, to fall within the alleged theory in the Complaint, to fall within "promoted by you" would require that Epstein "tag or recommend Luli Fama products," or if Plaintiff advances some other, broader, plainly unduly burdensome and disproportional meaning of the phrase. Further clarification is required before Epstein can respond. To the extent Plaintiff intends a broad interpretation of the phrase to include any and all Instagram posts where Plaintiff did not tag or recommend Luli Fama products, but may have simply been wearing such a product or made a passing reference, that would impose an undue burden of parsing through Instagram posts to identify potentially responsive documents but documents that are not even relevant as framed by Plaintiff's Complaint, and would plainly exceed the scope of the alleged misconduct – which requires that Luli Fama products be tagged or recommended.

Epstein further objects to the request on the grounds that it is overbroad, unduly burdensome, harassing, abusive, malicious, being made in bad faith, and disproportionate to the

*needs of the case as it is aimed at obtaining information about Epstein that is irrelevant to this case but for use in future, equally frivolous lawsuits against Epstein on flimsy and bad faith bases after plumbing her social media postings for potential new lawsuits. This action is one of several similar putative class actions filed by Plaintiff's counsel on behalf of four different plaintiffs, as part of a moneydriven but frivolous crusade against, among others, models and social media influencer. Of the actions that are no longer pending, all were resolved against Plaintiff's counsel's clients at the pleadings stage. See Chihaia v. Go Giveaways LLC, 30*

*Fla. L. Weekly Supp. 23a (Fla. 11th Cir. Ct. Feb. 17, 2022) (dismissing with prejudice for lack of standing due to failure to allege any injury); Colceriu v. Barbary, 574 F. Supp. 3d 1120, 1123 (M.D. Fla. 2021) (dismissing for lack of standing ), aff'd, 21-14370, 2022 WL 3577116 (11th Cir. Aug. 19, 2022); Colceriu v. Collins, Case No. 50-2021-CA- 004981 (Fla. 15th Cir. Ct.) (granting judgment on pleadings in favor of co-Defendant in this case Alexa Collins and dismissing complaint against another defendant with prejudice); Salva and Pop v. 21st Century Spirits, LLC, Case No. 1:22-cv-06083 (N.D. Ill. Nov. 3, 2022) (suing, among others, Collins, and alleging Salva and Pop purchased vodka of inferior quality in August 2022 based on Collins's posts). Plaintiff's counsel has an uncanny ability to find plaintiffs who claim to monitor Alexa Collins's Instagram account, as this is at least the third lawsuit in which he has named her as a defendant. Epstein will not enable Plaintiff's counsel to do the same to her,*

*particularly when Plaintiff and his counsel have not come close to making a prima facie showing that Epstein is even within this Court's personal jurisdiction.*

It is clear from the verbose objection above that Epstein does not intend to produce any documents. While some statements like "*it is aimed at obtaining information about Epstein that is irrelevant to this case but for use in future, equally frivolous lawsuits against Epstein on flimsy and bad faith bases after plumbing her social media postings for potential new lawsuits,*" are no more than unprofessional and unjustified personal attacks at the address of members of the Bar of the Court, as discussed above this objection should be overruled. Although the Court has "inherent power to control the proceedings and conduct of the parties and counsel," the Middle District of Florida expects parties to coordinate discovery "in 'a spirit of cooperation and civility .'" *Critchlow v. Sterling Jewelers Inc*, 8:18-CV-96-T-30JSS, 2019 WL 13062637, at *1 (M.D. Fla. Jan. 7, 2019), citing *Yaeger v. Hartford Inc. Co. of the Midwest*, No. 8:13-CV-428-T-35MAP, 2014 WL

12634925, at *1 (M.D. Fla. Feb. 27, 2014). Repeated attacks at the address of Plaintiff's counsel do not promote that spirit.

This request is aimed both at calculating damages and proving liability. As discussed supra, these numerous blanket objections should be overruled.

**Request #2:**
   *All documents relating to written or oral contracts or agreements between You and any of the other named defendants in this litigation.*

**Response:**
   *Epstein objects to the Request on the grounds that it is overly broad, unduly burdensome, and disproportional to the needs of the case to the extent that it requests "All documents," as opposed to documents responsive to this Request, subject to and as limited by any objections thereto, that is reasonable under the circumstances considering the herculean and unduly burdensome effort to uncover each and every responsive document is not necessary given the permissible scope of discovery as defined by Plaintiff's asserted claims.*

   *Epstein further objects to this request on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff's Complaint alleges that, "[i]n order to artificially inflate the prices for the Luli Fama products," Epstein and the other Defendants "devised a scheme in which [Epstein, among others] tag[ged] or recommend[ed] Luli Fama products, pretending [she is a] disinterested and unaffiliated consumer[]." Compl. at ¶ 4. The Complaint further makes it clear that this supposed misconduct is alleged to have been "disguised Instagram advertising campaigns." Id. at ¶ 10. Indeed, the Complaint refers to Instagram specifically no fewer than thirty-five times. See id. at ¶¶ 6-9, 16, 35-37, 40, 46-47, 49-50, 67, 76, 78, 80. Point in fact, Plaintiff alleges he "is following Defendants on Instagram," and that following is what he alleges "determined" his "decision to purchase the Luli Fama products . . . ." Id. at ¶ 46. The class claims are even defined in terms of "similarly situated Instagram users." Id. at ¶ 76. Discovery relating to any  contracts or agreements between Epstein and any other Defendant not regarding the alleged scheme involving "disguised" or undisclosed Instagram posts and Luli Fama is therefore not relevant, unduly expands the scope of discovery and the attendant burdens upon Epstein in responding, and is by definition overbroad and disproportional to the needs of the case  (as it would have no bearing on any matter of relevance to this case as framed by the Complaint). If Epstein and another of the individual Defendants agreed by text messages to share expenses on a personal trip together or to split lunch, that would have nothing to do with the issues in this case. Requiring Epstein to go through her documents to respond to such an overbroad and irrelevant request not limited to the allegations in the Complaint creates an incredible burden for an individual defendant to respond to a fishing expedition.*

   *Epstein further objects to the request on the grounds that it is overbroad, unduly burdensome, harassing, abusive, malicious, being made in bad faith, and disproportionate to the*

*needs of the case as it is aimed at obtaining information about Epstein that is irrelevant to this case but for use in future, equally frivolous lawsuits against Epstein on flimsy and bad faith bases after plumbing her social media postings for potential new lawsuits. This action is one of several similar putative class actions filed by Plaintiff's counsel on behalf of four different plaintiffs, as part of a moneydriven but frivolous crusade against, among others, models and social media influencer. Of the actions that are no longer pending, all were resolved against Plaintiff's counsel's clients at the pleadings stage. See Chihaia v. Go Giveaways LLC, 30 Fla. L. Weekly Supp. 23a (Fla. 11th Cir. Ct. Feb. 17, 2022) (dismissing with prejudice for lack of standing due to failure to allege any injury); Colceriu v. Barbary, 574 F. Supp.3d 1120, 1123 (M.D. Fla. 2021) (dismissing for lack of standing ), aff'd, 21-14370, 2022 WL 3577116 (11th Cir. Aug. 19, 2022); Colceriu v. Collins, Case No. 50-2021-CA- 004981 (Fla. 15th Cir. Ct.) (granting judgment on pleadings in favor of co-Defendant in this case Alexa Collins and dismissing complaint against another defendant with prejudice); Salva and Pop v. 21st Century Spirits, LLC, Case No. 1:22-cv-06083 (N.D. Ill. Nov. 3, 2022) (suing, among others, Collins, and alleging Salva and Pop purchased vodka of inferior quality in August 2022 based on Collins's posts). Plaintiff's counsel has an uncanny ability to find plaintiffs who claim to monitor Alexa Collins's Instagram account, as this is at least the third lawsuit in which he has named her as a defendant. Epstein will not enable Plaintiff's counsel to do the same to her, particularly when Plaintiff and his counsel have not come close to making a prima facie showing that Epstein is even within this Court's personal jurisdiction.*

The objections are similar to the previously discussed objections. Epstein added the following paragraph that is addressing specifically this request:

> *Discovery relating to any contracts or agreements between Epstein and any other Defendant not regarding the alleged scheme involving "disguised" or undisclosed Instagram posts and Luli Fama is therefore not relevant, unduly expands the scope of discovery and the attendant burdens upon Epstein in responding, and is by definition overbroad and disproportional to the needs of the case.*

The narrow interpretation of the Complaint is not valid. The Luli Fama entities, co-defendants in the case, are manufacturing, marketing, and retailing swimwear. If a contract between Epstein and any of the Luli Fama entities exists, such contract is relevant to claims raised in the Complaint.

Also, the hypothetical presented by Epstein is non-sensical and not a valid reason to withhold documents.

**Request #3:**

All documents containing communications between You and any of the other named defendants in this litigation.

**Response:**

Epstein objects to the Request on the grounds that it is overly broad, unduly burdensome, and disproportional to the needs of the case to the extent that it requests "All documents," as opposed to documents responsive to this Request, subject to and as limited by any objections thereto, that is reasonable under the circumstances considering the herculean and unduly burdensome effort to uncover each and every responsive document is not necessary given the permissible scope of discovery as defined by Plaintiff's asserted claims.

Epstein further objects to this request on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff's Complaint alleges that, "[i]n order to artificially inflate the prices for the Luli Fama products," Epstein and the other Defendants "devised a scheme in which [Epstein, among others] tag[ged] or recommend[ed] Luli Fama products, pretending [she is a] disinterested and unaffiliated consumer[ ]." Compl. at ¶ 4. The Complaint further makes it clear that this supposed misconduct is alleged to have been "disguised Instagram advertising campaigns." Id. at ¶ 10. Indeed, the Complaint refers to Instagram specifically no fewer than thirty-five times. See id. at ¶¶ 6-9, 16, 35-37, 40, 46-47, 49-50, 67, 76, 78, 80. Point in fact, Plaintiff alleges he "is following Defendants on Instagram," and that following is what he alleges "determined" his "decision to purchase the Luli Fama products . . . ." Id. at ¶ 46. The class claims are even define in terms of "similarly situated Instagram users." Id. at ¶ 76. Discovery relating to any documents containing communications between Epstein and any of the other named defendants not regarding the alleged scheme involving "disguised" or undisclosed Instagram posts and Luli Fama is therefore not relevant, unduly expands the scope of discovery and the attendant burdens upon Epstein in responding, and is by definition overbroad and disproportional to the needs of the case (as it would have no bearing onany matter of relevance to this case as framed by the Complaint). If Epstein and another of the individual Defendants agreed by text messages to share expenses on a personal trip together or communicate about meeting up for lunch or about a television show they both watch, that would have nothing to do with the issues in this case.Requiring Epstein to go through her documents to respond to such an overbroad and irrelevant request not limited to the allegations in the Complaint creates an incredible and undue burden for an individual defendant to respond to a fishing expedition.

Epstein further objects to the request on the grounds that it is overbroad, unduly burdensome, harassing, abusive, malicious, being made in bad faith, and disproportionate to the needs of the case as it is aimed at obtaining information about Epstein that is irrelevant to this case but for use in future, equally frivolous lawsuits against Epstein on flimsy and bad faith bases after plumbing her social media postings for potential new lawsuits. This action is one of several similar putative class actions filed by Plaintiff's counsel on behalf of four different plaintiffs, as part of a moneydriven but frivolous crusade against, among others, models and social media influencer. Of the actions that are no longer pending, all were resolved against Plaintiff's counsel's clients at the pleadings stage. See Chihaia v. Go Giveaways LLC, 30 Fla. L. Weekly Supp. 23a

*(Fla. 11th Cir. Ct. Feb. 17, 2022) (dismissing with prejudice for lack of standing due to failure to allege any injury); Colceriu v. Barbary, 574 F. Supp. 3d 1120, 1123 (M.D. Fla. 2021) (dismissing for lack of standing ), aff'd, 21-14370, 2022 WL 3577116 (11th Cir. Aug. 19, 2022); Colceriu v. Collins, Case No. 50-2021-CA- 004981 (Fla. 15th Cir. Ct.) (granting judgment on pleadings in favor of co-Defendant in this case Alexa Collins and dismissing complaint against another defendant with prejudice); Salva and Pop v. 21st Century Spirits, LLC, Case No. 1:22-cv-06083 (N.D. Ill. Nov. 3, 2022) (suing, among others, Collins, and alleging Salva and Pop purchased vodka of inferior quality in August 2022 based on Collins's posts). Plaintiff's counsel has an uncanny ability to find plaintiffs who claim to monitor Alexa Collins's Instagram account, as this is at least the third lawsuit in which he has named her as a defendant. Epstein will not enable Plaintiff's counsel to do the same to her, particularly when Plaintiff and his counsel have not come close to making a prima facie showing that Epstein is even within this Court's personal jurisdiction.*

As discussed in the case of the similar Objections [supra] the Court should overrule these objections and direct Epstein to properly produce responsive documents.

Further, communications between Epstein and the other named Defendants are absolutely essential as it relates to liability, damages and class certification. While it is hard to imagine that Epstein would communicate with the other Defendants on subjects unrelated to the subject-matter of the lawsuit, the objection is just a pretext by Epstein to narrow or eliminate the need of discovery by self-defining such subject matter and refusing to produce **any** documents in this lawsuit. Plaintiff's Complaint alleges that Luli Fama is "instructing and allowing the Influencers to advertise its products without making the proper disclosures" (Compl. ¶55). Asking social media influencers to advertise its products and disguise such advertising as honest consumer recommendation is a large part of Luli Fama's strategy to capture a major segment of the swimwear market in Florida, the United States, and worldwide. (Compl. ¶11). Therefore, all correspondence between Epstein and the Luli Fama defendants for the

entire class period is discoverable and proportional to the needs of the case. This

objection should be overruled.

**Request #4:**

All documents that show the number of Your followers on any social media platform, including but not limited to Instagram.

**Response:**

Epstein objects to the Request on the grounds that it is overly broad, unduly burdensome, and disproportional to the needs of the case to the extent that it requests "All documents," as opposed to documents responsive to this Request, subject to and as limited by any objections thereto, that is reasonable under the circumstances considering the herculean and unduly burdensome effort to uncover each and every responsive document is not necessary given the permissible scope of discovery as defined by Plaintiff's asserted claims.

Epstein further objects to this request on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff's Complaint alleges that, "[i]n order to artificially inflate the prices for the Luli Fama products," Epstein and the other Defendants "devised a scheme in which [Epstein, among others] tag[ged] or recommend[ed] Luli Fama products, pretending [she is a] disinterested and unaffiliated consumer[ ]." Compl. at ¶ 4. The Complaint further makes it clear that this supposed misconduct is alleged to have been "disguised Instagram advertising campaigns." Id. at ¶ 10. Indeed, the Complaint refers to Instagram specifically no fewer than thirty-five times. See id. at ¶¶ 6-9, 16, 35-37, 40, 46-47, 49-50, 67, 76, 78, 80. Point in fact, Plaintiff alleges he "is following Defendants on Instagram," and that following is what he alleges "determined" his "decision to purchase the Luli Fama products . . . ." Id. at ¶ 46. The class claims are even defined in terms of "similarly situated Instagram users." Id. at ¶ 76. Discovery relating to documents that show the number of Epstein's followers on any social media platform, including but not limited to Instagram, is therefore not relevant, unduly expands the scope of discovery and the attendant burdens upon Epstein in responding, and is by definition overbroad and disproportional to the needs of the case (as it would have no bearing on any matter of relevance to this case as framed by the Complaint). Indeed the number of even Epstein's Instagram followers at any point in time bears no relevance to the determination of any material fact relevant to any claim or defense in this case, and the undue and unnecessary burden (and harassing nature of this request) is magnified by the fact that the number of followers is publicly available.

Epstein further objects to the request on the grounds that it is overbroad, unduly burdensome, harassing, abusive, malicious, being made in bad faith, and disproportionate to the needs of the case as it is aimed at obtaining information about Epstein that is irrelevant to this case but for use in future, equally frivolous lawsuits against Epstein on flimsy and bad faith bases after plumbing her social media postings, for potential new lawsuits. This action is one of several similar putative class actions filed by Plaintiff's counsel on behalf of four different plaintiffs, as part of a moneydriven but frivolous crusade against, among others, models and social media influencer. Of the actions that are no longer pending, all were resolved against Plaintiff's counsel's

*clients at the pleadings stage. See Chihaia v. Go Giveaways LLC, 30 Fla. L. Weekly Supp. 23a (Fla. 11th Cir. Ct. Feb. 17, 2022) (dismissing with prejudice for lack of standing due to failure to allege any injury); Colceriu v. Barbary, 574 F. Supp. 3d 1120, 1123 (M.D. Fla. 2021) (dismissing for lack of standing ), aff'd, 21-14370, 2022 WL 3577116 (11th Cir. Aug. 19, 2022); Colceriu v. Collins, Case No. 50-2021-CA- 004981 (Fla. 15th Cir. Ct.) (granting judgment on pleadings in favor of co-Defendantin this case Alexa Collins and dismissing complaint against another defendant with prejudice); Salva and Pop v. 21st Century Spirits, LLC, Case No. 1:22-cv-06083 (N.D. Ill. Nov. 3, 2022) (suing, among others, Collins, and alleging Salva and Pop purchasedvodka of inferior quality in August 2022 based on Collins's posts). Plaintiff's counsel has an uncanny ability to find plaintiffs who claim to monitor Alexa Collins's Instagram account, as this is at least the third lawsuit in which he has named her as a defendant. Epstein will not enable Plaintiff's counsel to do the same to her, particularly when Plaintiff and his counsel have not come close to making a prima facie showing that Epstein is even within this Court's personal jurisdiction.*

As discussed in the case of the similar Objections to Interrogatory 4 [supra] the Court should overrule these objections and direct Epstein to properly produce responsive documents.

**Request #5:**

*All documents that show the amount of income you earned as a social media influencer in the tax years 2018 to the present, including but not limited to federal and state tax returns, w-2 tax forms, 1099 tax forms, and other supporting income-related documents.*

**Response:**

*Epstein objects to the Request on the grounds that it is overly broad, unduly burdensome, and disproportional to the needs of the case to the extent that it requests "All documents," as opposed to documents responsive to this Request, subject to and as limited by any objections thereto, that is reasonable under the circumstances considering the herculean and unduly burdensome effort to uncover each and every responsive document is not necessary given the permissible scope of discovery as defined by Plaintiff's asserted claims.*

*Epstein further objects to this request on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, harassing, invasive of Epstein's personal and financial privacy, and is disproportional to the needs of the case. Plaintiff's Complaint alleges that, "[i]n order to artificially inflate the prices for the Luli Fama products," Epstein and the other Defendants "devised a scheme in which [Epstein, among others] tag[ged] or recommend[ed] Luli Fama products, pretending [she is a] disinterested and unaffiliated consumer[ ]." Compl. at ¶ 4. Plaintiff alleges that the Luli Fama Defendants paid Epstein to engage in such alleged misconduct, (see id. at ¶¶ 11, 42, 44, 68), and it is only that alleged misconduct that is the basis of Plaintiff's frivolous claims. Discovery relating to any documents that show the amount of income Epstein earned generally as a social media influencer in the tax years 2018 to the present*

*is therefore not relevant, unduly expands the scope of discovery and the attendant burdens upon Epstein in responding, is harassing and invades Epstein's*

*personal and financial privacy, and is by definition overbroad and disproportional to the needs of the case (as it would have no bearing on any matter of relevance to this case as framed by the Complaint). Under no circumstances are Epstein's personal income records, in particular tax returns, relevant to the claims or any issues of relevance to this lawsuit, nor will they be produced.*

*Epstein further objects to the request on the grounds that it is overbroad, unduly burdensome, harassing, abusive, malicious, being made in bad faith, and disproportionate to the needs of the case as it is aimed at obtaining information about Epstein that is irrelevant to this case but for use in future, equally frivolous lawsuits against Epstein on flimsy and bad faith bases after plumbing her social media postings for potential new lawsuits. This action is one of several similar putative class actions filed by Plaintiff's counsel on behalf of four different plaintiffs, as part of a moneydriven but frivolous crusade against, among others, models and social media influencer. Of the actions that are no longer pending, all were resolved against Plaintiff's counsel's clients at the pleadings stage. See Chihaia v. Go Giveaways LLC, 30 Fla. L. Weekly Supp. 23a (Fla. 11th Cir. Ct. Feb. 17, 2022) (dismissing with prejudice for lack of standing due to failure to allege any injury); Colceriu v. Barbary, 574 F. Supp. 3d 1120, 1123 (M.D. Fla. 2021) (dismissing for lack of standing), aff'd, 21-14370, 2022 WL 3577116 (11th Cir. Aug. 19, 2022); Colceriu v. Collins, Case No. 50-2021-CA- 004981 (Fla. 15th Cir. Ct.) (granting judgment on pleadings in favor of co-Defendant in this case Alexa Collins and dismissing complaint against another defendant with prejudice); Salva and Pop v. 21st Century Spirits, LLC, Case No. 1:22-cv-06083 (N.D. Ill. Nov. 3, 2022) (suing, among others, Collins, and alleging Salva and Pop purchased vodka of inferior quality in August 2022 based on Collins's posts). Plaintiff's counsel has an uncanny ability to find plaintiffs who claim to monitor Alexa Collins's Instagram account, as this is at least the third lawsuit in which he has named her as a defendant. Epstein will not enable Plaintiff's counsel to do the same to her, particularly when Plaintiff and his counsel have not come close to making a prima facie showing that Epstein is even within this Court's personal jurisdiction.*

The documents are relevant to the unjust enrichment and disgorgement of

profits claims as well as to the economic analysis regarding the actual value of the

Luli Fama products (see Compl. ¶¶ 72, 76-80). See. *S.E.C. v. Lauer*, 478 Fed. Appx.

550, 557 (11th Cir. 2012).

The remainder of the objections are identical to the objections to the previous

requests and should be overruled.

/

21

## MEET AND CONFER EFFORTS

All the meet and confer efforts proved to be unsuccessful as counsel for Epstein does nothing else than repeating their arguments used in their Motion to Dismiss, Motion to Stay Discovery and Motion for Rule 11 Sanctions. Defendant's counsel merely repeats its unfounded accusations of professional misconduct and bad faith by Plaintiff's counsel. Statements like this one used in Epstein's responses to Interrogatories are the main objection to participating in discovery: "*Plaintiff's counsel has an uncanny ability to find plaintiffs who claim to monitor Alexa Collins's Instagram account, as this is at least the third lawsuit in which he has named her as a defendant. Epstein will not enable Plaintiff's counsel to do the same to her.*"

These statements are not valid objections and are not designed to contribute to courtesy and cooperation among counsel and they are not brought in a spirit of cooperation and civility as required in this District. *See* The Middle District of Florida Discovery Handbook. Defendant's counsel has repeatedly ignored the Court's orders denying the requested stay of discovery and refuses to meaningfully participate in the meet and confer process.

Counsel for Plaintiff sent an email to Epstein on March 27, 2023 (Exhibit 6), requesting a meet and confer regarding the discovery deficiencies. As no response was received, Plaintiff followed-up by email and phone on March 28 (Exhibit 7). Plaintiff also sent a letter on April 4 (Exhibit 4) containing an explanation of the perceived deficiencies. No written answer was received to the letter.

As a result of the follow-ups, parties had a meet-and-confer call on April 5, 2023,

where Epstein's learned counsel affirmed their unwillingness to participate in discovery.  Counsel for Plaintiff confirmed in an email sent on April 6, 2023, the results of the meet and confer call. (Exhibit 3).

After the Court denied for the second time a motion to stay discovery, Plaintiff's Counsel set the deposition for Epstein to occur in Tampa. In order to avoid Court's intervention, Plaintiff agreed to depose Epstein at a location of her choice and a date of her choice. During the same conversation, that took place on or about April 21, counsel for Epstein mentioned that amended responses will be provided "*early next week*." Counsel for Plaintiff memorialized the agreement in an email sent on April 21, 2023 (Exhibit 8). To the date of this motion no amendment, answer or responsive document was received.

Since a party has a duty to seek relief immediately, i.e, without waiting until the discovery is due or almost due, *United States Equal Employment Opportunity Comm'n v. Papin Enterprises, Inc.,* 607CV1548ORL28GJK, 2008 WL 11337238, at *3 (M.D. Fla. Nov. 20, 2008), Plaintiff is left with no choice but to file the instant Motion.

## SANCTIONS

Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents ... and in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism." *Sussman v. Salem, Saxon and Nielsen, P.A.*, 154 F.R.D. 294, 298 (M.D. Fla. 1994) (internal citations omitted).

This is exactly the case here. Gabrielle Epstein is represented by four different attorneys at one of the biggest and most expensive law firms in Florida. However, the Defendant and her learned counsel are refusing to take this case seriously, to obey this Court's Orders and to get involved in discovery. Defendant Epstein is just trying to cause impermissible prejudice to the Plaintiff.

"If the court grants a motion to compel, the court must award the prevailing party reasonable expenses, including attorney's fees, incurred as a result of submitting the motion. Fed. R. Civ. P. 37(a)(5); *see also* Fed. R. Civ. P. 37(c) (stating court may award reasonable expenses against party that failed to provide initial disclosures under Rule 26(a)." *Hyperponic, LLC v. Carroll* (M.D. Fla., Feb. 21, 2019, No. 8:18-CV-1992-T-30AAS) 2019 WL 763804, at *1

"[S]anctions under Rule 37(a)(4) are mandatory unless the court finds a substantial justification for discovery delays." *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993). In this case, there is no justification for the delays and refusal to provide discovery. Therefore, sanctions are warranted.

## CONCLUSION

WHEREFORE, Plaintiff, Alin Pop respectfully requests this Honorable Court to overrule Defendant's objections and to further compel Defendant Epstein to provide better responses to the First Set of interrogatories and the First Set Requests for Production within 5 days from the Court's Order. Also, the Court shall impose sanctions and order Epstein to pay Plaintiff's reasonable expenses in making this Motion, including reasonable attorney's fees, and any additional relief deemed proper

and just.

Dated: May 19, 2023

Respectfully Submitted,

s/Bogdan Enica
Bogdan, Enica
FL Bar No.: 101934
66 West Flagler St., Ste. 937
Miami, FL 33130
Telephone: (305) 539-9206
Email: Bogdan.Enica@practus.com

Keith L. Gibson (*admitted pro hac vice*)
IL Bar No.: 6237159
490 Pennsylvania Avenue, Suite 1
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: Keith@keithgibsonlaw.com

*Counsel for Plaintiff and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 19th day of May 2023, I have caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which sends notification of such filing to all counsel of record.

s/ <i>Bogdan Enica</i>
Bogdan Enica, Esq.
