IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALIN POP, individually and on behalf of
all those similarly situated,

    Plaintiff,

vs.                                            Case No.: 8:22-CV-02698-VMC-JSS

LULIFAMA.COM, LLC, et al.,

    Defendants.
_____/

**DEFENDANT GABRIELLE EPSTEIN'S MOTION TO
REOPEN CASE AND INCORPORATED MEMORANDUM OF LAW**

Defendant Gabrielle Epstein hereby moves for entry of an Order reopening the case as to Epstein for good cause, and states the following in support.

## BACKGROUND

The Court dismissed Epstein from the case following the submission on July 14, 2023 of a Status Report filed by Plaintiff, in response to a direction from the Court, (Dkt. No. 98). The Status Report wrongly stated, "Plaintiff and Defendant Epstein have agreed on all material terms of a settlement." Dkt. No. 99 at 1. The next business day, presumably solely as a result of the Plaintiff's representation, the Court issued an endorsed order that stated:

> On the basis of the Status Report by Alin Pop (Doc. # 99), this cause is hereby dismissed as to Gabrielle Epstein, only, without prejudice and subject to the right of the parties, within 60 days of the date hereof, to submit a stipulated form of final order or judgment, or request an extension of time, should they so choose or for any party to move to reopen the action, upon good cause being shown. After that 60 day

> period, however, without further order, this dismissal shall be deemed with prejudice. Furthermore, the Court advises the parties that "good cause" exists to reopen an action when a settlement agreement has yet to be finalized because of various delays. But incomplete performance of an executed settlement agreement, such as the failure to disburse settlement funds, does not constitute good cause to reopen an action.

Dkt. No. 100.

Plaintiff's representation to the Court was false. The parties had not agreed on all material terms. There was not and is not a finalized settlement. The areas of disagreement included, among others, whether there would be a covenant not to sue in favor of Epstein, whether or not there would be a release by Epstein in favor of Plaintiff, the scope of the release in favor of Epstein, the scope of the entirety of the agreement to social media other than Instagram, and whether the Plaintiff's wife, who is referred to in the Complaint, would be permitted to do things after the agreement that the agreement would preclude Plaintiff from doing himself.

Indeed, on July 12, 2023, the day after the Court issued its order requiring the filing of a status report regarding the status of the settlement negotiations, Plaintiff's counsel e-mailed counsel for Epstein, "[p]lease advise as to the issues you were checking with your client on, preferably today if possible. In light of the Court's order yesterday, we would like to advise the Court on Friday that the settlement agreement has been finalized and has been signed or at least that it is out to the parties for signature." Ex. A.[1] Counsel for Epstein was out of the office then for

---

[1] As the portion of document reflected in Exhibit A is part of a lengthy e-mail thread that contains back and forth regarding numerous discussions of specific settlement terms, only the portion being relied upon for this Motion is being included in Exhibit A.

2

depositions in another matter and did not respond. On July 14, 2023, counsel for Plaintiff followed up: "Could you give me an update this morning on where this stands. We would like to advise the Court today that we have agreed on all terms of the settlement agreement *but are awaiting your response*." *Id.* (emphasis added).

As reflected in Plaintiff's counsel's language, he was well aware that there was no finalized settlement agreement. Many terms remained outstanding. That is why Plaintiff's counsel wrote that he "*would like*" to be able to advise the Court that there was an agreement on all terms, "*but [was] awaiting [a] response*" from Epstein's counsel to do so. *Id.* (emphasis added). That, however, is not what Plaintiff's counsel advised the Court. Instead, without having heard from Epstein's counsel, and in contravention of the actual facts, Plaintiff misrepresented that there was an "agree[ment] on all material terms of a settlement." Dkt. No. 99 at 1.[2]

Counsel for Epstein immediately registered his reaction to the Status Report with Plaintiff's counsel in an e-mail sent on a Sunday, July 16, 2023, two days after the unilateral Status Report was filed:

Hey Keith, I was surprised when I just opened this. I was out of the

---

[2] This was hardly the first instance of dubious practices by Plaintiff and his counsel targeted at Epstein. For the six or so months after she exercised her rights to challenge insufficient service, lack of personal jurisdiction, and failure to state a plausible claim against her, Plaintiff's counsel targeted Epstein with vexatious discovery and motion practice, causing her to incur significant attorneys' fees to create leverage for a settlement of their baseless and frivolous claims and assertion of jurisdiction. Of the numerous defendants, Plaintiff focused their fire on Epstein, seeking only her deposition and filing motions for clearly inappropriate discovery, such as her income tax returns. Worn down by this badgering and oppression, and to avoid the unappealing situation of defending a lawsuit without counsel, Epstein pursued settlement talks. But when it came to the written settlement agreement, Plaintiff and his counsel renegotiated, refusing to agree to terms that were the *essence* of what Epstein stated was required and audaciously asking for additional terms in Plaintiff's favor, *before* falsely representing to the Court that Epstein and Plaintiff had agreed to all material terms.

3

> office in Detroit for depositions on Thursday and Friday. The last we spoke, you had rejected certain of the terms we consider to be material. You also asked for a release which we had rejected. That's where we left off. So representing to the court that we've agreed on all material terms was surprising.

Ex. B.

In his response, counsel for Plaintiff acknowledged that at the time he had filed the Status Report, he was still waiting to hear back from the undersigned on various outstanding terms that had *not* been agreed upon, including (but not limited to) whether there would be a release in favor of Plaintiff, as well as the scope of the release and covenant not to sue, but somehow contended those outstanding items – which were only some of the still open terms – are not material. *See id.*

Based on the misrepresentation in the Status Report, the Court dismissed Epstein from the action on July 17, 2023. *See* Dkt. No. 100. On July 20, 2023, the Court issued an order dismissing all of Plaintiff's claims with prejudice. *See* Dkt. No. 105. These were the exact same claims asserted against Epstein, and they were dismissed on Federal Rule of Civil Procedure 12(b)(6) grounds that Epstein had argued on her Motion to Dismiss. *See generally* Dkt. No. 38. That same day, counsel for Epstein advised counsel for Plaintiff that to the dubious extent there were any live settlement proposals from Epstein, they were withdrawn.

**ARGUMENT**

The Court's Order provided that, "[o]n the basis of the Status Report by Alin Pop (Doc. # 99), this cause is hereby dismissed as to Gabrielle Epstein, only, without prejudice and subject to the right of the parties, within 60 days of the date hereof . . .

4

for any party to move to reopen the action, upon good cause being shown." Dkt. No. 100. Under these circumstances, there is good cause for the Court to reopen the case. Indeed, the Court advised that "'good cause' exists to reopen an action when a settlement agreement has yet to be finalized," (Dkt. No. 100), which is indisputably the case here. Epstein was dismissed only as a result of the false statement that the parties had reached an agreement on all material terms. That is not and never was the case. The Court should reopen the case so that Epstein can obtain a ruling in her favor on Plaintiff's injurious and frivolous claims against her and otherwise vindicate her rights.

As if his e-mails prior to filing the Status Report were not enough, Plaintiff's counsel admitted two days after he filed the Status Report that there were in fact "outstanding items." *See* Ex. B. It is unclear how Plaintiff could contend the undisputedly open issues of whether or not there would be mutual releases, the scope of the release and covenant not to sue as to Epstein, the scope of the entirety of the settlement being limited to a single social media account when Epstein proposed all social media, and the concern of Epstein that Plaintiff's spouse not be permitted to do what Plaintiff himself would be prohibited from doing were not material terms. Indeed, one must ask: If these outstanding terms were not "material," why did Plaintiff seek to insert the additional terms and otherwise reject Epstein's proposed terms? At the risk of stating the obvious, the scope of the entire agreement, the scope of a release and covenant not to sue, and whether the Plaintiff would even get a

5

release are materials terms of a settlement agreement.³ *See*, *e.g.*, *Higbee v. Sentry Ins. Co.*, 253 F.3d 994 (7th Cir. 2001) (noting that "many defendants would agree that the *most* material term in any settlement agreement is the release"); *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 388 (7th Cir.1999) (noting that "the details of . . . release provisions . . . in settlement agreements are inherently material"); *Alvarez v. Pronto Pizza & Grill, Inc.*, No. 15CV8277 (DF), 2017 WL 11567279, *2 (S.D.N.Y. Apr. 6, 2017) ("Plaintiffs have also failed to demonstrate that the parties agreed to the scope of a release, which is generally considered a material term of a settlement agreement."); *Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM JCX, 2012 WL 10274678, *9 (C.D. Cal. Nov. 13, 2012) ("Generally speaking, provisions that require payment in exchange for a release of claims constitute material terms of the settlement agreement."); *Simmons v. Collection Prof'ls, Inc.*, No. 09-1198, 2010 WL 2663101, *1 (C.D. Ill. June 29, 2010) ("The language and scope of any release to be provided is a material component of the settlement."); *Inamed Corp. v. Kuzmak*, 275 F.Supp.2d 1100, 1124 (C.D. Cal. 2002) ("There is no doubt that release provisions are generally thought to be material terms of any Settlement Agreement."). That these were unresolved clearly shows the Status Report was false.

Furthermore, the latest form of the settlement agreement exchanged between the parties at the time of the Status Report contained numerous additions, deletions, and comments as to the terms that Epstein had proposed, including the terms

---

³ To be clear, the specific reference to these terms is not intended to convey the impression that the other outstanding items were not also material. But there can be no real dispute that these referenced terms are material and thus the representation made to this Court was incorrect.

6

described above, among others. Under the "mirror image rule," "the alteration of one of the material terms of a contract constitutes a counter-offer and rejection of said contract." *Racing Props., L.P. v. Lt. Baldwin*, 885 So.2d 881, 883 (3rd DCA 2004). *See also*, *e.g.*, *Montgomery v. English*, 902 So.2d 836, 837 (5th DCA 2005). It is black letter law that "[t]he other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance of it." *Minneapolis & St. L. Ry. Co. v. Columbus Rolling-Mill Co.*, 119 U.S. 149, 151 (1886). Thus, setting aside that Plaintiff never conveyed any such invalid "acceptance," certainly not by the time he filed the Status Report, he could not have accepted the terms Epstein originally proposed because he had rejected them by countering with different terms. Any such *post hoc* narrative from Plaintiff also requires one to ignore that his lawyer admitted that, at the time of the Status Report, there were indeed "outstanding items" that are clearly material terms. Ex. B. (Moreover, to the unlikely extent any offer from Epstein remained live, it was expressly withdrawn.)

As there never was an agreement on all terms such that the basis for the Court's dismissal of Epstein should never have occurred, and there is and will be no settlement, there is sufficient good cause to reopen the case. That way, Epstein can obtain a ruling on the motion to dismiss – that was pending at the time of her dismissal on the basis of the inaccurate Status Report – that she wishes to renew.

Nothing beyond a showing of good cause to reopen is required, and the Court specifically stated that the failure to finalize a settlement constitutes sufficient cause. *See* Dkt. No. 100. In an abundance of caution, Epstein notes that the grounds set

forth above also support reopening of the case under Fed. R. Civ. P. 60(b)(1) and (3), as the dismissal of Epstein was done "[o]n the basis of the Status Report by Alin Pop . . . ." Dkt. No. 100.  Whether considered a mistake or a misrepresentation by Plaintiff, the Status Report was incorrect and inaccurately represented the parties had agreed to all terms when Plaintiff's counsel has himself confirmed there was no such agreement.  That was not the case then, and it is certainly not the case now.

## CONCLUSION

Defendant Gabrielle Epstein requests that the Court grant this Motion and enter an Order reopening the case as to her, and for any other relief this Court deems just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel certifies that, pursuant to Local Rule 3.01(g), Jeffrey Backman, Esq., counsel for Defendant, conferred with Keith Gibson, Esq., counsel for Plaintiff, via extensive e-mail exchanges starting July 16, 2023 and through July 21, 2023 regarding the subject of this Motion and the relief requested.  In an e-mail dated July 21, 2023, Mr. Gibson advised that Plaintiff opposes the relief requested by this Motion.

DATED:  August 1, 2023                           GREENSPOON MARDER LLP

                                                 BY: */s/ Jeffrey A. Backman*
                                                 JEFFREY A. BACKMAN
                                                 Florida Bar No. 662501
                                                 ROY TAUB
                                                 Florida Bar No. 116263
                                                 jeffrey.backman@gmlaw.com
                                                 roy.taub@gmlaw.com

jessica.serrano-cartagena@gmlaw.com
cheryl.cochran@gmlaw.com
200 East Broward Boulevard, Ste. 1800
Fort Lauderdale, Florida 33301
Telephone: 954.491.1120
Facsimile:  954.343.6958

*Attorneys for Defendant Gabrielle Epstein*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 1, 2023, a copy of the foregoing was electronically filed with the Court through CM/ECF, which will forward and serve a copy upon all counsel of record in compliance with the Federal Rules of Civil Procedure.

*/s/ Jeffrey A. Backman*
JEFFREY A. BACKMAN