## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ALIN POP, individually
and on behalf of all those similarly
situated,

        Plaintiff,

vs.

                             Case No: 8:22-cv-2698-VMC-JSS

LULIFAMA.COM, LLC, MY
LULIBABE, LLC, LOURDES
HANIMIAN, TAYLOR M. GALLO,
ALEXA COLLINS, ALLISON
MARTINEZ, CINDY PRADO,
GABRIELLE EPSTEIN, HALEY
PALVE, LEIDY A. LABRADOR, and
PRISCILLA RICART,

        Defendants.

_____/

## DEFENDANTS' JOINT MOTION FOR SANCTIONS
## AND INCORPORATED MEMORANDUM OF LAW

      Pursuant to Federal Rule of Civil Procedure 11 and section 57.105, Florida

Statutes, the Moving Defendants[1] move for an award of sanctions against Plaintiff

Alin Pop and his legal counsel. In support, Moving Defendants state:

### I. INTRODUCTION

      From the outset, it was apparent that Plaintiff did not have a cognizable claim

against the Moving Defendants under the Florida Deceptive and Unfair Trade

---

[1] "Moving Defendants" collectively refers to: (a) the Luli Fama Defendants (*i.e.,* LuliFama.com, LLC ("Luli Fama"); My LuliBabe, LLC ("Luli Babe"); and Lourdes Hanimian); and (b) the Influencer Defendants (*i.e.,* Taylor M. Gallo, Alexa Collins, Allison Martinez, Cindy Prado, Haley Palve, Leidy A. Labrador, and Priscilla Ricart).

Practices Act ("FDUTPA"), for unjust enrichment, or for negligent misrepresentation. This was a case about Pop purchasing swimwear from Luli Fama, a women's swimwear brand. Pop allegedly bought the swimwear after viewing various unidentified, undated, and uncited Instagram posts (the "posts" or the "Instagram posts") of eight women, including the Influencer Defendants. Pop claimed these eight individuals were paid "influencers" for Luli Fama and, as such, they were purportedly required by non-binding Federal Trade Commission ("FTC") guidance—as interpreted by Pop—to disclose their alleged relationships with Luli Fama to their Instagram followers, including Pop.

When Pop ultimately received the swimwear he ordered, he claimed he was upset with the purchase. Pop did not say that it was the fit, color, or fabric of the swimsuit that bothered him, or that the swimsuit he received was not materially identical to the one he saw online. Instead, Pop just claimed that the swimsuit was not the "quality" that he subjectively imagined it would be.

The Moving Defendants informed Plaintiff that his claims were groundless, but he nevertheless pursued his claims, ignoring clear law and obvious facts in the process. After over eight months of contentious litigation and discovery, the Court dismissed Plaintiff's claims against the Moving Defendants, in full, with prejudice. [ECF No. 105] (the "Order").

An award of sanctions is warranted under section 57.105, Florida Statutes, and Rule 11(b)(2) because: (1) Plaintiff's claims are not warranted by existing law or

supported by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and (2) Plaintiff's allegations and other factual contentions have no evidentiary support, and have not been specifically identified to have any evidentiary support after a reasonable opportunity for further investigation or discovery.

## II. BACKGROUND AND PROCEDURAL HISTORY

The Complaint was filed in Florida state court on October 17, 2022.  [ECF No. 1.]  On November 22, 2022, the Luli Fama Defendants wrote to Plaintiff's counsel and informed them that the Complaint lacked both a legal and factual basis.  *See* **Exhibit A**.  In particular, the Luli Fama Defendants identified clear deficiencies in Plaintiff's claims, including but not limited to:

- Plaintiff's inclusion of Hanimian and LuliBabe as Defendants, despite no allegations regarding their involvement.  *Id.* at 2.

- Plaintiff's failure to identify the specific social media posts that he viewed, which were central to his claims.  *Id.* at 2, n.1.

- Plaintiff's numerous false allegations, such as the suggestion of a "scheme in which the influencers tag or recommend Luli Fama products, pretending they are disinterested and unaffiliated consumers."  Compl. ¶ 4.

- Plaintiff's flawed reliance on FTC guidance as a basis for a *per se* FDUTPA violation.  Ex. A at 2, n.2.

- Plaintiff's inability to prove cognizable damages under FDUTPA.  *Id.* at 2.

In the correspondence attached as Exhibit A, the Luli Fama Defendants informed Plaintiff that if he did not voluntarily dismiss his claims, the Luli Fama

Defendants would seek attorneys' fees and costs. *Id.* at 3. Despite this clear warning, Plaintiff never substantively responded and he continued to press his flawed claims.

After removal to this Court [ECF No. 1], the Luli Fama Defendants filed their Motion to Dismiss Plaintiff's Complaint [ECF No. 35] ("Luli Fama Defs.' Mot. to Dismiss"), and the Influencer Defendants filed similar motions to dismiss [ECF Nos. 41, 53, 54]. Although Plaintiff opposed these motions [ECF No. 57], the Court granted the motions to dismiss filed by the Moving Defendants in full and with prejudice.[2] Order at 23.

Judge Covington's Order demonstrated what the Moving Defendants have said from the beginning: Plaintiff failed to assert any specific facts to support his claims and, even if he had, those facts did not equate to cognizable FDUTPA, unjust enrichment, or negligent misrepresentation claims. Specifically:

- Plaintiff's failure to allege "which posts from the Influencer Defendants led him to purchase the Luli Fama product or provide[] any details of the alleged scheme to pay the Influencer Defendants to promote Luli Fama products" was fatal to his claims. Order at 9.

- FTC guidance could not form the basis of a *per se* FDUTPA violation. *Id.* at 11–12.

- Plaintiff could not demonstrate "a causal connection between the alleged wrongdoing and his alleged injury" or "actual damages." *Id.* at 13–14.

---

[2] Plaintiff's claims against Epstein were dismissed on July 17, 2023 without prejudice based on Plaintiff's representation that Plaintiff and Epstein had agreed on a settlement agreement. [ECF No. 100.] On August 1, 2023, Epstein filed a Motion to Reopen Case, stating that Plaintiff's counsel had misrepresented that all the material terms of a settlement agreement had been agreed to. [ECF No. 110.]

Plaintiff's claims against Defendant Palve were voluntarily dismissed by Plaintiff on July 27, 2023, in light of Plaintiff's failure to execute service on Palve. [ECF No 109.]

As such, any amendment would be futile, and Plaintiff's claims were dismissed **with prejudice**. *Id.* at 15–23.

Through this Motion, the Moving Defendants seek sanctions against Plaintiff and Plaintiffs' attorneys for filing the Class Action Complaint [ECF No. 1] (the "Complaint") and maintaining claims against the Moving Defendants.[3]  While final bills are still being processed, reasonable estimates of the attorneys' fees and costs for the Luli Fama Defendants are approximately $110,000 and $45,000 for the Influencer Defendants.

### III.  Legal Standards

<u>Rule 11</u>

Rule 11 imposes an affirmative obligation on Plaintiff and his counsel to conduct a reasonable inquiry into the factual and legal merit of a lawsuit prior to filing suit. *See* Fed. R. Civ. P. 11.  "The rule continues to require litigants to 'stop and think' before initially making legal or factual contentions."  Fed. R. Civ. P. 11 Annotated, Advisory Committee Notes to 1993 Amendments at 339.  This inquiry does not end upon filing a complaint or amended complaint.  Rather, parties and their counsel have a continuing obligation to make this inquiry, as courts may impose sanctions under

---

[3] "Absent exceptional circumstances, a law firm is to be held also responsible when . . . one of its partners . . . violated the rule. . . . [I]it is appropriate that the law firm ordinarily be viewed as jointly responsible under established principles of agency." Advisory Committee Notes to 1993 Amendments at 339; *see also id.* ("When appropriate, the court can make an additional inquiry in order to determine whether the sanction should be imposed on such persons, firms, or parties either in addition to or, in unusual circumstances, instead of the person actually making the presentation to the court.").

Rule 11 when a party "insist[s] upon a position after it is no longer tenable." *Id.*

When filing a complaint in federal court, the signing attorney certifies that the pleading is well-grounded in fact and law and has not been asserted for any improper purpose. Fed. R. Civ. P. 11(b); *see also Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (finding Rule 11 sanctions warranted when party files a pleading that has no reasonable factual basis, is based on a legal theory that has no reasonable chance of success, and is filed in bad faith for an improper purpose).

The test to determine whether a Rule 11 violation exists is an objective "reasonableness under the circumstances" standard. *See Battles v. City of Fort Myers*, 127 F.3d 1298, 1300 (11th Cir. 1997); *see also* Advisory Committee Notes, 1993 Amendments (Rule 11 requires an argument to be "non-frivolous" under "an objective standard [that is] intended to eliminate any 'empty head pure heart' specification for [a] patently frivolous argument"). In assessing whether a party's conduct is sanctionable, the court should look at what was reasonable to believe at the time the pleading or other offending paper was filed. *See Baker*, 158 F.3d at 524.

The Eleventh Circuit Court of Appeals requires a two-step inquiry in determining whether Rule 11 sanctions are appropriate. *See id.* The first is whether the party's claims are objectively frivolous; and, the second is whether the person signing the filing should have been aware that the claims were frivolous. *Id.; see also Peer v. Lewis*, 571 F. App'x 840, 844 (11th Cir. 2014).

6

<u>Section 57.105</u>

The Court may properly sanction Plaintiff under section 57.105(1), Florida Statutes. *See Calederon v. Merch. & S. Bank*, No. 5:13–cv–85, 2013 WL 5798565, at *5 (M.D. Fla. Oct. 18, 2013) (granting motion for sanctions under Rule 11 *and* section 57.105 when complaint was originally filed in state court). Section 57.105(1) provides that a litigant and its attorney are responsible, in equal amounts, for the opposing party's attorneys' fees in defending against a frivolous claim that the litigant knew or should have known was not supported by the material facts or then-existing law. Specifically, it states:

> Upon the court's initiative or motion of any party, the court **<u>shall</u>** award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney **<u>knew or should have known</u>** that a claim or defense when initially presented to the court or at any time before trial:
>
> (a) Was not supported by the material facts necessary to establish the claim or defense; or
>
> (b) Would not be supported by the application of then-existing law to those material facts.

Fla. Stat. § 57.105(1)(a)–(b) (emphasis added).

The essential purpose of this statute is "to discourage baseless claims, stonewall defenses, and sham appeals in civil litigation by placing a price tag through attorney's fee awards on losing parties who engage in these activities." *Thornber v. City of Ft. Walton Beach*, 568 So. 2d 914, 919 (Fla. 1990); *Visoly v. Sec. Pac. Credit Corp.*, 768 So.

2d 482, 492 (Fla. 3d DCA 2000) (same); *see also Mullins v. Kennelly*, 847 So. 2d 1151, 1154 (Fla. 5th DCA 2003) ("The central purpose of section 57.105 is, and always has been, to deter meritless filings and thus streamline the administration and procedure of the courts.").

<u>Safe Harbor Period</u>

The Luli Fama Defendants sent Plaintiff's counsel an original letter on November 22, 2022, stating that if Plaintiff failed to voluntarily dismiss his claims, the Luli Fama Defendants would seek fees under section 57.105 and any other applicable provision.  Pursuant to both Rule 11 and section 57.105, the Moving Defendants sent Plaintiff a safe harbor letter, attaching this Motion, on August 28, 2023.  In that letter, the Moving Defendants advised Plaintiff and Plaintiff's counsel that they had "21 days to resolve the issues presented in [the proposed motion]," including paying the Moving Defendants' attorneys' fees and costs and withdrawing Plaintiff's appeal.  After the Moving Defendants' counsel followed up with Plaintiff's counsel twice by email and once by telephone, Plaintiff's counsel responded and stated that they object to this motion as premature.  A true and correct copy of this letter is attached as **Exhibit B**. Over twenty-one days later, this Motion follows.  *See* Fed. R. Civ. P. 11(c)(2).

## IV. Plaintiff and Plaintiff's Attorneys Should Be Sanctioned Under Rule 11 and Section 57.105 For Filing and Pursing Baseless Claims.

Both prongs of the *Baker* test are met, as well as the requirements under Section 57.105.

By filing the Complaint, Plaintiff and his counsel represented to the Court that

(1) the pleadings are not being presented for any improper purpose; (2) Plaintiff's claims and other legal contentions "are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"; and (3) the allegations and other factual contentions have "evidentiary support" or are likely to have evidentiary support.  Fed. R. Civ. P. 11(b).

But Plaintiff's claims were objectively frivolous, and Plaintiff and his attorneys were made aware of the claims' deficiencies from the beginning.  Nevertheless, when the Complaint's deficiencies were pointed out by the Moving Defendants, Plaintiff continued with his frivolous and baseless claims.  For example, and even if taken alone, Plaintiff's naming of LuliBabe and Hanimian as defendants demonstrates that Plaintiff was simply naming any particular defendant with no examination of the facts at hand.  LuliBabe is a property management company owned by two of Luli Fama's owners, with no relation to Luli Fama's swimwear business.  Ex. A at 2.  To be sure, LuliBabe was only referenced once in the Complaint.  *See* Compl. ¶ 20.  And Hanimian, although the face of Luli Fama, is not "an integral part of Luli Fama's day-to-day operations," and is not involved with Luli Fama's social media strategy.  Ex. A at 2.  No basis existed to support Plaintiff's claim that Hanimian "personally oversees all of [Luli Fama's] corporate operations," as alleged in the Complaint. Compl. ¶ 7.  Indeed, Plaintiff failed to allege any actions taken by Hanimian that related to his claims.  *Id.*

More egregious, however, is the claim that the Luli Fama Defendants and the

9

Influencer Defendants engaged in a "scheme" by which the Luli Fama Defendants "instruct[ed] and allow[ed] the Influencers to advertise [Luli Fama] products without making the proper disclosures." *Id.* ¶¶ 4, 53. Plaintiff made this conclusory allegation with no specifics, and without any fact that supported his theory of liability. *See* Ex. A at 3.

Further, investigation should have revealed the absence of any such facts. Contrary to Plaintiff's allegations, Luli Fama never instructed any of the Influencer Defendants to hide their affiliation with Luli Fama—Luli Fama informed Plaintiff of that fact from the beginning. *See id.* Moreover, documents produced during discovery actually demonstrated that Luli Fama instructed multiple Influencer Defendants to disclose their relationship with Luli Fama in their posts to social media. Luli Fama also produced communications between itself and the Influencer Defendants, none of which contained an instruction of the type alleged by Plaintiff.

Plaintiff also failed to plead facts clearly within his control, such as "which posts from the Influencer Defendants led him to purchase the Luli Fama product." Order at 9. He failed "to identify any instances in which the Influencers posted any allegedly misleading advertisements—let alone when the advertisements were posted—or allege when he himself viewed the posts." *Id.* Finally, he "failed to provide any description of what product he purchased, why it was of inferior quality, or why he was unable to return or resell the product." *Id.* Rather than put the Moving Defendants on notice of his plainly deficient claims, Plaintiff left the Moving Defendants scrambling to defend

themselves for eight months, unable to pinpoint exactly what they had supposedly done wrong.

In her Order resolving this matter, Judge Covington found that Plaintiff failed to state each and every element of his claims. *See generally id.* Put another way, it simply was not close. And the Order should not have come as a surprise to either Plaintiff or Plaintiff's attorneys, given their litigation history. Plaintiff's claims here are merely the latest in a series of failed attempts to manufacture claims on a debunked legal theory: that "influencers" should be liable for social media posts under consumer protection statutes, and that liability should be imputed to companies for these posts.[4] Rather than accept the decisions of the courts presiding over these matters, however, Plaintiff's attorneys continue to press these claims, wasting judicial resources and causing companies and individuals to expend hundreds of thousands of dollars in legal fees. Indeed, Plaintiff's complaints in Illinois and California assert nearly identical claims to the Complaint here, evidencing Plaintiff's (and his counsels') continued disregard for the state laws underlying his claims.[5]

---

[4] *See Pop v. 21st Century Spirits, LLC*, No. 22-CV-6083 (N.D. Ill. Nov. 3, 2022); *Pop v. Curated Bus. Pty. Ltd.,* No. 22-ST-CV-30245 (Cal. Sup. Ct. Sept. 22, 2022).

[5] In *Curated Businesses,* a California court dismissed Pop's negligent misrepresentation, FDUTPA, and unjust enrichment claims against two celebrities. *See* Order Ruling on Demurrers of Defendant Scott Disick and Kimberly Kardashian, No. 22-ST-CV-30245 (Cal. Sup. Ct. June 1, 2023).

The Northern District of Illinois has not yet ruled on the defendants' motions to dismiss in *21st Century Spirits.* Plaintiff's attorneys here, Bogdan Enica and Keith Gibson, filed the *21st Century Spirits* class action complaint merely 17 days after they filed the Complaint in this case. The *21st Century Spirits* complaint is strikingly similar to the class action complaint that Messrs. Enica and Gibson filed against Influencer Defendant Collins and others in state and federal courts throughout Florida.

Further, this litigation is one of at least five lawsuits filed by Plaintiff's attorneys in continuous failed attempts to pursue such claims.[6]   Plaintiff's attorney, Bogdan Enica, has made a practice of asserting such claims without success, including at least two other lawsuits against an Influencer Defendant.   Both of those lawsuits were dismissed, and the dismissals were subsequently affirmed on appeal.[7]   In short, Plaintiff's attorney has never succeeded on his claims, and all have been found to be legally flawed.

Other courts in this District addressed a similar situation in 2013 and 2014, when an attorney pursued several nearly identical quiet title actions that were clearly contrary to established law.   *See Barrios v. Regions Bank*, No. 13-cv-29, 2013 WL 12156675 (M.D. Fla. Aug. 21, 2013), *report and recommendation adopted,* 2013 WL 5230653 (Conway, J.), *aff'd per curiam,* 572 F. App'x 839 (11th Cir. 2014); *Fitzgerald v.*

---

[6] *See supra* notes 4–5; *infra* note 7.  *See also* Final Judgment, *Chihaia v. Go Giveaways LLC,* No. 21-009231-CA-01 (Fla. 11th Jud. Cir. Ct. Feb. 17, 2021) (entering judgment in favor of defendants), *aff'd mem.,* 357 So. 3d 1214 (Fla. 3d DCA 2023); Order, No. 3D22-0666 (Fla. 3d DCA Mar. 15, 2023) (in the appeal from the final judgment entered in the defendants' favor, granting appellees' motion for appellate attorneys' fees and costs in amount to be determined by the trial court); Order on Defendants' Motion to Determine Entitlement to Costs and Attorneys' Fees at 1, No. 21-009231-CA-01 (Fla. 11th Jud. Cir. Ct. June 29, 2022) ("While the Court is inclined to find that Defendants are entitled to attorneys' fees and costs, it will refrain from entering a formal order on entitlement to attorneys' fees and costs at this time, in light of the pending appeal in this matter.").

[7] *See Colceriu v. Barbary*, 574 F. Supp. 3d 1120 (M.D. Fla. 2021) (dismissing complaint, clarifying "Plaintiff will not be afforded an additional opportunity to amend her pleadings," and retaining jurisdiction to rule on the motion for sanctions filed by Influencer Defendant Collins and other defendants), *aff'd per curiam*, No. 21-14370, 2022 WL 3577116 (11th Cir. Aug. 19, 2022). *See also Colceriu v. Influize Ltd.*, No. 50-2021-CA-004981 (Fla. 11th Jud. Cir. Ct. Nov. 22, 2021) (granting Influencer Defendant Collins' and other defendants' motion for judgment on the pleadings), *aff'd mem.,* Nos. 4D21-2690, 4D22-1261, 2023 WL 3643688, at *1 (Fla. 4th DCA May 25, 2023); *see also* Order (Fla. 4th DCA May 25, 2023) (granting defendants-appellees' motion for appellate attorneys' fees).

*Regions Bank*, No. 13-cv-36, 2014 WL 129066 (M.D. Fla. Jan. 14, 2014) (Lammens, Mag. J.) ("This is one of seven similar similar quiet title actions filed in the Ocala Division, and Kelley Bosecker, Esquire, represents the plaintiff (as she does here) in each one."), *appeal dismissed,* No. 14-10634 (11th Cir. Apr. 3, 2014).  In both cases, the attorney filed quiet title claims on behalf of two separate plaintiffs in Florida state court, which were removed to federal courts in this District.  Defense counsel in both actions sent the plaintiff's counsel a letter, along with proposed motions to dismiss and for sanctions, which detailed recent caselaw that "unequivocally establish[ed] that the claim alleged in [that] case ha[d] no merit."  *Barrios*, 2013 WL 12156675, at *2; *Fitzgerald*, 2014 WL 129066, at *2.  The plaintiff did not voluntarily withdraw the claims, and the defendant ultimately prevailed when both amended complaints were dismissed with prejudice.  *Barrios*, 2013 WL 12156675, at *6; *Fitzgerald*, 2014 WL 129066, at *4.

In both cases, the Court awarded attorneys' fees against the plaintiffs and their attorney under Rule 11 and section 57.105.  In imposing sanctions under section 57.105, the court found that "at the time [the plaintiff] filed his complaint (by and through [his attorney]), his claims were neither supported by the material facts necessary to establish the claims nor by the application of then-existing law to those material facts."  *Barrios*, 2013 WL 12156675, at *6; *Fitzgerald*, 2014 WL 129066, at *4. With regards to Rule 11, although the complaint was not filed in federal court, Rule 11 sanctions were appropriate because the attorney "continue[ed] to pursue the

frivolous claims after removal and by filing motions and other papers—*i.e.* . . . the objection to the motion to dismiss. . .—that had no reasonable factual or legal basis." *Barrios*, 2013 WL 12156675, at *6; *Fitzgerald*, 2014 WL 129066, at *5 (similar).

This case mirrors *Barrios* and *Fitzgerald*. Plaintiff and Plaintiff's counsel have pursued multiple, similar claims without success. *See supra* notes 4–7. The Luli Fama Defendants' counsel sent Plaintiff's counsel a letter at the outset, detailing the many flaws in Plaintiff's claims and outlining the clear caselaw. *See* Ex. A. In addition, the Luli Fama Defendants reiterated that Plaintiff's counsel has repeatedly pursued similar claims without success, and warned Plaintiff that the Luli Fama Defendants would seek attorneys' fees and costs under any applicable statute if Plaintiff failed to voluntarily withdraw his claims. *Id.* Even after the Moving Defendants filed their respective motions to dismiss, Plaintiff pursued baseless claims and forced the Moving Defendants to defend Plaintiff's claims for eight months. In fact, just before the Court dismissed Plaintiff's claims with prejudice, Plaintiff was preparing to *expand* his baseless claims. He informed the Court on July 14, 2023 that Plaintiff would "file a motion for leave to file an amended complaint within 14 days seeking to add additional claims against existing and new parties." [ECF No. 99.]

Between them, Plaintiff and his counsel have made at least five failed attempts to test their theory of liability. Although the Moving Defendants have continued advising them of the factual and legal insufficiency of these claims, Plaintiff and his attorneys refused to dismiss their frivolous and meritless claims. The continued

pursuit of such groundless claims—both by Plaintiff and Plaintiff's attorneys—clearly meets the standard articulated in *Barker* and section 57.105, and sanctions against Plaintiff and Plaintiff's attorneys is appropriate. *Estrada v. FTS USA, LLC*, No. 14-23388-CIV, 2018 WL 1836007, at *4–5 (S.D. Fla. Jan. 23, 2018) (sanctions against Plaintiff's counsel were proper under Rule 11 when Plaintiff's counsel should have been aware that Plaintiff's claim was objectively frivolous), *report and recommendation adopted*, 2018 WL 1811907; *Dictiomatic, Inc. v. Fid. & Guar. Co.*, 127 F. Supp. 2d. 1239, 1249 (S.D. Fla. 1999) (granting motion for sanctions under section 57.105 and finding plaintiff and plaintiff's counsel jointly and severally liable when they both "unreasonably and vexatiously multiplied these proceedings" and "chose not to abandon this case long after it was apparent that they could not prove the facts they alleged").

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Middle District of Florida Local Rule 3.01(g) and Federal Rule of Civil Procedure 11, the Moving Defendants' counsel sent Plaintiff's counsel the instant motion by email and certified mail on August 28, 2023.  Plaintiff's counsel has not responded to that letter nor taken any corrective actions in response.  The Moving Defendants' counsel emailed Plaintiff's counsel on September 25, 2023, informing them that the 21-day safe harbor period required by Rule 11 had passed without response from Plaintiff's counsel and that the instant Motion was forthcoming.  Plaintiff's counsel did not respond to that email.  On September 27, 2023, the Moving

Defendants' counsel again emailed Plaintiff's counsel noting that there had been no response to either the August 28, 2023 correspondence or the September 25, 2023 email, and that such no response would be noted in its meet and confer certification. Only after the Moving Defendants' counsel called Plaintiff's counsel on September 27, 2023 and left a voicemail did Plaintiff's counsel respond, stating that they objected to the Motion as premature.

Dated: September 27, 2023

**STUMPHAUZER KOLAYA
NADLER & SLOMAN, PLLC**
Two S. Biscayne Boulevard, Suite 1600
Miami, Florida 33131
Telephone:   (305) 614-1400
Facsimile:    (305) 614-1425

By: */s/ Timothy A. Kolaya*
Timothy A. Kolaya (FBN: 56140)
Amy M. Bowers (FBN: 105755)
Email: tkolaya@sknlaw.com
        abowers@sknlaw.com

*Counsel for Defendants
Taylor M. Gallo, Alexa Collins, Allison
Martinez, Cindy Prado, Haley Palve,
Leidy A. Labrador, and Priscilla Ricart*

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
333 Se. Second Avenue, Suite 4400
Miami, Florida 33131
Telephone:  305.579.0500
Facsimile:  305.579.0717

By: */s/ Jed Dwyer*
Jared Dwyer (FBN: 104082)
Emiley Pagrabs (FBN: 1030834)
Email:  dwyerje@gtlaw.com
        pagrabse@gtlaw.com

*Attorneys for Defendants
Lulifama.com, LLC; My Lulibabe, LLC;
and Lourdes Hanimian*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 27, 2023, I caused the foregoing to be filed and uploaded to the Court's CM/ECF system which, in turn, provided notice to all counsel of record.

By: *_/s/ Jed Dwyer_____*
Jared E. Dwyer