UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALIN POP,

    Plaintiff,

v.                     Case No. 8:22-cv-2698-VMC-JSS

LULIFAMA.COM LLC, et al.,

    Defendants.

_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Gabrielle Epstein's Motion to Dismiss Plaintiff's Complaint (Doc. # 38), filed on December 28, 2022. Plaintiff Alin Pop filed a response to the Motion on February 3, 2023, which was consolidated with his response to motions to dismiss filed by the other defendants in the case. (Doc. # 57). For the reasons set forth below, the Motion is granted.

**I.   Background**

This action arises from the allegedly deceptive and misleading promotion of Luli Fama products by LuliFama.com LLC, My LuliBabe, LLC, Lourdes Hanimian, and eight influencers. (Doc. # 1-1 at ¶ 2).

"Luli Fama is a swimwear designer, manufacturer, and reseller that came to fame with the rise of Instagram." (<u>Id.</u>

1

at ¶ 6). Luli Fama primarily focuses on selling its products online. (Id. at ¶ 8). "Importantly, most of Luli Fama's online sales come from social media, including Instagram." (Id.). Mr. Pop alleges that "a large part of Luli Fama's [marketing] strategy" involves "[a]sking social media influencers to advertise its products and disguise such advertising as honest consumer recommendation." (Id. at ¶ 9). "Luli Fama makes tens of millions of dollars that can be attributed directly to the disguised Instagram advertising campaigns." (Id. at ¶ 10). The company pays "significant monies" to social media influencers "for their indispensable contribution." (Id. at ¶ 11).

Mr. Pop further alleges that Ms. Epstein and seven other influencers ("the Influencers") "misrepresented the material relationship they have with [Luli Fama]." (Id. at ¶ 3). He stated that they did this by "promot[ing] Luli Fama products without disclosing the fact that they were paid to do so, in violation of the [Federal Trade Commission's ("FTC") rules and guidelines]." (Id. at ¶¶ 1, 3, 49). Specifically, by failing to include Instagram's "paid partnership" tag or similar tags such as "#ad" or "#sponsored," the Influencers allegedly violated 16 C.F.R. § 255.5 and thus violated the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act").

2

(Id. at ¶ 44). Sometimes, in posts containing Luli Fama products, the Influencers only tagged Luli Fama, "suggesting that [the product] is just another swimsuit they purchased, and that Luli Fama is their 'to go' place for swimwear." (Id. at ¶ 14). By indicating that they are wearing Luli Fama swimwear in their posts, the Influencers – "even without using words" – are "indisputably" advertising Luli Fama products. (Id. at ¶ 15).

Mr. Pop alleges that the Luli Fama Defendants and the Influencers' "very profitable and very illegal" advertising practices led him to purchase "Luli Fama products" that were "of an inferior quality, compared with the expectations [he] had and the price he paid." (Id. at ¶¶ 12, 13). Mr. Pop purchased the products "exclusively because of the way the products are advertised" by "his favorite influencers." (Id. at ¶¶ 43, 54). According to Mr. Pop, "Luli Fama [swimwear] is approximately 100% more expensive" than other swimwear brands, such as Victoria's Secret. (Id. at ¶ 55). Mr. Pop was unable to return the Luli Fama products he purchased and, when he "tried to sell the unused product on eBay[,] . . . he received only small offers that barely covered shipping." (Id. at ¶¶ 56, 57).

Mr. Pop filed this putative class action in state court on October 17, 2022, and the Defendants removed the case to this Court on November 23, 2022. (Doc. # 1). Mr. Pop asserts claims for deceptive and unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 (Count I), unjust enrichment (Count II), and negligent misrepresentation (Count III). (Doc. # 1-1). In his complaint, Mr. Pop seeks class certification on behalf of similarly situated consumers. (Id. at 22). On December 28, 2022, Ms. Epstein moved to dismiss the complaint. (Doc. # 38). Mr. Pop filed a consolidated response to Ms. Epstein's Motion and motions to dismiss filed by the other defendants in the case on February 3, 2023. (Doc. # 57).

However, before Ms. Epstein's Motion was resolved, Mr. Pop filed a status report notifying the Court that he and Ms. Epstein had "agreed on all material terms of a settlement" and that they expected to finalize the settlement within seven days. (Doc. # 99). On the basis of this status report, the Court dismissed the case as to Ms. Epstein on July 19, 2023. (Doc. # 100).

The next day, the Court granted the motions to dismiss filed by the other defendants in the case, dismissing with prejudice all counts filed against them. (Doc. # 105).

4

On August 3, 2023, Ms. Epstein filed a motion to reopen the case as to the claims against her. (Doc. # 110). The Court granted the motion and reopened the case. (Doc. # 126). The Court also reinstated Ms. Epstein's motion to dismiss. (Doc. # 128).

Further, the Eleventh Circuit has ruled on Mr. Pop's appeal of the Court's order resolving the other motions to dismiss, dismissing the appeal for lack of jurisdiction. (Doc. # 132).

Ms. Epstein's Motion is now ripe for review.

## II.  __Legal Standard__

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to

raise a right to relief above the speculative
level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. **Analysis**

Ms. Epstein seeks to dismiss all counts of the complaint. (Doc. # 38). Her motion originally sought to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process, Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (Id.). However, Ms. Epstein has since narrowed her Motion to only her argument under Rule 12(b)(6). (Doc. # 129). Therefore, the Court will only analyze this argument as it applies to each of the three counts.

A.   **Count I (FDUTPA)**

   1.   **Rule 9(b)**

Ms. Epstein asserts that Mr. Pop's FDUTPA claim should be dismissed because Mr. Pop has failed to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). (Doc. # 38 at 20-21). Mr. Pop contends that Rule 9(b) does not apply to FDUTPA claims and cites to other district courts in the Eleventh Circuit that have declined to apply the heightened pleading requirements. (Doc. # 57 at 6-9).

To establish a cause of action under FDUTPA, a plaintiff must sufficiently allege three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Kertesz v. Net Transactions, Ltd., 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009) (quoting City First Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). "A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that 'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (quoting Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. 2d DCA 2006)).

As noted in this Court's previous order, "[c]ourts in this district have varied on whether a claim for relief under FDUTPA must also meet Rule 9(b)'s heightened pleading standard." Pop v. Lulifama.com LLC, No. 8:22-cv-2698-VMC-JSS, 2023 WL 4661977, at *2 (M.D. Fla. July 20, 2023). However, this Court applies the heightened pleading standards to FDUTPA allegations sounding in fraud. See Inouye v. Adidas Am., Inc., No. 8:22-cv-416-VMC-TGW, 2023 WL 2351654, at *3 (M.D. Fla. Mar. 3, 2023) (applying the heightened Rule 9(b) pleading standard to a FDUTPA claim); Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC, No. 8:20-cv-604-VMC-JSS, 2020 WL 5350303, at *4 (M.D. Fla. Sept. 4, 2020) (same).

Here, Mr. Pop alleges that Ms. Epstein "engaged in a deceptive act or unfair practice[] by engaging in fraud and statutory violations." (Doc. # 1-1 at ¶ 68). He avers that Defendants engaged in "unscrupulous [practices] . . . likely to mislead any consumer acting reasonably in the circumstances." (Id. at ¶ 70).

Therefore, Mr. Pop's FDUTPA claim sounds in fraud and Rule 9(b)'s heightened pleading standard applies. See PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., No. 3:12-cv-1366-HES-JBT, 2013 WL 12172912, at *6 (M.D. Fla. Aug. 28, 2013) ("[T]he Middle District of Florida has consistently held that those

FDUTPA claims that hinge on allegations of misrepresentation are 'grounded in fraud' and are therefore governed by Rule 9(b)'s heightened pleading requirements.").

Rule 9(b) requires a plaintiff to allege the "who, what, when, where, and how" of misconduct. <u>Garfield v. NDS Health Corp.</u>, 466 F.3d 1255, 1262 (11th Cir. 2006) (citation and internal quotation marks omitted).

Here, Mr. Pop has not pled any element of his FDUTPA claim with particularity. He has not identified any posts by Ms. Epstein that caused him to purchase the Luli Fama products, nor any posts constituting allegedly misleading advertisements. He has also failed to allege when he himself viewed such posts. Further, he has not provided any details of the Luli Fama Defendants' alleged scheme to pay Ms. Epstein and the other Influencers to promote Luli Fama products, other than asserting that Luli Fama pays the Influencers "significant monies" to promote its products. (Doc. # 1-1 at ¶ 11). He has not described the products he purchased from Luli Fama, why they were of inferior quality, or why he was unable to return or resell the products.

Importantly, because of these omissions, Mr. Pop has not sufficiently pled the "causation" element of his FDUTPA claim. While Mr. Pop alleges that the misleading posts induced

him to purchase the products (Id. at ¶¶ 4-5), he does not allege with particularity that he was induced by any misleading statements by any defendant, including Ms. Epstein. In fact, Mr. Pop has failed to allege "whether [he] viewed [the alleged misrepresentations] at all before purchasing the allegedly defective products." PB Prop. Mgmt., 2013 WL 12172912, at *7. Without alleging that he viewed misrepresentations attributable to Ms. Epstein, Mr. Pop cannot support a claim against her under FDUTPA.

### 2.   **Failure to State a Claim**

Even if Rule 9(b)'s heightened pleading standard did not apply to Mr. Pop's FDUTPA claim, Count I still fails to state a claim upon which relief could be granted.

The "deceptive or unfair practice" element of a FDUTPA claim can be alleged in multiple ways. A plaintiff may allege that "there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." Blair v. Wachovia Mortg. Corp., No. 11-cv-566-RBD-TS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) (citation omitted). Alternatively, a plaintiff can assert a per se violation by alleging a violation of "[a]ny rules promulgated pursuant to the Federal Trade Commission Act" or "[a]ny law, statute,

10

rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(a), (c).

In his complaint, Mr. Pop alleges a *per se* FDUTPA violation. See (Doc. # 1-1 at ¶ 69) ("By failing to disclose material connections, Defendants Luli Fama and Influencers violated Section 5(a) of 15 U.S.C. § 45(a) which represents a *per se* violation of 'FDUTPA.'"). Specifically, he advances the theory that Ms. Epstein and the other Defendants violated 16 C.F.R. § 255.5 and, therefore, violated the FTC Act. See (Id. at ¶ 44) ("[The Influencers] are not compliant with the FTC Rules found in 16 C.F.R. § 255.5 and the FTC guidelines regarding advertising in social media.").

Section 255.5, titled "Guides Concerning Use of Endorsements and Testimonials in Advertising," lays out the following interpretation of the FTC Act:

> When there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement, and that connection is not reasonably expected by the audience, such connection must be disclosed clearly and conspicuously.

16 C.F.R. § 255.5(a).

However, Section 255.5 cannot form the basis of a *per se* FDUTPA violation. Section 255.5 is a guide that does not proscribe conduct, and, as such, it is not a rule promulgated pursuant to the FTC Act or a regulation which proscribes unfair methods of competition. <u>See</u> 16 C.F.R. Ch. I, Subch. B, Pt. 17 ("[G]uides are administrative **interpretations** of laws administered by the Commission for the guidance of the public in conducting its affairs in conformity with legal requirements. They provide the basis for **voluntary** and simultaneous abandonment of unlawful practices by members of industry." (emphasis added)). Additionally, the FTC Act cannot independently form the basis of a *per se* FDUTPA violation, as it does not provide a private right of action. <u>Holmes v. Ocwen Fin. Corp.</u>, 747 F. App'x 836, 837 (11th Cir. 2019). Therefore, Mr. Pop has not alleged a *per se* FDUTPA violation.

Mr. Pop's FDUTPA claim fails for another reason. To successfully prosecute a FDUTPA claim, the plaintiff must allege that the unfair practice at issue caused his alleged harm. "[C]ausation [under FDUTPA] must be direct, rather than remote or speculative." <u>Stewart Agency, Inc. v. Arrigno Enters., Inc.</u>, 266 So. 3d 207, 213 (Fla. 4th DCA 2019) (quoting <u>Lombardo v. Johnson & Johnson Consumer Cos., Inc.</u>,

124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015)). The Eleventh
Circuit has held that the element of causation is met when
the alleged misrepresentations would have deceived an
objectively reasonable person. Fitzpatrick v. Gen. Mills,
Inc., 635 F.3d 1279, 1283 (11th Cir. 2011). Where a plaintiff
does not allege that the harm resulted from the FDUTPA
violation, the claim must fail for lack of causation. See
Ferrara v. LCS Fin. Servs. Corp., No. 8:14-cv-2450-JSM-AEP,
2015 WL 84703, at *3 (M.D. Fla. Jan. 7, 2015) ("[T]he
Complaint does not contain any allegations regarding how
[Defendant's] statements were misleading, nor does it contain
allegations of causation connecting [Defendant's] actions to
any alleged damages. Accordingly, [Plaintiff] has not
sufficiently [pled] all elements of a FDUTPA claim.").

Mr. Pop cannot demonstrate a causal connection between
the alleged wrongdoing and his alleged injury. Mr. Pop asserts
that Ms. Epstein engaged in the deceptive and unfair practice
of failing to disclose an advertising relationship. (Doc. #
1-1 at ¶ 44). His alleged injury, however, is his purchase of
Luli Fama products of "inferior quality, compared with the
expectations [he] had and the price he paid." (Id. at ¶ 13).
He does not explain how Ms. Epstein's alleged failure to
disclose an advertising relationship led to him receiving

13

Luli Fama products that he perceived to be inferior. Indeed, it is unclear how he could have attempted to draw such a connection. Even taking the facts in the light most favorable to him, Mr. Pop does not allege that the products were different from what he presumably saw in an Instagram post. He does not even allege that the Influencers made any statements regarding the quality of the products.

Finally, Mr. Pop's FDUTPA claim must fail due to a lack of actual damages. Actual damages "are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." Marrache v. Bacardi U.S.A., Inc., 17 F.4th 1084, 1098 (11th Cir. 2021) (citation and internal quotation marks omitted). FDUTPA "does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." Id. (citation and internal quotation marks omitted). Mr. Pop alleges that the products he purchased were of "an inferior quality" compared with his expectations and the price he paid. (Doc. # 1-1 at ¶ 13). He does not allege that he paid more than market value for the products nor that he received products different than the one he intended to

purchase. Instead, he is simply dissatisfied with the products. Subjective dissatisfaction does not constitute actual damages under FDUTPA. See <u>Clear Marine Ventures Ltd. v. Brunswick Corp.</u>, No. 08-CV-22418-CIV, 2010 WL 528477, at *5 (S.D. Fla. Feb. 11, 2010) (dismissing FDUTPA claim, where purchaser of a boat claimed it was "aesthetically unpleasing" and, thus, "entirely unsellable," for failing to allege that the "aesthetic changes affected . . . . the value beyond mere speculation").

Because amendment would not cure the fatal defects in Mr. Pop's FDUTPA claim, Count I of the complaint is dismissed with prejudice as to Ms. Epstein. See <u>Silberman v. Miami Dade Transit</u>, 927 F.3d 1123, 1133 (11th Cir. 2019) (explaining that while leave to amend ought generally to be freely granted, leave to amend need not be granted when any amendment would be futile).

**B.   <u>Count II (Unjust Enrichment)</u>**

**1.   <u>Rule 9(b)</u>**

As an initial matter, the heightened pleading standard in Rule 9(b) applies to Mr. Pop's unjust enrichment claim because it sounds in fraud. See <u>Allstate Indem. Co. v. Fla. Rehab & Injury Ctrs. Longwood, Inc.</u>, No. 6:15-cv-1740-CEM-

GJK, 2016 WL 7177624, at *3 (M.D. Fla. July 26, 2016) (stating that an unjust enrichment claim "sounds in fraud and must, therefore, meet the heightened pleading standards as set forth in Federal Rule of Civil Procedure 9"). The claim sounds in fraud because Mr. Pop asserts that "[t]his action arises from the deceptive and misleading promotion of Luli Fama products." (Doc. # 1-1 at ¶ 2).

Under Florida law, the elements of an unjust enrichment claim are: "(1) [the] plaintiff conferred a benefit on the defendant; (2) [the] defendant voluntarily accepted and retained the benefit; and (3) it would be inequitable for [the] defendant to retain the benefit without paying the value of the benefit to the plaintiff." Johnson v. Catamaran Health Sols., LLC, 687 F. App'x 825, 830 (11th Cir. 2017) (citing Fito v. Att'ys' Title Ins. Fund, Inc., 83 So. 3d 755, 758 (Fla. 3d DCA 2011)). "[T]he plaintiff must *directly* confer a benefit to the defendant." Kopel v. Kopel, 229 So. 3d 812, 818 (Fla. 2017) (emphasis added).

Additionally, "a claim of unjust enrichment may not be predicated on a wrong committed by a defendant." State Farm Mut. Auto. Ins. Co. v. Lewin, 535 F. Supp. 3d 1247, 1266 (M.D. Fla. 2021); see also Day v. Sarasota Drs. Hosp., Inc., No. 8:19-cv-1522-VMC-TGW, 2020 WL 7390153, at *7 (M.D. Fla. Feb.

7, 2020) ("The law of unjust enrichment is concerned solely with enrichments that are unjust *independently* of wrongs and contracts." (quoting <u>Flint v. ABB, Inc.</u>, 337 F.3d 1326, 1330 n.2 (11th Cir. 2003))); <u>Electrostim Med. Servs., Inc. v. Lindsey</u>, No. 8:11-cv-2467-VMC-TBM, 2012 WL 1560647, at *4 (M.D. Fla. May 2, 2012) ("Where a plaintiff predicates their unjust enrichment claim on wrongful conduct of a defendant, then the plaintiff's right of recovery, if any, arises from the wrong of the alleged tort rather than unjust enrichment." (quoting <u>Tilton v. Playboy Ent. Grp., Inc.</u>, No. 8:05-cv-692-JSM-TGW, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007))).

Ms. Epstein raises several arguments why Mr. Pop's unjust enrichment claim should be dismissed. She contends that the complaint does not sufficiently allege the elements of an unjust enrichment claim by (1) identifying any benefits that Mr. Pop conferred upon Epstein, nor any transaction that occurred between them, (2) identifying any appreciation of a benefit that Ms. Epstein retained, or (3) alleging that Ms. Epstein's retention of any benefit is inequitable. (Doc. # 38 at 23-24). Further, she asserts that the unjust enrichment claim must be dismissed because it both sounds in tort rather

than equity and is based on the same wrongdoing as Mr. Pop's FDUTPA claim. (<u>Id.</u> at 24-25).[1]

Here, the only allegation supporting Mr. Pop's claim for unjust enrichment is that "[b]y paying the higher prices demanded by Luli Fama, Plaintiff and the members of the class conferred a direct benefit to each of the Defendants." (Doc. # 1-1 at ¶ 77). Mr. Pop also asserts that Luli Fama sold more of the products and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers. (<u>Id.</u> at ¶¶ 5, 43).

First, Mr. Pop does not explain how his purchase benefitted Ms. Epstein. Even assuming that Ms. Epstein

---

[1] Ms. Epstein also argues that this claim fails because Mr. Pop possesses another adequate legal remedy for the harm alleged through a FDUTPA claim. (<u>Id.</u> at 25). There is some support for this proposition. <u>E.g.</u>, <u>PB Prop. Mgmt., Inc.</u>, 2013 WL 12172912, at *7 ("Defendants maintain that Plaintiff cannot plead unjust enrichment — an equitable, quasi-contract claim — because it has an adequate remedy at-law; namely, its express warranty and FDUTPA claims. Defendants are correct."). However, in other cases, plaintiffs have been permitted to bring unjust enrichment claims in the alternative provided that an express contract did not exist between the parties. <u>E.g.</u>, <u>Gov't Emps. Ins. Co. v. AFO Imaging, Inc.</u>, No. 8:20-cv-2419-VMC-CPT, 2021 WL 734575, at *11-12 (M.D. Fla. Feb. 25, 2021) (permitting Plaintiff to plead unjust enrichment in the alternative to its FDUTPA claim). Mr. Pop asserts that he brings his unjust enrichment claim in the alternative. (Doc. # 57 at 19). There is no language in the complaint to this effect. Regardless, this claim must be dismissed on other grounds.

received a portion of the revenues from all Luli Fama sales, which is a generous assumption, this payment would indicate an indirect benefit "at best." See Johnson, 687 F. App'x at 830 (finding a purchase from a third-party who then, in turn, pays premiums to the defendant insufficient to establish a direct benefit conferred on the defendant); Extraordinary Title Servs., LLC v. Fla. Power & Light Co., 1 So. 3d 400, 404 (Fla. 3d DCA 2009) (same). Mr. Pop has thus failed to show that he conferred a direct benefit on Ms. Epstein. Therefore, his unjust enrichment claim must be dismissed with prejudice as to her.

Second, the unjust enrichment claim is based on the same wrong that underlies his FDUTPA claim in that it is based solely on the unjust nature of the Luli Fama and Influencers' alleged failure to disclose an advertising relationship. As noted above, "a claim of unjust enrichment may not be predicated on a wrong committed by a defendant." State Farm Mut. Auto. Ins. Co., 535 F. Supp. 3d at 1266. Therefore, the unjust enrichment claim must be dismissed based on this ground as well.

In sum, the Court finds that Mr. Pop cannot properly state a claim for unjust enrichment based on the allegations set forth in the complaint. The Court finds that amendment

would be futile and Count II is dismissed with prejudice as to Ms. Epstein. <u>See</u> <u>Day</u>, 2020 WL 7390153, at *7 (M.D. Fla. Feb. 7, 2020) (dismissing with prejudice an unjust enrichment claim after finding Plaintiff could not state a claim where he "failed to allege that [Defendant] was enriched independently of its allegedly unlawful billing practices"); <u>Tilton</u>, 2007 WL 80858, at *3 (dismissing with prejudice unjust enrichment claim that was based solely on the defendants' wrongful conduct).

### 2. **Failure to State a Claim**

Even if Rule 9(b) does not apply to the unjust enrichment claim, the claim still fails. Importantly, the lack of direct benefit to Ms. Epstein from Mr. Pop's purchase from Luli Fama precludes any claim. Additionally, the fact that Mr. Pop's claim is based on the same wrongful conduct that underlies his FDUTPA claim similarly bars the claim under Rule 12(b)(6). Therefore, the claim must also be dismissed with prejudice for failure to state a claim.

### C. **Count III (Negligent Misrepresentation)**

### 1. **Rule 9(b)**

Ms. Epstein further argues that Mr. Pop's negligent misrepresentation claim should be dismissed because he has

not pled the claim with sufficient particularity under Rule 9(b). (Doc. # 38 at 25-26). Mr. Pop contends Rule 9(b)'s pleading requirements do not apply to negligent misrepresentation claims and that he has stated a valid claim. (Doc. # 57 at 8, 19-20).

Mr. Pop's negligent misrepresentation claim is subject to the heightened pleading requirement of Rule 9(b) because it is a fraud-based claim. Lamm v. State St. Bank & Tr., 749 F.3d 938, 951 (11th Cir. 2014); see also Linville v. Ginn Real Est. Co., 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010) ("Rule 9(b) applies to claims for negligent misrepresentation under Florida law because negligent misrepresentation 'sounds in fraud.'").

"To state a claim for negligent misrepresentation in Florida, a plaintiff must allege: (1) a misrepresentation of a material fact; (2) that the defendant made the representation without knowledge as to its truth or falsity, or under circumstances in which he ought to have known of its falsity; (3) that the defendant intended that the misrepresentation induce another to act on it; and (4) injury resulted to the party acting in justifiable reliance on the misrepresentation." Pop, 2023 WL 4661977, at *6 (citing

21

Souran v. Travelers Ins. Co., 982 F.2d 1497, 1503 (11th Cir. 1993)).

Mr. Pop's claim for negligent misrepresentation does not specify necessary details. He does not allege specific posts he saw from Ms. Epstein promoting Luli Fama products. He also does not explain how those posts caused him to purchase unidentified "products" that he considered inferior. Thus, he has failed to plead with sufficient particularity that Ms. Epstein made a misrepresentation or that he justifiably relied on Ms. Epstein's alleged misrepresentation.

Additionally, "[t]o succeed in a claim for negligent misrepresentation, the plaintiff must show the defendant owed it a duty of care." Levine v. Wyeth Inc., 684 F. Supp. 2d 1338, 1347 (M.D. Fla. 2010). To satisfy this requirement, Mr. Pop asserts that Ms. Epstein "had a duty to be truthful in [her] commercial speech." (Doc. # 1-1 at ¶ 83). However, under Florida law, "the failure to disclose material information is not actionable as part of a negligent misrepresentation claim absent some fiduciary or fiduciary-like duty to disclose the information." Hawaiian Airlines, Inc. v. AAR Aircraft Servs., Inc., 167 F. Supp. 3d 1311, 1322 (S.D. Fla. 2016); see also TransPetrol, Ltd. v. Radulovic, 764 So. 2d 878, 879 (Fla. 4th DCA 2000) ("A defendant's knowing concealment or non-

22

disclosure of a material fact may only support an action for fraud where there is a duty to disclose."). "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." Muy v. Int'l Bus. Machines Corp., No. 4:19CV14-MW/CAS, 2019 WL 8161749, at *3 (N.D. Fla. Nov. 25, 2019) (quoting Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp., 850 So. 2d 536, 540 (Fla. 5th DCA 2003)).

Parties in arms-length transactions generally do not incur a duty to disclose all material facts. See Id. ("While parties in arm's length transactions may incur a duty to disclose all material facts when other information is disclosed . . . such liability is generally limited to actions for fraudulent misrepresentation between parties with a contractual relationship . . . ." (citations omitted)).

Here, Ms. Epstein did not have a duty to disclose material facts. Mr. Pop has not, and cannot, allege that as a consumer, he had any fiduciary-like relationship with Ms. Epstein. As he did not have a contractual relationship with Ms. Epstein, she did not have a duty to disclose.

2.   <u>**Failure to State a Claim**</u>

Even if Rule 9(b)'s heightened standard did not apply, Mr. Pop still fails to state a claim. Again, Mr. Pop claims the misrepresentation was the failure to disclose an advertising relationship. However, he has failed to identify any posts by Ms. Epstein where she failed to disclose that the post was a paid advertisement for Luli Fama products. He also does not allege how he relied on Ms. Epstein's posts in purchasing Luli Fama products. Therefore, any failure to disclose such information would not constitute an actionable misrepresentation in this case. Further, Mr. Pop's inability to allege a fiduciary-like, or even contractual, relationship with Ms. Epstein prevents him from stating a claim for negligent misrepresentation.

As amendment would be futile, Count III of the complaint is dismissed with prejudice as to Ms. Epstein.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Gabrielle Epstein's Motion to Dismiss Plaintiff's Complaint (Doc. # 38) is **GRANTED.**

(2)   Counts I, II, and III are **DISMISSED** with prejudice as to Defendant Gabrielle Epstein.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this

20th day of March, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE