# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ALIN POP, individually and on behalf of
all those similarly situated,

      Plaintiff,

vs.                                    Case No.: 8:22-CV-02698-VMC-LSG

LULIFAMA.COM, LLC, MY
LULIBABE, LLC, LOURDES
HANIMIAN a/k/a LULI HANIMIAN,
TAYLOR MACKENZIE GALLO a/k/a
TEQULIA TAYLOR, ALEXA
COLLINS, ALLISON MARTINEZ
a/k/a/ ALLI MARTINEZ, CINDY
PRADO, GABRIELLE EPSTEIN,
HALEY PALVE a/k/a HALEY
FERGUSON, LEIDY AMELIA
LABRADOR, PRISCILLA RICART,

      Defendants.

_____/

## DEFENDANT GABRIELLE EPSTEIN'S SECOND RENEWED MOTION FOR SANCTIONS AND INCORPORATED MEMORANDUM OF LAW

Defendant Gabrielle Epstein, by and through her undersigned counsel, hereby files this second renewed motion pursuant to Federal Rule of Civil Procedure 11(b), Fla. Stat. § 57.105(1), and the Court's inherent power, for entry of an order imposing sanctions against Plaintiff and his attorneys in the amount of Epstein's attorneys' fees and costs incurred in this action, including those incurred in connection with the instant Motion.

## PRELIMINARY STATEMENT

This is a lawsuit that should never have been filed, at least not against Gabrielle Epstein, and certainly should not have been continued in this Court by Plaintiff and his lawyers.  Plaintiff contends that Epstein, seven other social media influencers, two companies, and a businesswoman "devised a scheme in which the influencers tag or recommend Luli Fama products" on Instagram, pretending they are disinterested and unaffiliated consumers" "[i]n order to artificially inflate the prices for the Luli Fama products . . . ."  Compl. at ¶ 4.

This is yet the latest iteration of Plaintiff's counsel's attempt to cash in on a bogus legal theory using inapposite causes of action that have no basis in fact, no legal merit, no violation of law, and no victim, but millions of dollars in damages as well as attorneys' fees are claimed.  These deficiencies are obvious and any attorney acting reasonably would have discerned them.  Plaintiff's lawyers have no excuse for filing and maintaining their frivolous claims, as they have previously filed several unsuccessful putative class actions on behalf of four different plaintiffs against models and social media influencers who have alleged, like Mr. Pop here, that the social media

posts are contrary to FTC "endorser" guidelines and thus caused them injury and monetary loss. *See*, *e.g. Chihaia v. Go Giveaways LLC*, 30 Fla. L. Weekly Supp. 23a (Fla. 11th Cir. Ct. Feb. 17, 2022) (dismissing with prejudice for lack of standing due to failure to allege any injury); *Colceriu v. Barbary*, 574 F. Supp. 3d 1120, 1123 (M.D. Fla. 2021) (dismissing for lack of standing ), *aff'd*, 21-14370, 2022 WL 3577116 (11th Cir. Aug. 19, 2022); *Colceriu v. Collins*, Case No. 50-2021-CA-004981 (Fla. 15th Cir. Ct.) (granting judgment on pleadings in favor of co-Defendant in this case Alexa Collins and dismissing complaint against another defendant with prejudice); *Salva and Pop v. 21st Century Spirits, LLC*, Case No. 1:22-cv-06083 (N.D. Ill. Nov. 3, 2022) (suing, among others, Collins, and alleging Salva and Pop purchased vodka of inferior quality in August 2022 based on Collins's posts).

What's worse, and for reasons that have not been supported by any evidence, Plaintiff and his counsel elected to add Epstein to the mix in this lawsuit and have even chosen to keep her in place upon receipt of her Motion to Dismiss (Dkt. No. 38) ("Mot."). Epstein will be renewing that Motion to Dismiss, too. But certain basics are missing, which should have led any attorney acting reasonably under the circumstances to not name Epstein as a defendant (or to later drop her), such as any actual Instagram post by Epstein that Plaintiff can even say he saw before making his Luli Fama purchase, *i.e.*, a basis for the assertion of the claims or any notion that that this Australian citizen living in California could be subject to personal jurisdiction. Despite having the obligation to come forward with some evidence or allegations along these lines in opposing Epstein's Motion to Dismiss, Plaintiff and his lawyers

came up with nothing.  Clearly, a reasonable inquiry was not conducted.  Plaintiff and his counsel continue to unreasonably disregard that they have named Epstein as a defendant in a putative class action lawsuit and are forcing this individual defendant to expend significant funds to defend against claims that they should have known have no support in the law or the facts, in a forum for which there is no good faith basis to claim has personal jurisdiction over Epstein, and with knowledge that she was not served with sufficient process.   For their manifestly unreasonable and bad faith conduct, Plaintiff and his attorneys should be sanctioned in the amount of Epstein's attorneys' fees and costs incurred in responding to these claims and in connection with this Motion.[1]

## **ARGUMENT**

### I.    **THE COURT'S AUTHORITY UNDER RULE 11, § 57.105, AND THE COURT'S INHERENT POWER TO IMPOSE SANCTIONS**

Federal Rule of Civil Procedure 11 provides a remedy in the form of sanctions against parties and attorneys who engage in frivolous litigation and assert baseless claims.  Rule 11 provides, in relevant part:

> (b)     By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge,

---

[1] Subsequent to the service and filing of the original version of this Motion and the closing of the case against Epstein, the Court granted the other Defendants' Rule 12(b)(6) motions to dismiss based on virtually identical arguments made herein and dismissed Plaintiff's three claims *with prejudice* on the grounds that, given the black letter law, amendment would be **futile**.  *See* Dkt. No. 105 at 15, 18-19, 22-23.  The Court then granted Epstein's Renewed Motion to Dismiss, which was affirmed by the Eleventh Circuit.  *See* Dkt. Nos. 135 & 145.  These developments provide further support for the imposition of the sanctions requested by Epstein.

information, and belief, formed after an inquiry reasonable under the circumstances,

(1)    it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)    *the claims, defenses, and other legal contentions therein are warranted by existing law or by nonfrivolous argument* for the extension, modification, or reversal of existing law or the establishment of new law; [and]

(3)    *the allegations and other factual contentions have evidentiary support* or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . . .

Fed. R. Civ. P. 11 (emphases added).

The purpose of Rule 11 is to "discourage dilatory or abusive tactics and to help streamline the litigation process by lessening frivolous claims or defenses." *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987). Pursuant to Rule 11, when filing a pleading in federal court, an attorney certifies that he or she has conducted a reasonable inquiry and that the pleading is well-grounded in fact, legally tenable, and is not presented for any improper purpose. A signor can "no longer rely solely on his personal interpretation of the facts, conclusory allegations of fact, speculation, suspicion, rumor or surmise to sustain a reasonable belief." *Gutierrez v. City of Hialeah*, 729 F. Supp. 1329 (S.D. Fla. 1990).

Thus, when an attorney files a pleading that has no reasonable chance of success or files a pleading in bad faith for an improper purpose, Rule 11 sanctions should be imposed. *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993). *See also Carlson v. Bosem*, 04-61004-CIV, 2007 WL 1496693 (S.D. Fla. Apr. 9, 2007), *aff'd,* 298 F. App'x 861 (11th Cir. 2008) (courts may impose sanctions under Rule 11 for bad faith conduct

which is intentional or reckless). "The sanction should be imposed on the persons—whether attorneys, law firms, or parties—who have violated the rule or who may be determined to be responsible for the violations." Fed. R. Civ. P. 11 Advisory Committee Note to 1993 Amendments. In this connection, the Federal Rules specifically provide that where a party is represented by counsel, only the attorney can be sanctioned for asserting legally frivolous claims, contentions, or other legal contentions. *See* Fed. R. Civ. P. 11(c)(5)(A).

"The standard for testing conduct under . . . Rule 11 is 'reasonableness under the circumstances.'" *United States v. Milam*, 855 F.2d 739, 743 (11th Cir. 1988) (quoting *Donaldson*, 819 F.2d at 1556). A district court has the discretion to award Rule 11 sanctions:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

*Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (quoting *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)).

The Eleventh Circuit requires a two-step inquiry: (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous. *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). A claim is frivolous when the party should have been aware that the claim had no basis in law or fact if he or she had made a reasonable inquiry. *Worldwide Primates*, 87 F.3d at 1254. The standard is an objective one – courts must determine

whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified. *Kaplan v. Daimler Chrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003).

"Where, as here, a case is removed from state court, Rule 11 does not apply to pleadings filed before removal. The rule, however, is applicable to papers filed in federal court after removal. Thus, although [a] complaint . . . filed in state court . . . cannot be the basis of a Rule 11 violation, any subsequent federal court filings, such as those in opposition to a motion to dismiss, are sanctionable if they resulted in the continuation of a baseless lawsuit." *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994).

Because Plaintiff's claims are based in Florida law, "[a]ttorney's fees pursuant to Florida Statute § 57.105 may be awarded to the prevailing party . . . ." *BankAtlantic v. Blythe Eastman Paine Webber. Inc.*, 955 F.2d 1467, 1478 n.11 (11th Cir. 1992). Fla. Stat. § 57.105(1) is intended to "discourage baseless claims . . . by placing a price tag through attorney's fees awards on losing parties who engage in these activities." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1227 (11th Cir. 2003). Similar to Rule 11, Section 57.105(1) provides, in relevant part:

> Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:
>
> (a)  Was not supported by the material facts necessary to establish the claim

or defense; or

(b) Would not be supported by the application of then-existing law to those material facts.

Fla. Stat. § 57.105(1).

There are other sources of a court's authority to sanction a party for its bad faith conduct. "[A]lthough certain conduct may or may not be violative of Rule 11 . . . it does not necessarily mean that a party will escape sanctions under the court's inherent power." *In re Mroz,* 65 F.3d 1567, 2575 (11th Cir. 1995). *See also Maale v. Kirchgessner*, 08-80131-CIV, 2011 WL 1458258 (S.D. Fla. Mar. 3, 2011), *report and recommendation adopted,* 08-80131-CIV, 2011 WL 1458147 (S.D. Fla. Apr. 15, 2011). Sanctions under the court's inherent power are particularly appropriate "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

## II.    PLAINTIFF'S CLAIMS ARE FRIVOLOUS AND MERIT SANCTIONS

### A.    There Is No Good Faith Basis for the Assertion of Personal Jurisdiction Over Epstein

Plaintiff's continued assertion that this Court has personal jurisdiction over Epstein is baseless and merits sanctions. Plaintiff asserts the purported bases for personal jurisdiction in only two paragraphs in the Complaint. First, Plaintiff summarily alleges that Epstein is "transacting business in Florida over the internet and actively soliciting business in Florida." (Compl., ¶ 25). Second, lumping the eight "Influencer" Defendants together, Plaintiff asserts in conclusory fashion that "[t]he Influencers engage in substantial activities within Florida and a substantial portion of

the swimwear is promoted using Florida Locations." (Compl., ¶ 31). That flagrantly disregards the rule that personal jurisdiction must be independently shown as to each defendant. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).

Plaintiff expressly alleged that Epstein is a resident of California. *See* Compl., ¶ 25. This effectively rules out general personal jurisdiction, because that requires "substantial and not isolated activity" constituting "'continuous and systematic business contact' with Florida . . . ." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (quoting Fla. Stat. § 48.193(2)). The Supreme Court has explained that this requires contacts with the forum that are so continuous and substantial so as to essentially regard the defendant as "at home" in the state, with the paradigmatic example for an individual being the state of his or her domicile. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Nothing even remotely alleged or submitted by Plaintiff in opposition to Epstein's Motion to Dismiss qualifies as a *prima facie* showing of Epstein being "at home" in Florida.

As for specific jurisdiction, "[a] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010)). "The critical factor in deciding whether a tort committed out of state may subject the tortfeasor to personal jurisdiction in Florida is whether the cause of action arose from the act in question." *Wiggins v. Tigrent, Inc.*, 147 So. 3d 76, 87 (Fla. 2d DCA 2014). "When there's no such connection, specific jurisdiction is lacking

8

regardless of the extent of a defendant's unconnected activities in the forum." *Schrier*

*v. Qatar Islamic Bank*, No. 20-60075-CIV, 2022 WL 4598630, *18 (S.D. Fla. Sept. 30,

2022) (internal quotation and brackets omitted).

Nowhere in the Complaint or the Response in Opposition to Epstein's Motion

to Dismiss, (Dkt. No. 57) ("Resp."), does Plaintiff identify any relevant facts relating

to Epstein's conduct or her supposed ties to Florida that *could* permit the exercise of

personal jurisdiction. The basis of Plaintiff's claims against Epstein is that her social

media posts purportedly deceived him by allegedly failing to disclose a relationship

with Luli Fama. ***Yet, he has not identified or provided an example of a single such post***.

Indeed, Plaintiff has ***no evidence of*** any conduct by Epstein, directed to Florida or

otherwise, that could constitute a specific jurisdictional contact out of which his claims

allegedly arose, a requirement for specific personal jurisdiction.  Instead, in his

Response he pointed to published photos of Epstein during a few unrelated events in

Miami years ago and a professional photographer's website about a clearly-identified

Luli Fama marketing campaign from a photo shoot in Fiji for the brand's launch in

Australia (not Florida).  Resp. at 22-23; Dkt. No. 57-1.  Not only is there no plausibly

stated relationship between these "contacts" – only some of which were with Florida

– and Plaintiff's claims, Plaintiff does not even claim to have seen those photos or

posts.  As should have been obvious to any attorney acting reasonably, ***none*** of this can

be deemed conduct by Epstein out of which Plaintiff's Instagram-based claims arose,

a requirement for specific jurisdiction.

In defense of his frivolous assertion of specific personal jurisdiction, Plaintiff

advances a new argument in his Response that "[t]he test regarding specific personal jurisdiction involving material posted online is if the material posted is *accessible* in Florida and if it was *accessed* in Florida," without the need to show any conduct directed toward Florida. Resp. at 24. As another court recently explained, there is no basis in law for Plaintiff's argument:

> The unifying factor in these cases is that the tortious aspects of the website were expressly targeted at citizens of the State of Florida. In *Licciardello* [*v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008)], for example, the owner of the trademark infringed upon resided in Florida and the consumers confused by the trademark infringement included Florida residents. 544 F.3d at 1282–83. And in *Internet Solutions Corp.* [v. *Marshall*, 39 So. 3d 1201 (Fla. 2010)], the corporation which was defamed by the Washington-based website had its principal place of business in Florida. 39 So. 3d at 1202–03. ***In sum, the tortious conduct perpetrated through the websites was clearly directed at Florida citizens.***

> Here, unlike in *Licciardello* and *Internet Solutions Corp.*, there is no indication that the allegedly tortious website was expressly targeted at the State of Florida.

*Yohananov v. Bris Avrohom of Fair Lawn*, No. 2:22-CV-283-JLB-KCD, 2022 WL 3042521, *4 (M.D. Fla. Aug. 2, 2022) (emphasis added).

Florida law still requires that, to support specific personal jurisdiction, "the tortious conduct perpetrated through . . . websites [be] clearly *directed at* Florida citizens." *Id.* at *4. This is consistent with the Supreme Court's requirement that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). This should have been obvious to Plaintiff's lawyers. Thus, as Epstein argued in her Motion, (Mot. at 9-13), "activity on the Internet, by itself, is not a sufficient minimum contact to establish 'purposeful availment' . . . . Rather, something more is required

10

to show that online activity is 'aimed' at a particular jurisdiction." *Frida Kahlo Corp. v. Pinedo*, No. 18-21826-CIV, 2021 WL 4147876, *5 (S.D. Fla. Sept. 13, 2021) (finding social media posts not directed at Florida could not establish specific jurisdiction).[2] Either way, Plaintiff and his lawyers have not come forward with even a single fact to support their frivolous legal argument.

Plaintiff and his lawyers should always have known that there is no good faith basis for their continued assertions that Epstein is within this Court's personal jurisdiction, and she should never have been brought into this lawsuit. Accordingly, Plaintiff's "claim that [Epstein] was subject to personal jurisdiction in Florida was frivolous," and he and his lawyers "should have been aware that their claim was frivolous given [Epstein's] . . . motion to dismiss." *Rogers v. Nacchio*, No. 05-60667-CIV, 2006 WL 7997562, *19 (S.D. Fla. June 6, 2006). Sanctions should be imposed.

## B.    There Is No Good Faith Basis for the Assertion of Claims Against Epstein

Plaintiff and his lawyers should also be sanctioned for their continued assertion of frivolous claims against Epstein. The claims lack any basis in fact or law and their filing and continued maintenance reflect a failure to conduct a reasonable investigation that should have put the brakes on this baseless and harassing money grab. For the

---

[2] Plaintiff argues, without any basis in law or fact, that *any* posting regarding swimwear is necessarily directed toward Florida on the view that Florida is "the main market in the United States for swimwear." Resp. at 23. That is manifestly nonsensical. Moreover, Plaintiff has consistently failed to provide any context for how a social influencer merely posting on social media pictures of her in swimwear would be directing any efforts toward consumers in any market in Florida.

11

reasons stated in greater detail in Epstein's Motion to Dismiss, (*see* Mot. at 14-26), which is incorporated by reference as if stated herein, Plaintiff has not even stated a plausible claim for relief (and cannot do so as a matter of law). The continued assertion of the claims is unreasonable and merits sanctions.

### 1. The FDUTPA Claim

"[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Plaintiff asserts Epstein violated FDUTPA because she allegedly "violated the FTC Act," under 15 U.S.C. §45(a). (Compl. at ¶¶ 17, 69). Plaintiff's and his counsel's effort to manufacture a class claim under FDUTPA for money damages (and attorneys' fees) out of a purported – but never specified – violation of the FTC Act is utterly flawed and has no basis in fact or law for several reasons.

First, the FTC Act does not provide a private right of action and, consequently, cannot support a FDUTPA claim. *See Carson v. Ocwen Loan Servicing, LLC*, No. 2:18-CV-447-FTM-99CM, 2018 WL 4354815, *1 (M.D. Fla. Sept. 12, 2018). Plaintiff did not even respond to this argument in his Response.

Second, Plaintiff has never presented evidence of, let alone identified, a deceptive act or practice by Epstein. Plaintiff does not identify what, when, or how Epstein allegedly promoted Luli Fama swimwear in any way, shape, or form. It is not too much to require of Plaintiffs' counsel to be able to identify at least one specific instance of the conduct he alleges is a valid basis for a putative class action. Here,

though, ***Plaintiff fails to allege any plausible violation by Epstein of any rule under the FTC
Act in the first place***. For that same reason, the Complaint fails to allege a deceptive act
and should be dismissed.

Third, causation is particularly lacking and, indeed, is impossible. "[C]ausation
[under FDUTPA] must be direct, rather than remote or speculative." *Stewart Agency,
Inc. v. Arrigo Enterprises, Inc.*, 266 So. 3d 207, 213 (Fla. 2d DCA 2019) (quoting
*Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D.
Fla. 2015)). Again, there is no evidence of a single social media post by Epstein that
Plaintiff ever saw. Nor has Plaintiff come forward with any explanation about how
Epstein's purported (but unidentified) posting of social media without the disclosures
Plaintiff contends were required caused any injury. Plaintiff contends they caused him
to receive products "of an inferior quality, compared with the expectations the Plaintiff
had and the price he paid." Compl., ¶¶ 4, 13, 56. There is no basis in fact or law for
that contention, and Plaintiff and his lawyers have failed to articulate one. The
"causation" accusation is therefore frivolous.

Fourth, Plaintiff's and his lawyer's attempt at placing a square peg (FTC social
media influencer guidelines) in a round hole (the claimed basis of a FDUTPA claim)
especially falls apart when considering the requirement of actual damages. For
purposes of FDUTPA, "the measure of actual damages is the difference in the market
value of the product or service in the condition in which it was delivered and its market
value in the condition in which it should have been delivered according to the contract
of the parties." *Rollins*, 951 So. 2d at 869. FDUTPA does not provide for the recovery

13

of nominal damages, speculative losses, or compensation for subjective feelings of

disappointment. *See id*. There is no good faith basis to assert Plaintiff suffered "actual

damages" for purposes of FDUTPA based upon Epstein's purported (but unidentified)

misrepresentations. ***Especially when Plaintiff continues to come up short in pointing to***

***any evidence or instance of any such "misconduct" by Epstein***. The FDUTPA claim is a

baseless attempt to shake down Epstein for money upon an incredibly flimsy legal

claim without a shred of evidence in support.

### 2.    The Unjust Enrichment Claim

The unjust enrichment claim is even more frivolous. "The essential elements of

a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the

plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's

acceptance and retention of the benefit under circumstances that make it inequitable

for him to retain it without paying the value thereof." *Rollins*, 951 So. 2d at 876. The

"facts" do not fit this claim, either, as should have been apparent to Plaintiff and his

lawyers from the start. Plaintiff does not identify a single benefit conferred by Plaintiff

upon Epstein, nor can he given there was no transaction between them. As any first-

year law student should know, an unjust enrichment claim requires the purported

benefit be ***directly*** conferred by the plaintiff upon the defendant, which is not alleged

to nor could it have occurred here. *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017)

("[T]o prevail on an unjust enrichment claim, the plaintiff must directly confer a

14

benefit to the defendant."). For the same reason, there can be no appreciation of a benefit from Plaintiff retained by Epstein.

Moreover, unjust enrichment "may not be predicated on a wrong committed by a defendant." *State Farm Mut. Auto. Ins. Co. v. Lewin*, 535 F. Supp. 3d 1247, 1266 (M.D. Fla. 2021). When an inequity is based "on wrongful conduct of a defendant," the right to recover "arises from the wrong of the alleged tort rather than unjust enrichment." *Electrostim Med. Servs., Inc. v. Lindsey*, No. 11–CV–2467, 2012 WL 1560647, at *4 (M.D. Fla. 2012) (Covington, J.). As this Court explained, a plaintiff cannot bring an unjust enrichment claim based on wrongful conduct that is already the basis of a FDUTPA claim. *See Day v. Sarasota Doctors Hospital, Inc.*, No. 19-CV-1522, 2020 WL 7390153, at *7 (M.D. Fla. Feb. 7, 2020) (Covington, J.) (finding plaintiff's right to recover for the defendant's wrongful acts arose from a FDUTPA claim, not unjust enrichment).

### 3. The Negligent Misrepresentation Claim

"To prove negligent misrepresentation, it must be shown that (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation." *Baggett v. Electricians Local 915 Credit Union*, 620 So.2d 784, 786 (Fla. 2d DCA 1993). Moreover, "[t]o succeed in a claim for negligent misrepresentation, the plaintiff must show the defendant owed it

a duty of care. If no duty exists, the claim must fail." *Levine v. Wyeth Inc.*, 684 F. Supp. 2d 1338, 1347 (M.D. Fla. 2010) (citations omitted).

As discussed above, there is not a shred of evidence – nor even one solitary instance identified by Plaintiff – of a single misrepresentation by Epstein. This foundational deficiency should have made it obvious to Plaintiff and his attorneys that this claim has no good faith basis in fact or law. On what good faith basis can they possibly contend Epstein intended to induce Plaintiff to do anything when, ***once again***, they cannot point to any specific conduct by her? ***Who – especially a lawyer – files a lawsuit when they have zero evidence of an unlawful act?*** That is clearly bad faith conduct. Moreover, it should have been obvious to Plaintiff and his counsel that this claim is frivolous since Epstein never had a duty of care to Plaintiff. Again, this is black letter law. As should have been obvious to all, this claim for negligent representation has no basis in fact or law. *See Levine*, 684 F. Supp. 2d at 1347.

## C.    Plaintiff's Argument that Service Was Proper is Also Frivolous

As a final matter, the lack of good faith in the pursuit of claims against Epstein extends to the arguments about the insufficiency of service of process. *See* Mot. at 3-5. The return of service filed by Plaintiff purporting that Epstein was personally served at 11:51 a.m. on October 25, 2022 is false. Epstein submitted sworn declaration testimony, including from her boyfriend, that she was not and could not have been personally served when the return of service stated because she was not at the apartment that morning but rather was on a transpacific flight from Australia that did

not arrive in Los Angeles until approximately 7:00 p.m. *See* Dkt. Nos. 39 & 40. In the face of this evidence, Plaintiff and his lawyers did not investigate, electing to do nothing more than dismiss the boyfriend's declaration on the curious basis that "apartment-sitting" does not happen and by relying upon a declaration from the process server that simply recycled the already refuted contents of the return of service (probably because he "serve[s] hundreds of cases each month"). *See* Resp. at 30-31; Dkt. No. 57-2 at ¶ 7. Indeed, Plaintiff's counsel never bothered to communicate with the process server to investigate the conflict between his false return of service and the unassailable evidence submitted by Epstein. Resp. at 30 ("[H]e never met or communicated with Plaintiff of [sic] his attorneys.").

This was not an insoluble problem. Either the person who serves "hundreds of cases a month" – at least six or a seven a day, on average – got the facts wrong, or *two* people for whom this experience would surely stick out – one of whom was flying over the Pacific Ocean at the time – are mistaken. Well, we know the answer. The stamp in Epstein's passport reflecting her admission into the country at Los Angeles International Airport on October 25, 2022, which necessarily occurred upon the arrival of her transpacific flight at 7 p.m., (Dkt. No. 39 at ¶ 7 & Ex. B thereto), more than seven hours *after* the purported service, settles the question. *See* Ex. A, page 39. Plaintiff's and his attorneys' continued insistence that service was proper is therefore objectively frivolous, and further supports the imposition of sanctions.

## CONCLUSION

For the foregoing reasons, Defendant Gabrielle Epstein respectfully requests that the Court, pursuant to Federal Rule of Civil Procedure 11(b), Fla. Stat. § 57.105(1), and the Court's inherent power, impose sanctions against Plaintiff Alin Pop and his attorneys in the amount of Epstein's attorneys' fees and costs incurred in this action, including those incurred in connection with the instant Motion, and any further relief the Court deems appropriate.

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel certifies that, on March 14, 2023, he and Jeffrey Backman, counsel for Defendant Gabrielle Epstein, met and conferred with Bogdan Enica and Keith Gibson, counsel for Plaintiff, by Microsoft Teams virtual conference to discuss the grounds of Epstein's motion for sanctions. The parties were not able to agree on resolution of any part of the motion, and it is therefore opposed by Plaintiff.

Undersigned counsel further certifies that on October 15, 2025, he conferred by e-mail with counsel for Plaintiffs and by voicemail exchange with Mr. Gibson regarding the renewal of Epstein's motion for sanctions. Mr. Gibson advised both in his voicemail message and by e-mail that Plaintiff opposes the requested relief.

DATED:  October 15, 2025            GREENSPOON MARDER LLP

                                    BY: */s/ Roy Taub*
                                    JEFFREY A. BACKMAN
                                    Florida Bar No. 662501
                                    ROY TAUB
                                    Florida Bar No. 116263
                                    jeffrey.backman@gmlaw.com
                                    rene.vazquez@gmlaw.com

18

roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com
200 East Broward Boulevard, Ste. 1800
Fort Lauderdale, Florida 33301
Telephone: 954.491.1120

*Attorneys for Defendant Gabrielle Epstein*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, in compliance with Federal Rule of Civil Procedure 11(c)(2), a true and correct copy of the initial Motion for Sanctions was served on February 22, 2023 by email and (where indicated) by FedEx overnight delivery upon the following:

Practus, LLP
Bogdan Enica
66 W. Flagler St., Suite 937
Miami, FL 33130
(305)539-9206
Bogdan.enica@practus.com
Keith L. Gibson
11300 Tomahawk Crk. Pkwy. Ste 310
Leewood, KS 66211
(603)677-6745
Keith.gibson@practus.com

*Attorneys for Plaintiff*
*(Mr. Enica served by FedEx as well)*

Jared Dwyer
Emiley Pagrabs
Greenberg Traurig PA
333 S.E. 2nd Ave., Suite 4400
Miami, FL 33131
(305)579-0500
dwyerje@gtlaw.com
collazoe@gtlaw.com
pagrabse@gtlaw.com

*Attorneys for Defendants Lourdes Hanimian*
*a/k/a Luli Hanimian, Lulifama.com LLC,*
*My Lulibabe LLC*

Jorge Perez Santiago
Stumphauzer Kolaya Nadler & Sloman, PLLC
Two South Biscayne Blvd.
Miami, FL 33131
(305)614-1400; (305)614-1425-fx
jperezsantiago@sknlaw.com
2nd: electronicservice@sknlaw.com

19

*Attorneys for Defendants Priscilla Ricart,*
*Taylor Gallo, Alexa Collins, Allison*
*Martinez, Cindy Prado, and Leidy Amelia*
*Labrador*

I HEREBY FURTHER CERTIFY that a true and correct copy of the foregoing

was served on all counsel of record via ECF on October 15, 2025.

_/s/ Roy Taub_
ROY TAUB