UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALIN POP,

    Plaintiff,

v.                                    Case No. 8:22-cv-2698-VMC-LSG

LULIFAMA.COM LLC, et al.,

    Defendants.
_____/

**ORDER**

This matter is before the Court on consideration of Defendants LuliFama.com, LLC, My LuliBabe, LLC, Lourdes Hanimian, Taylor M. Gallo, Alexa Collins, Allison Martinez, Cindy Prado, Haley Palve, Leidy A. Labrador, and Priscilla Ricart's Renewed Joint Motion for Attorneys' Fees (Doc. # 147) and Renewed Joint Motion for Sanctions (Doc. # 148), as well as Defendant Gabrielle Epstein's Renewed Motion for Entitlement to Attorneys' Fees and Costs (Doc. # 149) and Second Renewed Motion for Sanctions (Doc. # 150), all filed on October 15, 2025. Plaintiff Alin Pop responded to each motion on November 12, 2025. (Doc. ## 153, 154, 155, 156). Also before the Court are Defendants LuliFama.com, LLC, My LuliBabe, LLC, and Lourdes Hanimian's and Defendant Gabrielle Epstein's Applications for Appellate Attorneys' Fees, which

1

the Eleventh Circuit Court of Appeals transferred to this Court for consideration. (Doc. ## 157, 158). For the reasons that follow, the Motions and the Applications are denied.

## I.    **Background**

This action arises from the allegedly deceptive and misleading promotion of Luli Fama products by LuliFama.com LLC, My LuliBabe, LLC, and Lourdes Hanimian (collectively "the Luli Fama Defendants"), and eight influencers, Taylor M. Gallo, Alexa Collins, Allison Martinez, Cindy Prado, Gabrielle Epstein, Haley Palve, Leidy Amelia Labrador, and Priscilla Ricart. (Doc. # 1-1). Mr. Pop filed a putative class action complaint in state court on October 17, 2022. (Id.). The complaint alleged as follows.

"Luli Fama is a swimwear designer, manufacturer, and reseller that came to fame with the rise of Instagram." (Id. at ¶ 6). Luli Fama primarily focuses on selling its products online. (Id. at ¶ 8). "Importantly, most of Luli Fama's online sales come from social media, including Instagram." (Id.). Mr. Pop alleges that "a large part of Luli Fama's [marketing] strategy" involves "[a]sking social media influencers to advertise its products and disguise such advertising as honest consumer recommendation." (Id. at ¶ 9). "Luli Fama makes tens of millions of dollars that can be attributed

directly to the disguised Instagram advertising campaigns." (Id. at ¶ 10). The company pays "significant monies" to social media influencers "for their indispensable contribution." (Id. at ¶ 11).

Mr. Pop further alleged that the influencers "misrepresented the material relationship they have with [Luli Fama]." (Id. at ¶ 3). He stated that they did this by promoting Luli Fama products without disclosing the fact that they were paid to do so, in violation of the Federal Trade Commission's ("FTC") rules and guidelines. (Id. at ¶¶ 1, 3, 49). Specifically, by failing to include Instagram's "paid partnership" tag or similar tags such as "#ad" or "#sponsored," the influencers allegedly violated 16 C.F.R. § 255.5 and thus violated the Federal Trade Commission Act, 15 U.S.C. § 45. (Id. at ¶¶ 44, 52-53, 69).

Mr. Pop alleged that the Luli Fama Defendants and the influencers' "very profitable and very illegal" advertising practices led him to purchase "Luli Fama products" that were "of an inferior quality, compared with the expectations [he] had and the price he paid." (Id. at ¶¶ 12, 13). Mr. Pop purchased the products "exclusively because of the way the products are advertised" by "his favorite influencers." (Id. at ¶¶ 43, 54). According to Mr. Pop, "Luli Fama [swimwear] is

3

approximately 100% more expensive" than other swimwear brands, such as Victoria's Secret. (Id. at ¶ 55). Mr. Pop was unable to return the Luli Fama products he purchased and, when he "tried to sell the unused product on eBay[,] . . . he received only small offers that barely covered shipping." (Id. at ¶¶ 56, 57).

Mr. Pop asserted claims for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count I), unjust enrichment (Count II), and negligent misrepresentation (Count III). (Doc. # 1-1). The Luli Fama Defendants and Ms. Epstein removed the case to this Court on November 23, 2022, prior to filing responsive pleadings. (Doc. # 1).

On December 23, 2022, the Luli Fama Defendants moved to dismiss the complaint for failure to state a claim. (Doc. # 35). On December 28, 2022, Ms. Ricart, Ms. Gallo, and Ms. Martinez – joined by Ms. Labrador, Ms. Prado, and Ms. Collins (collectively "the Influencer Defendants") – also moved to dismiss the complaint for failure to state a claim. (Doc. ## 41, 53, 54). Also on December 28, 2022, Ms. Epstein separately moved to dismiss the complaint for failure to state a claim as well as for insufficient service of process and lack of personal jurisdiction. (Doc. # 38). However, Ms. Epstein

4

later withdrew her arguments regarding service of process and personal jurisdiction. (Doc. # 129). The Luli Fama Defendants and Ms. Epstein moved to stay discovery pending resolution of their motions to dismiss, which the Court denied. (Doc. ## 37, 42, 69, 73).

On March 23, 2023, Ms. Epstein filed her first motion for sanctions against Mr. Pop and his counsel for forcing Ms. Epstein to "defend against claims that they should have known have no support in the law or the facts, in a forum for which there is no good faith basis to claim has personal jurisdiction over [Ms.] Epstein, and with knowledge that she was not served with sufficient process." (Doc. # 65 at 3-4). The Court denied the motion as premature as Ms. Epstein's request for sanctions was more properly considered at the end of litigation. (Doc. # 70).

On March 30, 2023, Mr. Pop filed a motion to compel better discovery responses from LuliFama.com LLC and for Rule 37 sanctions, in which he alleged that LuliFama.com LLC was "refusing to participate in discovery." (Doc. # 66 at 2). LuliFama.com LLC opposed. (Doc. # 74). After conducting a virtual hearing on May 15, 2023, Magistrate Judge Julie S. Sneed granted in part and denied without prejudice in part the motion. (Doc. ## 77, 81).

On May 19, 2023, Mr. Pop filed a motion to compel better discovery responses and for Rule 37 sanctions against Ms. Epstein. (Doc. # 80). On June 2, 2023, Ms. Epstein filed a response in opposition (Doc. # 86) and moved for a protective order in which she sought to reschedule her upcoming deposition and requested permission to be deposed remotely. (Doc. # 85). On June 6, 2023, Judge Sneed granted Ms. Epstein's motion to the extent of directing the parties to reschedule Ms. Epstein's deposition. (Doc. # 89).

On June 29, 2023, Mr. Pop filed an unopposed motion to continue the virtual hearing on his motion to compel better discovery responses from Ms. Epstein due to an impending settlement with Ms. Epstein. (Doc. # 93). Judge Sneed granted the motion and denied without prejudice Mr. Pop's motion to compel in light of the forthcoming settlement. (Doc. ## 94, 97).

On July 5, 2023, Mr. Pop filed a motion to compel better discovery responses and for Rule 37 sanctions against the Influencer Defendants, which those Defendants opposed. (Doc. ## 96, 102). LuliFama.com LLC also filed a motion to strike Mr. Pop's motion to compel and a motion for leave to file a document under seal. (Doc. ## 103, 104).

On July 17, 2023, the Court dismissed the action as to Ms. Epstein based on Mr. Pop's representation that he and Ms. Epstein had reached a settlement on all material terms. (Doc. ## 99, 100). The Court also denied as moot Ms. Epstein's motion to dismiss. (Doc. # 106).

On July 20, 2023, the Court granted the remaining Defendants' motions to dismiss. (Doc. # 105). The Court dismissed the complaint against those Defendants due to Mr. Pop's failure to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). (Id.). Even if Rule 9(b)'s heightened standard did not apply, the Court held that Mr. Pop's claims were subject to dismissal for failure to state a claim. (Id.). In light of the dismissal order, the Court denied as moot Mr. Pop's July 2023 motion to compel as well as LuliFama.com LLC's motion to strike and motion for leave to file a document under seal. (Doc. # 107).

On August 1, 2023, Ms. Epstein moved to reopen the case as to her. (Doc. # 110). Ms. Epstein argued that, while the parties had been engaged in settlement negotiations, they had not reached an agreement as to all material terms as Mr. Pop had advised the Court. (Id.). The Court granted the motion, finding there was good cause to reopen the case as to Ms. Epstein as the parties had not agreed to all essential terms

7

of the settlement. (Doc. # 126 at 14). The Court then reinstated and granted Ms. Epstein's motion to dismiss for the same reasons as it dismissed the complaint as to the other Defendants. (Doc. ## 128, 135).

Mr. Pop appealed the dismissal orders to the extent they dismissed the FDUTPA claim. (Doc. ## 114, 136); see Pop v. LuliFama.com LLC, 145 F.4th 1285, 1289 n.2 (11th Cir. 2025) (noting that Mr. Pop did not contest the dismissal of the unjust enrichment and negligent misrepresentation claims). On August 1, 2025, the Eleventh Circuit held that this Court "correctly dismissed [Mr.] Pop's complaint." Pop, 145 F.4th at 1289. The Eleventh Circuit agreed that Mr. Pop failed to allege the facts underlying his FDUTPA claim with the particularity required by Rule 9(b). Id. Further, the Eleventh Circuit held that because Mr. Pop did not properly request leave to amend the complaint, this Court "was not required to give [him] another chance to plead his claim." Id.

During the pendency of Mr. Pop's appeal, the Court denied without prejudice Defendants' motions for attorneys' fees and motions for sanctions. (Doc. ## 111, 118, 122, 127, 138, 139, 144). Defendants now have filed renewed motions for attorneys' fees and sanctions. (Doc. ## 147, 148, 149, 150).

8

Mr. Pop has responded. (Doc. ## 153, 154, 155, 156). The Luli Fama Defendants and Ms. Epstein have also filed applications for appellate attorneys' Fees, which the Eleventh Circuit transferred to this Court for consideration. (Doc. ## 157, 158). The motions and the applications are ripe for review.

## II.  Discussion

Defendants argue that the Court should award them attorneys' fees and non-taxable costs under FDUTPA as they are the prevailing parties in this litigation. (Doc. # 147 at 5-17; Doc. # 149 at 4-14). Alternatively, Defendants argue that the Court should exercise its inherent authority to award them attorneys' fees. (Doc. # 147 at 17-23; Doc. # 149 at 14-20). Defendants also move for attorneys' fees against Mr. Pop and his counsel as sanctions under Federal Rule of Civil Procedure 11 and Section 57.105, Florida Statutes. (Doc. ## 148, 150).

### A.    Fees and Costs Pursuant to FDUTPA

"Under FDUTPA, the Florida Legislature has declared that deceptive or unfair methods of competition and practices in trade and commerce are unlawful." Diamond Aircraft Indus., Inc. v. Horowitch, 107 So. 3d 362, 367 (Fla. 2013). "The express legislative purpose of FDUTPA is to protect individual consumers and certain defined business activities

from deceptive, unfair, or unconscionable methods of business competition and trade practice." Id. "To encourage citizens to invoke the protections of FDUTPA and file actions under that statute, the Legislature has provided that a prevailing party in a FDUTPA action may recover reasonable costs and attorney's fees from the nonprevailing party." Id. "In addition to the award of taxable costs, FDUTPA allows for the award of non-taxable costs, i.e. those costs that are not taxable under federal law at 28 U.S.C. § 1920." Chow v. Chak Yam Chau, 640 F. App'x 834, 836 n. 4 (11th Cir. 2015).

"Once the district court determines that a party is a prevailing party under FDUTPA, it has discretion to award attorneys' fees after considering various equitable factors" (the "Humane Society factors"), which include:

(1)   the scope and history of the litigation;

(2)   the ability of the opposing party to satisfy an award of fees;

(3)   whether an award of fees against the opposing party would deter others from acting in similar circumstances;

(4)   the merits of the respective positions — including the degree of the opposing party's culpability or bad faith;

(5)   whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;

10

(6) whether the defense raised a defense mainly to frustrate or stall;

(7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

Warren Tech., Inc. v. UL LLC, No. 21-11168, 2021 WL 4940833, at *3 (11th Cir. Oct. 22, 2021) (quoting Humane Soc'y of Broward Cnty., Inc. v. Fla. Humane Soc'y, 951 So. 2d 966, 971-72 (Fla. 4th DCA 2007)).

It is undisputed that Defendants are the prevailing parties in this litigation. The Court will address each Humane Society factor in turn.

### 1. The Scope and History of the Litigation

Defendants moved to dismiss the action shortly after it was removed from state court. (Doc. ## 35, 39, 41, 53, 54). The Court thereafter granted the Luli Fama Defendants' and the Influencer Defendants' motions. (Doc. # 105). Although the Court initially denied Ms. Epstein's motion as moot due to Mr. Pop's representation that the parties had reached a settlement in principle, the Court later reinstated her motion and granted it on March 20, 2024. (Doc. ## 128, 135). The parties filed several discovery motions during the pendency of the action (Doc. ## 66, 80, 85, 96, 103, 104), but there was minimal discovery exchanged (Doc. # 66 at 17; Doc. # 80 at 24; Doc. # 96 at 23-24), and no depositions were

11

taken. (Doc. # 85 at 3; Doc. # 89). Accordingly, this factor weighs against an award of attorneys' fees. See DJ Lincoln Enters., Inc. v. Google, LLC, No. 20-cv-14159, 2022 WL 4287640, at *4 (S.D. Fla. July 28, 2022), report and recommendation adopted, 2022 WL 3754182 (S.D. Fla. Aug. 30, 2022) ("The first factor — the scope and history of the litigation — cuts in favor of DJ Lincoln. The litigation in the instant case was before the District Court for only 14 months and was resolved at the motion to dismiss phase. There was no discovery, no summary judgment motions, and no trial."); Chastain v. N.S.S. Acquisition Corp., No. 08-81260-CIV, 2010 WL 5463859, at *2 (S.D. Fla. Dec. 29, 2010) (finding that the first factor  militated against a fee award where the "scope of the litigation was very limited, with the case resolved at the motion to dismiss stage, without the necessity of summary judgment or trial proceedings").

**2.    The Ability of the Opposing Party to Satisfy an Award of Fees**

"There is no presumption that a party can pay a fee award." Day v. Sarasota Drs. Hosp., Inc., No. 8:19-cv-1522-VMC-TGW, 2021 WL 7450526, at *5 (M.D. Fla. Aug. 12, 2021), report and recommendation adopted, 2021 WL 7450506 (M.D. Fla. Sept. 1, 2021). "Furthermore, the party seeking fees has the

12

burden to present evidence of the opposing party's ability to pay." Id.

The Luli Fama Defendants seek an estimated $195,000 in attorneys' fees and costs. (Doc. # 147 at 5). The estimated fees and costs for Ms. Gallo, Ms. Collins, Ms. Martinez, Ms. Prado, Ms. Palve, Ms. Labrador, and Ms. Ricart are $45,000. (Id.). Ms. Epstein estimates her attorneys' fees and costs to be $165,000. (Doc. # 149 at 4). Accordingly, Defendants seek to recover an estimated total of $405,000 from Mr. Pop.

Defendants state that the action was dismissed prior to seeking financial discovery from Mr. Pop. (Doc. # 147 at 14). Accordingly, Defendants have no evidence of Mr. Pop's financial situation but note that he has brought at least four other lawsuits, which they assert indicates some ability to pay attorneys' fees. (Doc. # 147 at 14; Doc. # 149 at 11-12). Defendants argue that this factor is neutral because Mr. Pop's ability to satisfy an award of attorneys' fees is unknown. (Doc. # 147 at 14; Doc. # 149 at 12).

In response, Mr. Pop submitted an affidavit in which he avers as follows. Mr. Pop, who is self-employed as a delivery courier, does not own a home or have a savings account. (Doc. # 154-2 at ¶¶ 5, 7). Mr. Pop lives with his wife, who is a "stay-at-home mother," and his minor child in a "modest 2-

13

bedroom apartment." (Id.). As Mr. Pop earns a "modest hourly income," the family is "under a strict budget." (Id. at ¶ 7). Mr. Pop is represented by counsel in this and other matters on a contingency basis and is "not required to advance or otherwise pay [his] counsel's fees." (Id. at ¶ 8). If the Court awards attorneys' fees, Mr. Pop "would have no choice but to file for bankruptcy." (Id. at ¶ 9).

The record indicates that Mr. Pop does not have the ability to pay approximately $400,000 in fees and costs. Defendants have not offered any evidence of Mr. Pop's ability to satisfy an award of attorneys' fees other than by referring to the other lawsuits, which Mr. Pop has explained were filed on a contingency basis. Given Mr. Pop's representations as to his financial status, this factor weighs against awarding fees. See Reilly v. Chipotle Mexican Grill, Inc., No. 15-CIV-23425, 2018 WL 1883086, at *5 (S.D. Fla. Jan. 26, 2018), report and recommendation adopted, 2018 WL 6980714 (S.D. Fla. Sept. 12, 2018) (finding that the second factor weighed in favor of denying the prevailing defendant's motion as the evidence suggested the plaintiff, "a divorced single mother who works as a furniture salesperson" and "is on a strict budget," could not pay $1.5 million in fees and costs).

14

### 3.    Whether an Award of Fees Would Deter Others from Acting in Similar Circumstances

Defendants argue that awarding fees against Mr. Pop "for pursuing unnecessary and inappropriate claims would likely deter [Mr. Pop] and similarly situated litigants from bringing meritless claims." (Doc. # 147 at 17); see also (Doc. # 149 at 12-14). Defendants claim that Mr. Pop has brought several other lawsuits under the same theory: "that 'influencers' should be liable for social media posts under consumer protection statutes and that liability should be imputed to companies for these posts." (Doc. # 147 at 15); see also (Doc. # 149 at 12). According to the Luli Fama Defendants and the Influencer Defendants, "this litigation is one of at least twelve lawsuits filed by Plaintiff's attorneys in continuous failed attempts to make such claims work." (Doc. # 147 at 15).

In response, Mr. Pop argues that attorneys' fees are not warranted here as the dismissal of the FDUTPA claim with prejudice is sufficient deterrence and that he has refrained from filing further FDUTPA claims in light of the Court's ruling. (Doc. # 153 at 10; Doc. # 154 at 9). Mr. Pop further disputes Defendants' characterizations of other lawsuits

15

filed by Mr. Pop and his attorneys. (Doc. # 153 at 11; Doc. # 154 at 9).

"By invoking FDUTPA and seeking redress under its remedial provisions, [the non-prevailing party] expose[s] himself to both the benefits and the possible consequences of that act's provisions." Diamond Aircraft Indus., 107 So. 3d at 369. Although the provision providing for the recovery of attorneys' fees by a prevailing party "applies equally to prevailing plaintiffs and defendants," Herbst v. Am. Orthodontics Corp., No. 23-61262-CV, 2025 WL 3755394, at *1 (S.D. Fla. Jan. 23, 2025), the Court recognizes that the purpose of FDUTPA is to protect consumers and that the Legislature included the recovery provision "[t]o encourage citizens to invoke the protections of FDUTPA and file actions under that statute." Diamond Aircraft Indus., 107 So. 3d at 367.

Here, the Court dismissed Mr. Pop's FDUTPA claim for failure to comply with the heightened pleading standard of Rule 9(b). (Doc. # 105 at 6-10; Doc. # 135 at 7-10). The Court further held that, even if Rule 9(b) did not apply, the FDUTPA claim was subject to dismissal for failure to state a claim for a *per se* FDUTPA violation. (Doc. # 105 at 10-15; Doc. # 135 at 10-15). As will be discussed in greater detail in the

16

following section, at the time of removal, the law was not settled as to the application of Rule 9(b) under the circumstances presented by this action. Further, as this case was dismissed because Mr. Pop failed to state a claim for a *per se* FDUTPA violation, it is unknown whether Mr. Pop could have presented evidence of a traditional FDUTPA violation.

Although Defendants prevailed in this action, and Mr. Pop and his attorneys unsuccessfully pursued similar claims in other lawsuits, it does not follow that Defendants are entitled to an award of fees under FDUTPA "lest the legislature's provision for discretionary fees would become mandatory." Day, 2021 WL 7450526, at *6 (internal quotation marks omitted). Under the circumstances, the risk of large fee awards would deter consumers from filing even meritorious claims. See Humane Soc'y of Broward Cnty., 951 So. 2d at 971 (opining that the legislature amended FDUTPA to give trial courts discretion to award fees to prevailing parties "as a legislative recognition that mandatory fee awards had a chilling effect on consumer plaintiffs bringing suit under FDUTPA").

The Court recognizes the benefit of a fee award that "would discourage parties from maintaining a lawsuit against an individual or entity for which it has no evidence of any

17

FDUTPA violation." Healthcare Res. Mgmt. Grp., LLC v. EcoNatura All Healthy World, LLC, No. 20-81501-CV, 2022 WL 1537757, at *8 (S.D. Fla. May 12, 2022). However, it is unknown if this is the situation presented by this case, which was dismissed due to deficient pleading. Under the circumstances, the Court finds that dismissal with prejudice is sufficient deterrence for similarly situated parties. See Reilly, 2018 WL 1883086, at *5 ("While Chipotle is correct that a fee award may serve as deterrence to similarly situated parties, Plaintiff's conduct has already been sanctioned in the form of dismissal with prejudice. We, therefore, conclude that any additional deterrence in the form of a fee award is not necessary to deter similar conduct in the future, especially when coupled with the cost award that we recommended Chipotle receive under section 1920." (internal quotation marks and citations omitted)). Therefore, this factor weighs against an award of attorneys' fees.

### 4. **The Merits of the Parties' Positions**

Here, Mr. Pop's complaint was deficient in several ways. Among other things, Mr. Pop failed to plead the FDUTPA and negligent misrepresentation claims with sufficient particularity as required by Rule 9(b). (Doc. # 105 at 6-10, 19-21; Doc. # 135 at 7-10, 23). Mr. Pop also failed to state

18

a claim for unjust enrichment. (Doc. # 105 at 15-19; Doc. # 135 at 15-20). Accordingly, the Court granted Defendants' motions to dismiss the complaint with prejudice. (Doc. ## 105, 135). This factor therefore weighs in favor of an award of attorneys' fees. See Schwartz v. ADP, Inc., No. 2:21-cv-283-SPC-KCD, 2023 WL 2815880, at *11 (M.D. Fla. Mar. 21, 2023), report and recommendation adopted, 2023 WL 2811057 (M.D. Fla. Apr. 6, 2023) (finding that the merits of the parties' litigation positions supported a fee award against plaintiff where "[e]very iteration of the complaint suffered from the same basic deficiencies.").

> 5.    **Whether the Claim Brought Was Not in Subjective Bad Faith but Frivolous, Unreasonable, Groundless**

Defendants argue that an award of attorneys' fees is appropriate because Mr. Pop's FDUTPA claim was unreasonable and lacked any factual basis. (Doc. # 147 at 8-9, 12-14; Doc. # 149 at 7-11). In response, Mr. Pop argues that his "claims were grounded in a reasonable, but misguided, interpretation of the law." (Doc. # 153 at 12; Doc. # 154 at 11).

Ms. Epstein further argues that Mr. Pop continued to press his claims against her despite the Court lacking personal jurisdiction over her and as she had never been properly served with the complaint. (Doc. # 149 at 8).

19

Although Ms. Epstein initially included arguments regarding insufficient service of process and lack of personal jurisdiction in her motion to dismiss (Doc. # 38), she later withdrew these arguments. (Doc. # 129). As Ms. Epstein withdrew these arguments prior to the Court ruling on her motion to dismiss, it is not appropriate for the Court to consider the merits of these claims for the first time at this juncture.

It is unknown whether Mr. Pop's FDUTPA claim lacked any factual basis as the case was dismissed at the pleading stage. As to the legal basis for the claim, the Court rejected the legal theory advanced by Mr. Pop – that the influencers' failure to disclose their financial relationship with Luli Fama in violation of 16 C.F.R. § 255.5, an FTC guideline, constituted a *per se* violation of FDUTPA.

In a putative class action filed by Mr. Pop in the Northern District of Illinois, that court agreed with this Court that the relevant version of Section 255.5 cannot serve as the basis for a *per se* violation of FDUTPA. Sava v. 21St Century Spirits, LLC, No. 22 C 6083, 2024 WL 3161625, at *16 (N.D. Ill. June 25, 2024). However, in considering the plaintiffs' claim alleging a "traditional" FDUTPA violation, the Sava court held that the amended complaint plausibly

20

alleged that the influencer defendants' failures to disclose their paid relationship with the defendant alcohol company "were 'deceptive acts' within the meaning of FDUTPA." Id. at *21. Although, in the instant case, Mr. Pop only alleged a *per se* FDUTPA violation, perhaps Mr. Pop's complaint could have survived a motion to dismiss had he alleged and sufficiently pled a traditional FDUTPA violation based on the influencers' alleged failures to disclose their paid relationships with Luli Fama. Mr. Pop's complaint certainly suffered from various pleading deficiencies, such as failing to identify any instances in which the influencers posted allegedly misleading advertisements or allege when he himself viewed such posts. (Doc. # 105 at 9-10; Doc. # 135 at 9-10). He also failed to provide any description of what product he purchased, why it was of inferior quality, or why he was unable to return or resell the product. (Doc. # 105 at 9; Doc. # 135 at 9). However, the record does not establish that Mr. Pop knowingly asserted groundless claims rather than submitted a facially deficient pleading.

"To state an FDUTPA claim, [the plaintiff] must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." Dolphin LLC v. WCI Communities, Inc., 715 F.3d 1243, 1250 (11th Cir. 2013). "The first element may

be satisfied in one of two ways: a per se violation or a traditional violation." State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC, 278 F. Supp. 3d 1307, 1326 (S.D. Fla. 2017). "A *per se* violation is established in one of two ways: (1) if the 'law, statute, rule, regulation, or ordinance' expressly constitutes a violation of the FDUTPA or (2) the statute, rule or ordinance proscribes unconscionable, deceptive, or unfair acts or practices and therefore operates as an implied FDUTPA predicate." State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC, 315 F. Supp. 3d 1291, 1300 (S.D. Fla. 2018) (quoting Fla. Stat. § 501.203(3)(c)); see also Parr v. Maesbury Homes, Inc., No. 6:09-cv-01268-PCF-G_K, 2009 WL 5171770, at *7 (M.D. Fla. Dec. 22, 2009) (explaining the two methods of establishing a *per se* FDUTPA violation).

Here, Mr. Pop's claim alleging a *per se* FDUTPA violation was premised on 16 C.F.R. § 255.5, a section of the FTC's "Guides Concerning Use of Endorsements and Testimonials in Advertising." Section 255.5 lays out the following interpretation of the FTC Act:

> When there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement, and that connection is not reasonably

22

expected by the audience, such connection must be disclosed clearly and conspicuously.

16 C.F.R. § 255.5(a).

Section 255.5 does not "expressly state that it is to serve as a FDUTPA predicate." Parr, 2009 WL 5171770, at *7. Section 255.5 also cannot "operate[] as an implied FDUTPA predicate" because it is a guide that does not proscribe conduct. Id. As such, it is not a rule promulgated pursuant to the FTC Act or a regulation which proscribes unfair methods of competition. See 16 C.F.R. Ch. I, Subch. B, Pt. 17 ("[G]uides are administrative *interpretations* of laws administered by the Commission for the guidance of the public in conducting its affairs in conformity with legal requirements. They provide the basis for *voluntary* and simultaneous abandonment of unlawful practices by members of industry." (emphasis added)). Accordingly, § 255.5 cannot form the basis of a *per se* FDUTPA violation.

While Defendants have not established that the claim was made in subjective bad faith, the Court finds that Mr. Pop's *per se* FDUTPA claim was unreasonable and groundless. Accordingly, this factor weighs in favor of an award of attorneys' fees.

23

### 6. Whether the Defendants Raised a Defense Mainly to Frustrate or Stall

This factor is not relevant here as Defendants are the prevailing parties in this action. See Reilly, 2018 WL 1883086, at *6 (finding that this factor had no bearing where defendant was the prevailing party).

### 7. Whether the Claim Brought Was to Resolve a Significant Legal Question under FDUTPA Law

Finally, the Court considers that this case involved issues of first impression at both the district court and appellate levels.

As an initial matter, at the time of ruling on Defendants' motions to dismiss, it does not appear that there were any reported cases directly addressing whether 16 C.F.R. § 255.5 could serve as a basis for a *per se* FDUTPA violation. The Court ultimately rejected Mr. Pop's contention that Section 255.5 could support a *per se* violation as it is a guide that does not proscribe conduct. As the Court has determined that Mr. Pop's position was unreasonable and groundless, the Court finds that this factor is neutral with respect to the district court proceedings.

Further, in considering Mr. Pop's appeal, the Eleventh Circuit noted that "[w]hether and when Rule 9(b)'s particularity requirement applies to FDUTPA claims is an

24

issue of first impression in this Circuit." Pop, 145 F.4th at 1292. The Eleventh Circuit ultimately agreed that Rule 9(b)'s heightened pleading requirement applied here. However, Mr. Pop's appeal nevertheless resolved a significant legal question under FDUTPA. Therefore, this factor overall weighs against an award of attorneys' fees.

After thoroughly considering the parties' arguments and the Humane Society factors, the Court finds that attorneys' fees and non-taxable costs awards would be inappropriate here. Although a party's inability to pay is not dispositive, there is no evidence that Mr. Pop can satisfy any fee award, let alone the hundreds of thousands of dollars sought by Defendants. Under the circumstances, the dismissal of Mr. Pop's claims with prejudice, in addition to potential cost awards pursuant to 28 U.S.C. § 1920, will provide sufficient deterrence for Mr. Pop and similarly situated individuals. The Court is disturbed by Mr. Pop's woefully deficient complaint. Yet, the Court has not found any evidence that Mr. Pop pursued his claims in bad faith or that he knew they were frivolous or devoid of factual support. Mr. Pop's contention that Section 255.5 could serve as a basis for a *per se* FDUTPA violation was unreasonable and groundless. However, his appellate argument that Rule 9(b)'s heightened pleading

25

standard did not apply to his FDUTPA claim presented a significant issue of first impression for the Eleventh Circuit. As most of the Humane Society factors weigh in Mr. Pop's favor, Defendants are not entitled to an award of attorneys' fees and costs under FDUTPA.

## B.   The Court's Inherent Authority to Award Attorneys' Fees

"[A] court has [the] inherent power to award attorney's fees to a party whose litigation efforts directly benefit others, to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1224 (11th Cir. 2017) (internal citation and quotation marks omitted). Generally, "inherent powers sanctions require subjective bad faith." Id. "[I]n the absence of direct evidence of subjective bad faith, this standard can be met if an attorney's conduct is so egregious that it could only be committed in bad faith." Id. at 1224–25. "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) (internal quotation marks omitted). "The inherent power

must be exercised with restraint and discretion. This power is not a remedy for protracted litigation; it is for rectifying disobedience, regardless of whether such disobedience interfered with the conduct of the trial." Purchasing Power, 851 F.3d at 1225.

Defendants argue that the Court should exercise its inherent authority to award attorneys' fees because Mr. Pop and his counsel "engaged in bad faith conduct, including by (1) filing claims without reasonable inquiry into the underlying facts, and (2) recklessly pursuing those claims despite no basis in law or fact." (Doc. # 147 at 18); see (Doc. # 149 at 15). Defendants argue that the complaint "was a collection of conclusory allegations with no factual basis." (Doc. # 147 at 18; Doc. # 149 at 15). However, while the Court agrees that the complaint was insufficiently pled, Defendants have not demonstrated that it lacked a factual basis. Contrary to Defendants' contention, the letter sent by the Luli Fama Defendants' counsel prior to removing the action to this Court, in which counsel stated that "Luli Fama never instructed any of the influencers named in the complaint to hide their affiliation with Luli Fama (whether required or not), nor will there be any evidence of such conduct" (Doc.

27

# 147-1 at 3), does not establish that Mr. Pop's allegations had no basis in fact.

Defendants further argue that Mr. Pop's counsel pursued claims with no legal basis, as demonstrated by this Court's dismissal orders. (Doc. # 147 at 20; Doc. # 149 at 20). But, "[i]n determining whether a suit is frivolous, a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." Beach Blitz Co. v. City of Miami Beach, Fla., 13 F.4th 1289, 1302 (11th Cir. 2021) (internal quotation marks omitted). "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." Id. (internal quotation marks omitted). "Even if a plaintiff's allegations are ultimately legally insufficient to require a trial, that alone is not enough to render the plaintiff's cause of action groundless or without foundation." Id. (internal quotation marks omitted). The Court finds that Defendants are not entitled to fees merely because the Court dismissed Mr. Pop's complaint.

**C.** **Sanctions Pursuant to Rule 11 and Section 57.05, Fla. Stat.**

By presenting to the Court a pleading, written motion, or other paper, an attorney certifies to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the legal contentions are warranted by existing law or by a nonfrivolous argument for extending or modifying existing law, or for establishing new law, and that the factual contentions have evidentiary support (or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery). Fed. R. Civ. P. 11(b)(2-3); see also Lee v. Mid-State Land & Timber Co., Inc., 285 F. App'x 601, 608 (11th Cir. 2008).

Sanctions are appropriate pursuant to Rule 11 "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." Worldwide Primates, Inc. v. McGreal, 87 F.3d 1252, 1254 (11th Cir. 1996) (internal quotation and citation omitted).

29

A court generally conducts a two-part inquiry when considering a motion for sanctions: (1) whether the party's claims are objectively frivolous in view of the facts or law, and, if so, (2) whether the person who signed the pleadings should have been aware that they were frivolous. See Worldwide Primates, 87 F.3d at 1254. Even if counsel had a good faith belief that the claims were sound, sanctions must be imposed if counsel failed to make a reasonable inquiry. Id.

"Attorney's fees awarded under § 57.105 are analogous to sanctions imposed under Rule 11. The two have the same goal — to discourage baseless filings." Collier Cnty. v. Holiday CVS, L.L.C., No. 2:17-cv-14-SPC-CM, 2017 WL 1378548, at *1 (M.D. Fla. Apr. 11, 2017); see also Vasquez v. Provincial S., Inc., 795 So. 2d 216, 218 (Fla. 4th DCA 2001) ("Attorney's fees are awarded under section 57.105 . . . where there is a total or absolute lack of justiciable issues of either law or fact, this being tantamount to a finding that the action is frivolous or completely untenable." (internal citation and quotation marks omitted)). "There must be a finding on record, supported by substantial competent evidence, in order for the trial court to award attorney's fees and costs." Vasquez, 795 So. 2d at 218.

In support of their motions for sanctions pursuant to Rule 11 and Section 57.105, Defendants reiterate their arguments as to why the Court should exercise its inherent authority to award attorneys' fees here. However, as the Court previously stated, it has not been shown that Mr. Pop's claims were objectively frivolous in view of the facts or the law. Defendants deny the allegations in the complaint. Yet, Defendants have not demonstrated that Mr. Pop or his counsel acted in bad faith. Defendants again assert that "this litigation is one of at least twelve lawsuits filed by Plaintiff's attorneys in continuous failed attempts to pursue such claims." (Doc. # 148 at 12); see (Doc. # 150 at 1-2). But Defendants fail to explain the details of the other cases or why they support an award of sanctions in this action.

Ms. Epstein also reasserts her arguments that Mr. Pop's claims that the Court has personal jurisdiction over her and that she was properly served are baseless and warrant sanctions. (Doc. # 150 at 7-11, 16-17). As Ms. Epstein ultimately withdrew her challenges to personal jurisdiction and service of process (Doc. # 129), the Court declines to consider the merits of these arguments for the first time now.

31

In sum, the Court does not find that sanctions are warranted here.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendants LuliFama.com, LLC, My LuliBabe, LLC, Lourdes Hanimian, Taylor M. Gallo, Alexa Collins, Allison Martinez, Cindy Prado, Haley Palve, Leidy A. Labrador, and Priscilla Ricart's Renewed Joint Motion for Attorneys' Fees (Doc. # 147) is **DENIED.**

(2)   Defendants LuliFama.com, LLC, My LuliBabe, LLC, Lourdes Hanimian, Taylor M. Gallo, Alexa Collins, Allison Martinez, Cindy Prado, Haley Palve, Leidy A. Labrador, and Priscilla Ricart's Renewed Joint Motion for Sanctions (Doc. # 148) is **DENIED.**

(3)   Defendant Gabrielle Epstein's Renewed Motion for Entitlement to Attorneys' Fees and Costs (Doc. # 149) is **DENIED.**

(4)   Defendant Gabrielle Epstein's Second Renewed Motion for Sanctions (Doc. # 150) is **DENIED.**

(5)   Defendants LuliFama.com, LLC, My LuliBabe, LLC, and Lourdes Hanimian's Application for Appellate Attorneys' Fees (Doc. # 157) is **DENIED.**

32

(6)   Defendant Gabrielle Epstein's Application for Appellate

Attorneys' Fees (Doc. # 158) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>1st</u>

day of April, 2026.

<u>Virginia M. Hernandez Covington</u>
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE